IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOUNTS TECHNOLOGIES LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONNECTIFY, INC. AND DOES 1-100, <br><br> Defendants. | CASE NO. 2:23-cv-890 <br><br> Judge Mia Roberts Perez |

**CONNECTIFY'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11</u>**

Defendant, Connectify, Inc. ("Connectify") submits this brief in support of its motion for Rule 11 sanctions against Plaintiff, Bounts Technologies Ltd. ("Plaintiff"), and its counsel, Todd E. Zenger, Esquire, Ryan E. Borneman, Esquire, and Mark. E. Seiberling, Esquire for their baseless assertion of patent infringement against Connectify.

**I.      <u>INTRODUCTION & FACTUAL BACKGROUND</u>**

On March 8, 2023, Bounts filed, but did not serve, its Complaint accusing Connectify of direct infringement, induced infringement, and willful infringement of U.S. Patent No. 9,258,309 (the "Patent-in-Suit" or "the '309 Patent"). On March 17, 2023, Kevin Casey, outside counsel for Connectify, and Kamran Emdadi, Connectify's inside patent attorney, forwarded to Bounts' counsel Mr. Zenger a document summarizing the operation of Connectify's products and methods and explaining why they do not infringe the claims of the patent (the "March 17, 2023 Analysis"). A copy of the March 17, 2023 Analysis is attached to the Declaration of Kevin Casey ("Casey Declaration") as **Exhibit A**. Later that same day, the three attorneys conferred, with counsel for Connectify providing further explanation of why Connectify's products and the methods of using

those products do not infringe any claim of the Patent-in-Suit. Casey Declaration at ¶ 7. To date, Mr. Zenger has not substantively responded to the March 17, 2023 Analysis. *Id.* at ¶ 8. Moreover, Mr. Zenger declined Mr. Casey's invitation to re-confer about the analysis reflected in the March 17, 2023 Analysis. *Id.* As a result, Connectify was forced to incur significant time and expense in connection with filing a motion to dismiss Bounts' Complaint on August 3, 2023. [1]

Bounts' patent infringement claims are not warranted under existing law or a non-frivolous argument for new law. *See* Fed. R. Civ. P. 11(b)(2). Rule 11(b)(3) requires that the factual contentions of a complaint have evidentiary support.

Bounts accuses Connectify of direct patent infringement, induced patent infringement, and willful patent infringement. Connectify's March 17, 2023 Analysis makes abundantly clear that the accused Connectify Hotspot product and related methods cannot be a direct infringement of the claims of the asserted patent, either literally or under the doctrine of equivalents. Absent direct infringement, induced infringement cannot exist. Finally, there is absolutely no evidence that infringement was willful even were infringement arguably to exist. In addition, all claims of the '309 Patent are invalid under Section 101 of the Patent Act, and no liability for infringement can lie if the patent is invalid. Accordingly, it is readily apparent that Bounts' claims are without basis.

A.   **Direct Infringement**

The Patent-in-Suit issued on February 9, 2016, and is titled "Method And System For

---

[1] Despite having filed an Opposition to the Motion to Dismiss on August 17, 2023 [Dkt. no. 13], Bounts subsequently filed an Amended Complaint on August 21, 2023. *See* Am. Compl. [Dkt. no. 15]. Notably, Plaintiff's Amended Complaint fails to cure most of the pleading defects in its original Complaint that were detailed in Connectify's Motion to Dismiss [Dkt. no. 10] and initial Motion for Rule 11 Sanctions filed on August 3, 2023 [Dkt. no. 11]. On September 1, 2023 Connectify filed a Motion to Dismiss [Dkt. no. 18] Bounts' Amended Complaint.

Operating A Wireless Access Point For Providing Access To A Network." The Patent-in-Suit generally concerns a method for operating a single network adapter for use on two different sub-networks of the same type, and a corresponding apparatus. The Patent-in-Suit allegedly addresses the problem of connecting a wireless enabled device to a network via a wireless local area network. A wireless access point for providing access to the Internet is commonly known as a "hotspot."

