Todd E. Zenger (*pro hac admission*)
DUREN IP PC
610 E. South Temple Street
Suite 300
Salt Lake City, UT 84102
Tel.: 801-869-8535
Email: tzenger@durenip.com

Mark E. Seiberling (No. 91256)
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.: 215-568-2000
Email: mseiberling@kleinbard.com

*Attorneys for Bounts Technologies Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOUNTS TECHNOLOGIES LTD.,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO.** |
| v. | **2:23-cv-00890-MRP** |
| **CONNECTIFY, INC., and DOES 1-100,** | |
| **Defendants.** | |

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

**INTRODUCTION**

Plaintiff, Bounts Technologies Ltd. by and through its attorneys, complaining of Defendant Connectify, Inc. seeks judgment and other relief for patent infringement of

1

United States Patent No. 9,258,309 caused by the manufacture, importation, exportation, sale, offer for sale and/or use of devices and/or methods of Defendant and/or of others induced by Defendant.

## JURISDICTION AND VENUE

1. This action arises under the patent laws of the United States. 35 U.S.C. § 1 et. seq. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338.

2. Venue is proper in this District under 28 U.S.C. §§ 1400 because Defendant has its regular place of business in this District.

## PARTIES

3. Plaintiff, Bounts Technologies Ltd., is a United Kingdom entity of London, UK ("Bounts" or "Plaintiff"). Bounts has all necessary legal rights to bring this action.

4. Defendant Connectify, Inc. is a Delaware entity having its principal place of business in Philadelphia, Pennsylvania ("Connectify" or "Defendant") and is doing business in this district.

5. Does 1-100 are believed to distributors, resellers or end users of Defendant's Products, defined below.

## ASSERTED PATENTS

6. This case relates to United States Patent No. 9,258,309 ("'309 Patent"),[1] for operating a wireless access point for providing access to a network. By assignment, Bounts is the owner of all rights in the '309 Patent.

---

[1] Exhibit 1, copy of United States Patent No. 9,258,309.

7. Bounts has designed, developed, produced, manufactured, marketed, sold, and distributed devices and/or methods for operating a wireless access point for providing access to a network.

8. The devices and methods of Bounts are protected by the '309 Patent.

9. Bounts currently sells and offers for sale patent licenses for devices and methods for operating a wireless access point for providing access to a network throughout the United States, including in the state of Pennsylvania.

**INFRINGEMENT OF ASSERTED PATENTS**

10. Without authorization from Bounts, Defendant has and/or does manufacture, import into, sell, offer for sale, use and/or provide and promotes in the United States systems and/or methods for operating a wireless access point for providing access to a network including, but not limited to, its WiFi Direct products.

11. Defendant's WiFi Direct products include systems and/or methods named Connectify Hotspots with cross connect which provide and operate a wireless access point for providing access to a network by providing a local hotspot ("Defendant's Hotspot Products").

12. For example, claim 1 of the '309 Patent claims:

> A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub- network, the method comprising:
>
> setting up a first network address and routing table in the network interface card or module for use in the first sub-network;
>
> setting up a second network address and routing table in the network interface card or module for use in the second sub-network;
>
> using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the

> other of the first and second sub-network, using the network addresses and routing tables,
>
> wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and
>
> wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gate- way if and only if the user is entitled to access the gateway.

13. When read and understood by one skilled in the art, Claim 1 of the '309 Patent reads on the systems, processes and/or methods of Defendant's Hotspot Products offered for sale, sold, taught, encouraged and induced by Defendant in the United States.

14. At least claim 1 of the '309 Patent ("Asserted Claim") reads on functionality of Defendant's Hotspot Products. This is confirmed by one skilled in the art, prior to filing this action, running, observing and analyzing the operation, steps, code, code-induced functionality (herein "functionality") and results achieved by the methods employed by Defendant's Hotspot Products and by Defendant's own descriptions thereof, as set forth in the following allegations.

15. The '309 Patent is directed to "a method of operating a wireless access point for providing access to a network. This allows, for example, operation of a wireless access point for providing access to the Internet ( commonly know[n] as a "hotspot"). '309 Patent, 1:7-10 (citation format to '309 Patent throughout is to column:line(s)). Like the '309 Patent, Defendant's Hotspot Products provides a wireless access point to the Internet: "Connectify Hotspot: Turn your PC into a Wi-Fi Hotspot and share Internet with all your devices." www.connectify.me. Defendant expressly admits:



www.connectify.me.