According to the Patent-in-Suit, this problem was addressed by International Patent Application Publication No. WO2006/021784. The prior art system teaches two ports on a wireless access point controller of a wireless access point, each point having its own Internet Protocol (IP) address. The Patent-in-Suit criticizes the solution of the prior art, explaining that a disadvantage of this arrangement is that each port requires a network adaptor, such as a network card. Because commonly available personal computers and laptops are not conventionally provided with two network adaptors, the requirements for two network adaptors are an impediment to commissioning of conventional wireless access points as disclosed by the prior art. Moreover, in such prior art hotspot arrangements, it is necessary to have a separate router (for internet access) such as a modem and a wireless access point.

The Patent-in-Suit describes the claimed invention as improving the system and method taught by WO2006/021784, allowing the use of a standard wireless router to provide a hotspot for guest access. More specifically, a method is described in the Patent-in-Suit for operating a single network adapter for use on two different sub-networks of the same type, and a corresponding apparatus. The method comprises setting up a first network address and routing table in the network adapter for use in the first sub-network; setting up a second network address and routing table in the network adapter for use in the second sub-network; receiving data for one of the first and second sub networks, and re-transmitting the data to the other of

the first and second sub-network, using the network addresses and routing tables. More specifically, at column 7, lines 9-19, the '309 Patent teaches that subnetting is required to create two sub-networks with different IP address allocations. *See* Ex. 1 to Am. Compl.

The Patent-in-Suit resulted from Application No. 14/249,174 filed on April 9, 2014. In an Office Action dated January 27, 2015, the Patent Examiner rejected all of the claims in the application in light of the following prior art references: U.S. Patent No. 7,469,294 issued to Luo; U.S. Patent Application Publication No. 2007/0225019 filed by Knox; U.S. Patent Application Publication No. 2008/0069065 filed by Wu; and various secondary references. *See* **Exhibit 1** hereto. The Patent Examiner determined that all of the claims would have been obvious to one of ordinary skill in the art at the time the invention was made. *See id.* On July 27, 2015, in response to the Office Action, the applicant argued that none of the Luo, Knox, or Wu prior art references suggest setting up a first and a second network address and routing table in a single interface card or module operable to communicate with a corresponding first and second sub-network. A true and correct copy of the July 27, 2015 response to the Office Action is attached hereto as **Exhibit 2**. The applicant was very specific in its response about the need for two network addresses and not one routing table but "two such tables stored in a single network interface card or module" in communication with a first and second sub-network of a single network interface card or module, distinguishing the prior art references on the basis that no reference teaches or suggests those characteristics. *See id.* at p. 10. The Patent Examiner then allowed the application.

The prosecution history shows that the applicant was unequivocal in taking the position that the claimed invention is patentable over the prior art because the claimed module has two

network addresses and two routing tables. *Id.*[2] Thus, the prosecution history shows that the applicant gave up an interpretation of the claim limitations that could include a method or an apparatus with a single network address or a single routing table in a single network interface card or module.

All patents conclude with a claim or set of claims particularly pointing out and distinctly claiming the subject matter which the patentee regards as the invention. The claims define the invention for the purpose of determining infringement. A claim will not cover or "read on" any product or method accused of infringement unless that product or method contains all of the limitations present in the claim (or an equivalent of a limitation within the meaning of the doctrine of equivalents). Thus, each limitation present in a claim constitutes a narrowing of the scope of that claim. A number of sources, including the specification of the patent, the prosecution history of the patent before the U.S. Patent and Trademark Office ("PTO"), and the prior art, help to give the claims their meaning and, hence, their scope.

Thus, the first step in a non-infringement analysis is to properly interpret the claims of the subject patent. After the limitations of the claims are interpreted, it is necessary to apply the second step of a non-infringement analysis and determine whether the claims cover the alleged infringer's product or method. The doctrine of equivalents allows a court to find infringement when an infringer steals the heart of an invention but avoids the literal language of a claim by making a minor change.