16.     As to claim 1, Defendant's Hotspot Products provides "a method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network" as follows.  Defendant expressly states that using Defendant's Hotspot Products requires using just one network interface card namely "just your computer's internal WiFi card and Connectify Hotspot software:"

### Best Virtual Router Software for Windows 7, 8, 10 and 11

If you need to share an Internet connection with other devices, extend a WiFi network or maybe just create a network between your devices, what will you use? Most probably the first thing that comes into your mind is a WiFi router. But there's no reason to spend time configuring it and carrying it around in order to stay connected on-the-road or at job sites. With just your computer's internal WiFi card and Connectify Hotspot software, you've got a fully-featured virtual router.

https://connectify.me/virtual-router-for-windows/.  The first sub-network in a hotspot configuration is the network established between the computing device and the router also called the Wireless Local Area Network (WLAN).  The first sub-network communicates with the network card in the computing device. The second sub-network is generated by Defendant's Hotspot Product software including its cross connect

functionality. The cross connect functionality establishes a second, virtual sub-network which also communicates with the network card. The second sub-network includes an IP address of a routing table entry established by Defendant's Hotspot Products.

17. As to claim 1, Defendant's Hotspot Products provides "setting up a first network address and routing table in the network interface card or module for use in the first sub-network" as follows.

18. The first network address is an IP address received by the Defendant's hotspot software from the WLAN router and is used by Defendant's Hotspot Product software to set up or configure a routing table entry with the network or IP address for use in the first sub-network.

19. As to claim 1, Defendant's Hotspot Products provides "setting up a second network address and routing table in the network interface card or module for use in the second sub-network" by Defendant's Hotspot Product with its cross connection providing functionality of a DHCP server, setting up a second network address (virtual network) in a routing table entry. An example of setting up a second network address and routing table is found in Defendant's Wi-Fi Peer-to-Peer (P2P) Technical Specification v1.7, section 3.2.6.1. The second network or IP address is used in the second sub-network of the Defendant's Hotspot Products.

20. As to claim 1, Defendant's Hotspot Products provides "using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables" as follows. Observation of routing tables and data transmission established, caused and used when Defendant's Hotspot Product

software is running shows that on the single network card, data is transmitted between the first and second sub-networks (WLAN and Guest) using the network addresses and routing tables/entries that are generated by Defendant's Hotspot Products and that attribute sub-network destination and source for the data traffic.

21. As to claim 1, Defendant's Hotspot Products provides "wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway" as follows. The cross connect functionality of Defendant's Hotspot Products uses the first sub-network to act as a gateway for transmitting data to and from the internet. The cross connect functionality of Defendant's Hotspot Products uses the network card or adapter configured to carry data from the second sub-network and to the network gateway and to control said access between second sub-network and the network gateway.

22. As to claim 1, Defendant's Hotspot Products provides "wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway." The Defendant's Hotspot Products include functionality to receive a data request from a user at the second sub-network seeking access to the gateway of the first sub-network. The Defendant's Hotspot Products with cross connect also has functionality requiring a password to verify the user's right to access the internet gateway. Within the cross connection functionality standard, the Defendant's Hotspot Product software verifies the user's access rights associated with the user's password and the user is allowed to access the gateway and beyond only if the user is entitled to access

the gateway. *E.g.,* Defendant's WiFi Peer-to-Peer (P2P) Technical Specification, section 3.2.1 P2P Group ID.

23. Without authorization from Bounts, Defendant has and/or does manufacture, import into, sell, offer for sale, use and/or provide Defendant's Hotspot Products with the forgoing method functionality in or export them out of the United States to third-parties.

24. Without authorization from Bounts, Defendant has and/or does provide, promote, teach and/or encourage the use of Defendant's Hotspot Products with the forgoing method functionality. This is established by Defendant's own instructions to third parties. For example, the Defendant expressly touts the ability of and encourages the use of its Hotspot Product software to establish a wireless hotspot which uses the forgoing method as established above. *E,g.,* https://youtu.be/E9RnRdCwteY.

25. Since at least as early the initial filing of this action March 8, 2023, Defendant has known of the '309 Patent and Plaintiff's allegations of infringement.

26. Since at least March 8, 2023, the '309 Patent and infringement thereof was called to the attention of Defendant. However, Defendant has not affirmatively sought to avoid using or change the methods described and alleged herein. As a result, it can be reasonably inferred from Defendant's conduct that Defendant has actually known with a high likelihood that infringing conduct has occurred and continues to occur by Defendant and that Defendant has expressly and affirmatively provided instructions materials to its clients that enable them to perform the acts that infringe the '309 Patent as promoted by Defendant, or Defendant has been and/or continues to be willfully blind to the acts of direct infringement and inducement of infringement.