The '309 Patent recites three independent claims: claims 1, 13, and 19. *See* Ex. 1 to

---

[2] According to the U.S. Court of Appeals for the Federal Circuit, which hears all appeals in patent infringement suits, "the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (reversing district court's infringement decision).

Am. Compl. Claim 13 requires passing information between two sub-networks and is an apparatus with an additional feature (beyond claim 1) of a "data store" storing a "driver" which stores all sorts of information (routing table 1, routing table 2, network address 1, network address 2) and is less relevant and more narrowing than claim 1 discussed below. Claim 19 requires a local area network with first and second sub-networks of the same type, a plurality of devices, etc., and is less relevant and more narrowing than claim 1 discussed below. Therefore, our analysis focuses on claim 1 (which is the only claim specifically asserted in Bounts' Amended Complaint). Claim 1 recites (underlined and bold emphases added):

> 1. A method of operating a single network adapter, comprising <u>a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network</u>, the method comprising:
>
> <u>setting up a first network address and routing table</u> **in** <u>the network interface card or module for use in the first sub-network</u>;
>
> <u>setting up a second network address and routing table</u> **in** <u>the network interface card or module for use in the second sub-network</u>;
>
> using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, <u>using the network addresses and routing tables</u>,
>
> wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and
>
> <u>wherein the step of receiving data comprises receiving a request from</u> **a** <u>user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway</u>.

Ex. 1 to Am. Compl. at columns 8 and 9. Highlighted above are the many limitations recited in claim 1 that are not met by *any* Connectify product or method. Literal infringement requires that the accused product or method embody <u>each</u> limitation of the asserted claim. *Southwall Tech., Inc. v. Cardinal I.G. Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995). The absence of <u>any</u>

limitation of the asserted claim defeats literal infringement. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

First, Connectify products and methods do not use two routing tables in a single network interface card or module. *See* Declaration of Kamran Emdadi ("Emdadi Declaration") at ¶ 8. No Connectify products or methods put any routing table in a network interface card or module. *Id.* Second, no Connectify products or methods establish two subnetworks by setting up first and second network addresses in a single network interface card (which is a requirement for each of the independent claims 1, 13, and 19). *Id.* at ¶ 9. Third, Connectify products or methods may establish one translation table that can interpret a packet destination received for one of three possibilities (destinations): (i) the IP controller (hotspot router): (ii) a device on the network (could send a packet from one device to another); or (iii) a remote third party device that would route the packet to its destination via whatever IP translation and identification process is available on such devices (this external networking routing (internet) is not part of another/second routing table needed or used by the hotspot router). *Id.* at ¶ 10. Finally, all of the claims require interaction with a "user" unlike any Connectify products or methods which are fully automated. *Id.* at ¶ 11.

Although the accused Connectify Hotspot product and related methods avoid infringement if they fail to meet any one limitation recited in the claims of the '309 Patent, they fail to meet many of the recited limitations. Focus on the limitations that require two, separate network addresses and routing tables, each for use in a separate sub-network, in a single network interface card or module. The express language of the claims recite these limitations. The claimed concept of using two, separate sub-networks each having their own addresses and routing tables in a single network interface card or module is emphasized

repeatedly in the patent specification. *See, e.g.*, Ex. 1 to Am. Compl. at column 7, lines 9-19 (characterizing the invention as a method for operating a single network adapter for use on two different sub-networks of the same type and a corresponding apparatus). Likewise, during prosecution of the application, the Examiner allowed the '309 Patent only after the applicant distinguished the claims from the prior art on the ground that no cited prior art reference teaches or suggests two network addresses and routing tables in communication with a first and second sub-network of a single network interface card or module.

Any theory concluding that the accused Connectify Hotspot product and related methods infringe is not colorable in view of the express language of the claims, the patent specification, and the prosecution history. Simply put, no Connectify products or methods put any routing table (let alone two routing tables) in a network interface card or module. Therefore, any theory of infringement must defy the express language of the claims and cannot satisfy Bounts' Rule 11 obligation. Such a theory of infringement would read out the claim language requirements that two, separate sub-networks each have their own addresses and routing tables in a single network interface card or module. Indeed, such a theory would remove the basis upon which the PTO issued the '309 Patent.