27. Defendant has engaged and continues to engage, with at least willful blindness to the existence of the patent-in-suit, in affirmative acts to induce third parties to perform acts that Defendant knew and/or knows constitutes infringement of the '309 Patent or was and continues to be willfully blind to that fact with the specific intent to cause such infringement, and which resulted and results in third parties directly infringing as established herein.

28. Thus, without authorization from Bounts, Defendant has actively induced and/or is actively inducing one or more distributors and/or resellers to further sell, provide, promote, teach and encourage the use of Infringing Products in the United States.

29. Similarly, without authorization from Bounts, Defendant has actively induced and/or is actively inducing customers and/or other third parties to use Infringing Methods in the United States.

30. Defendant's conduct constitutes infringement of one or more claims of the '309 Patent.

31. The forgoing conduct of Defendant has caused and will continue to cause irreparable harm to Bounts.

32. The conduct of Defendant is willful or willfully blind and will continue to be unless enjoined by this Court.  As established herein, the objectively high likelihood that Defendant's action constitute direct infringement of the '309 Patent has been and continues to be actually know by Defendant or has been and is so obvious that Defendant would know of the infringement but for willful blindness.

33. The forgoing conduct of Defendant has caused and will continue to cause harm and damage to Bounts.

34. Because the conduct of Defendant has been and continues to egregious under the circumstances, this is a case in which Defendant should be required to pay Bounts' increased damages and attorney's fees.

## COUNT I

**(Direct Infringement of one or more claims of the '309 Patent)**

35. Bounts incorporates by reference all the allegations of paragraphs 1 through 21 of this Complaint as though set forth here in full.

36. Pursuant to the patent laws of the United States, using the methods and/or products of Defendant's Products by Defendant and others constitute direct infringement of claim 1 of the '309 Patent by either literal infringement or by infringement under the doctrine of equivalents.

37. This infringement has been knowing, willful, in bad faith, egregious, willfully blind and/or in reckless disregard of the rights of Bounts.

38. This infringement has caused Bounts monetary damage in an amount of at least $100,000, or a greater amount to be proven at trial.

39. Bounts' rights have been irreparably harmed and each Defendant and each should be enjoined from further infringement.

## COUNT II

### (Induced Infringement of one or more claims of the '309 Patent)

40.     Bounts incorporates by reference all the allegations of paragraphs 1 through 26 of this Complaint as though set forth here in full.

41.     Pursuant to patent laws of the United States, the forgoing products and/or acts of Defendant constitute inducing infringement by others of at least claim 1 of the '309 Patent .

42.     The induced infringement by Defendant has been knowing, willful, in bad faith, egregious, willfully blind and/or in reckless disregard of the rights of Bounts..

43.     The induced infringement has caused Bounts monetary damage in an amount of at least $100,000, a greater amount to be proven at trial.

44.     The induced infringement has harmed Bounts' rights and should be enjoined from further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Bounts, prays for judgment and relief as follows:

A.     Judgment in favor of Bounts finding that Defendant is liable for direct infringement of the '309 Patent.

B.      Judgment in favor of Bounts finding that Defendant is liable for inducing infringement of the '309 Patent.

C.     Judgment that the infringement by Defendant has been willful.

  D. An award of at least $100,000, and a further accounting for and an award of any and all other ascertainable damages as determined at trial, related to the unlawful acts of Defendant.

  E. Judgment in favor of Bounts that damages should be increased up to three times.

  F. For permanent injunctive relief ordering Defendant and those associated with Defendant to refrain from further infringing any claims of the '309 Patent.

  G. For reasonable attorney's fees, costs and interest.

  H. For such further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues raised by the Complaint.

Dated this 27th day of September 2023.

    /s/ *Todd E. Zenger*

    Todd E. Zenger
    Duren IP, PC
    610 E. South Temple Street, Suite 300
    Salt Lake City, UT 84102
    801-869-8535
    Email: tzenger@durenip.com

    Mark E. Seiberling (No. 91256)
    Kleinbard LLC
    Three Logan Square
    1717 Arch Street, 5th Floor
    Philadelphia, PA 19103
    Tel.: 215-568-2000
    Email: mseiberling@kleinbard.com