Furthermore, the existing law of the doctrine of equivalents does not warrant any theory that the claimed methods or apparatus could be equivalent to the accused Connectify Hotspot product and related methods, legally or factually. Even assuming that the doctrine of equivalents is applicable, which it is not, in view of such countervailing doctrines as claim vitiation and prosecution history estoppel, the idea that the differences are insubstantial is not credible. Because Connectify products and methods do not (i) use two routing tables in a single network interface card or module, (ii) put any routing table in a network interface card or

8

module, (iii) establish two subnetworks by setting up first and second network addresses in a single network interface card, or (iv) require any interaction with a user, they are substantially different from the claimed methods and apparatus.

### B. Induced Infringement

Under 35 U.S.C. § 271(b), "Whoever actively induces infringement of a patent shall be liable as an infringer." The five elements of a claim of induced infringement are: "(1) with knowledge of or willful blindness to the existence of the patent-in-suit; (2) the defendant engaged in affirmative acts to induce (e.g., by persuading, leading, or influencing) a third party to perform acts that; (3) the defendant knew constituted infringement of the patent-in-suit (or was willfully blind to that fact); (4) with the specific intent to cause such infringement; and which (5) resulted in the third party directly infringing the patent-at-issue." *Bonutti Skeletal Innovations, LLC v. Globus Medical Inc.*, 2015 WL 3755223 at *5 (E.D. Pa. 2015); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Paragraph 15 of the Amended Complaint simply restates those elements. Bounts has no evidence supporting any of the five elements. First, "[i]t is axiomatic that '[t]here can be no inducement . . . [of] infringement without an underlying act of direct infringement.'" *In re Bill of Lading*, 681 F.3d at 1333 (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (citation omitted)). In this case, the Amended Complaint does not allege and completely fails to plead facts sufficient to plausibly show that a third party directly infringes the Patent-in-Suit.

Second, Connectify had no knowledge that the allegedly induced acts constitute patent infringement or the specific intent to cause the alleged direct infringement. *See* Emdadi

Declaration at ¶ 13.  "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  Moreover, "the intent requirement for inducement requires more than just the intent to cause the acts that produce direct infringement, . . . the inducer must have an affirmative intent to cause direct infringement. . . .  To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part); *Compound Photonics, LTD v. Sony Corp.*, 2013 WL 4826585 at p. 5 (E.D. Tex. 2013), report and recommendation adopted, No. 6:11-cv-00552 (E.D. Texas Jul. 18, 2013) ("[T]he knowledge requirement for inducement refers to the inducer's knowledge of the induced third party's infringing acts, not knowledge of an inducer's own inducing conduct").  As in *Bonutti Skeletal Innovations, LLC*, 2015 WL 3755223, Bounts' inducement claim must fail for at least this reason.

Connectify did not even remotely have the intent necessary for an induced infringement claim.  Indeed, the Amended Complaint does not allege and completely fails to plead facts sufficient to plausibly show that Connectify had knowledge of the Patent-in-Suit before the original complaint was filed.  Nor could Bounts truthfully so allege because, in fact, Connectify was completely unaware of either the Patent-in-Suit or Bounts' allegations of infringement before the lawsuit was filed.  *See* Emdadi Declaration at ¶ 12.  Nor has Bounts adequately alleged (nor could it) that Connectify knew any third party was engaged in activity that constituted a direct infringement.  These facts were dispositive in *Progme Corp. v. Comcast Cable Commc'ns LLC*, 2017 WL 5070723 at *8 (E.D. Pa. 2017), and should be dispositive in this case.

Third, Connectify has not taken any action to induce direct infringement by a third party. *See* Emdadi Declaration at ¶ 13. "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med.*, 471 F.3d at 1306; *Power Integrations*, 843 F.3d at 1332 ("'[T]o prevail . . . [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit]'") (citation omitted). In this case, the Amended Complaint does not allege (nor could it) and completely fails to plead facts regarding Connectify's specific intent. Bounts cites no facts that lead to the plausible inference that Connectify intended for a third party to infringe the claims of the Patent-in-Suit. For this reason, too, and as in *Progme Corp.* and in *Bonutti Skeletal Innovations, LLC*, Bounts' inducement claim must fail.

**C.    Willful Infringement**

Bounts seeks enhanced damages for willful infringement under 35 U.S.C. § 284. Under Section 284, a court may "increase the damages up to three times the amount found or assessed." Willful infringement is reserved for "egregious infringement behavior" that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or -- indeed -- characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016). The Federal Circuit has clarified that "it is the circumstances [of the case] that transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior, and that makes all the difference." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019). Therefore, to succeed on its willful infringement claim, Bounts must allege that Connectify engaged in egregious misconduct, which is well beyond an allegation of knowing and continued infringement. These facts do not exist here.

In fact, Connectify was completely unaware of the Patent-in-Suit before the lawsuit was

11

filed and had no reason to believe the Patent-in-Suit existed. *See* Emdadi Declaration at ¶ 12. Connectify has sold the accused product, "Connectify Hotspot," for fourteen years and the Patent-in-Suit issued in 2016. *Id.* at ¶ 14. Nor has Connectify acted in a subjectively reckless manner concerning potential infringement. In fact, immediately after learning of the lawsuit, Connectify analyzed the claims of the Patent-in-Suit, determined that its products and methods did not infringe, and explained its analysis and determination to counsel for Bounts. *See* Ex. A to Casey Declaration. Such conduct is the opposite of acting with egregious intent or recklessness. Accordingly, Bounts' willful infringement claims are legally insufficient.

On March 17, 2023, Connectify put Bounts on notice of the flaws in its infringement claims. Bounts served this lawsuit for what appears to be an improper business motivation divorced from any objective assessment of the merits. There is no credible basis to maintain the patent infringement claims. Particularly given Bounts' lack of commercial activity, the improper motive is readily apparent by Bounts maintaining its expensive but frivolous claims.

Federal Rule of Civil Procedure 11(b) requires that claims be based upon "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).[3] The decisions of the Federal Circuit require, under Rule 11, that a party reverse engineer, or at least examine closely, an accused product before filing a patent infringement complaint. Failure to make appropriate investigation before filing a patent infringement suit may also trigger 35 U.S.C. § 285 (attorney fees may be awarded in "exceptional cases"). In *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,

---

[3] The 1993 amendments to Rule 11 rejected the "paper-as-a-whole" approach; the current version of the rule makes clear that sanctions may be based on a single invalid legal or factual theory (e.g., assertion of one patent claim) even if other asserted theories are valid (e.g., assertion of other claims). *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066 (Fed. Cir. 2002) (citing G. Vairo, "Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures," 4-117 (2d ed. 1990 & Supp. 1995)).

208 F.3d 981 (Fed. Cir. 2000), the Federal Circuit affirmed the district court's decision to impose a $97,825 sanction on attorneys representing a declaratory judgment defendant, based on lack of reasonable inquiry before filing infringement counterclaims. The defendant merely reviewed the plaintiff's advertising and statements made to customers but never had physical access to the accused machines. *Id.* at 986. The same result is warranted here.

As required under Rule 11(c)(2), a copy of this Motion was served upon Plaintiff through its counsel of record on August 22, 2023, which put Plaintiff on notice of Connectify's intent to file this motion and the basis for it more than twenty-one (21) days prior to its filing. *See* **Exhibit 3** hereto. Nonetheless, the fatal flaws identified herein and detailed in Connectify's Motion to Dismiss and initial Motion for Rule 11 Sanctions, filed on August 3, 2023, were not corrected, and thus Rule 11 sanctions are even more appropriate now than they might have been before Bounts chose to file its Amended Complaint.

II.  **ARGUMENT**

    A.  **Applicable Law**

Rule 11 requires "[e]very pleading, written motion, and other paper" to be signed "by at least one attorney of record." Fed. R. Civ. P. 11(a). By "signing, filing, submitting, or later advocating" such a paper, the attorney "certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

>   (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>   (2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and
>
>   (3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)-(3).  When applying Rule 11 in patent cases, the regional law of the circuit applies.  *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).  In the Third Circuit, conduct violates Rule 11 if it fails to be "objectively reasonable under the circumstances." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010).  Frivolous assertions of patent infringement warrant sanctions.  *See, e.g., ICU Med., Inc. v. Alaris Med. Sys.*, No. SA CV 04-689, 2007 U.S. Dist. LEXIS 34467, *10-11 (C.D. Cal. Apr. 16, 2007), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009); *Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997).

Rule 11 obligations continue to apply after signing or filing a paper. "[S]anctions are proper when, *inter alia*, a party 'insists upon a position after it is no longer tenable.'" *Balthazar v. Atl. City Med. Ctr.*, 137 Fed. Appx. 482, 490 (3d Cir. 2005).  "A litigant's obligations with respect to the contents of [papers filed with the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 493 (D. Del. 1998) (quoting the 1993 Advisory Committee Notes to Rule 11).  Continued litigation of untenable patent infringement claims warrants sanctions.  *See, e.g.*, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 706 F. Supp. 2d 713, 736 (N.D. Tex. 2010) (imposing Rule 11 sanctions where, among other things, party pursued its infringement claims after it became clear those claims had no merit).

**B.**     **Rule 11 Sanctions Are Appropriate**

The standard set forth in the above cases has been more than met here.  For the foregoing

reasons, Connectify requests sanctions against Bounts and its counsel.[4]  Connectify requests its attorneys' fees and costs in bringing this Rule 11 motion and in defending the baseless patent infringement claims, including fees and costs related to its motions to dismiss.  *See* Fed. R. Civ. P. 11(c)(2) and (c)(4); *see also Phonometrics, Inc. v. Econ. Inns. of Am.*, 349 F.3d 1356 (Fed. Cir. 2003) (affirming order awarding defendant of attorneys' fees and costs under Rule 11 where plaintiff pursued its claim of patent infringement in the face of several Federal Circuit decisions that made clear plaintiff's claim was "untenable").

Finally, Connectify requests dismissal with prejudice of Bounts' Amended Complaint to prevent further waste of resources on patent infringement claims that can only be considered frivolous.  *See, e.g.*, *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278, 1281 (3rd Cir. 1994) (affirming district court's dismissal of complaint); *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993) (affirming dismissal of baseless action pursuant to Rule 11).  Indeed, Bounts had notice of the flaws in its infringement claims since at least March 17, 2023, and had the opportunity to withdraw it claims, but it chose not to do so.  In fact, Bounts has exacerbated its egregious behavior by filing its Amended Complaint.

### III.   CONCLUSION

For the foregoing reasons, Connectify respectfully requests that this Court grant its Motion for Rule 11 Sanctions and enter an Order in the form attached hereto.  Connectify further requests the opportunity to submit an itemization of the attorneys' fees and costs incurred in connection with this action.

---

[4] Rule 11 authorizes the Court to impose various sanctions against Bounts or its attorneys.  *See* Fed. R. Civ. P. 11(c)(1) ("court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation").

Dated:  September 22, 2023

Respectfully submitted,

Stradley Ronon Stevens & Young, LLP

*/s/ Samantha B. Kats*
Kevin R. Casey, Esq. (Pa. Attorney No. 58083)
Patrick R. Kingsley, Esq. (Pa. Attorney No. 62915)
Samantha B. Kats, Esq. (Pa. Attorney No. 316178)
30 Valley Stream Parkway
Malvern, PA 19355
610-640-5800
Kcasey@stradley.com
Pkingsley@stradley.com
Skats@stradley.com

*Attorneys for Defendant, Connectify, Inc.*