Todd E. Zenger (*pro hac vice admission*)
DUREN IP PC
610 E. South Temple Street
Suite 300
Salt Lake City, UT 84102
Tel.: 801-869-8535
Email: tzenger@durenip.com

Mark E. Seiberling (No. 91256)
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.: 215-568-2000
Email: mseiberling@kleinbard.com

*Attorneys for Bounts Technologies Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOUNTS TECHNOLOGIES LTD.,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | |
| | : | **2:23-cv-00890-MRP** |
| **v.** | : | |
| | : | |
| **CONNECTIFY, INC., and DOES 1-100** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF PLAINTIFF**

**IN OPPOSITION TO DEFENDANT'S 12(b) MOTION TO DISMISS**

i

Table of Contents

INTRODUCTION ......................................................................................... 1

I.    The Second Amended Complaint Fully Complies with Rule 8 Notice Pleading and
Rule 12(b) Requirements in a Patent Case .................................................... 2

II.   The Second Amended Complaint Properly Alleges Plausible Claims of
Infringement ............................................................................................ 3

    A.   Direct Infringement ........................................................................ 3

    B.   Inducing Infringement ..................................................................... 9

    C.   Willful Infringement ...................................................................... 11

III.   Defendant's Motion Improperly Imposes the Infringement Contention Standards
of Standing Order 2020-05-06 at the Initial Pleading Level ....................... 12

IV.    Defendant's Motion Presents Claim Construction Issues ................................. 13

V.    Claim Construction Governs Defendant's Motion ................................. 13

VI.    The Court's 2020-05-06 Standing Order Governs this Patent Case ................. 13

VII.   Defendant's Motion Presents Incomplete Claim Construction Analysis
Attempting to By-Pass the Procedure of Standing Order 2020-05-06 ......................... 14

CONCLUSION ........................................................................................ 15

Table of Authorities

Cases

*ABB Turbo Sys AG v. TurboUSA Inc.,*
774 F3d 979, 984, 113 USPQ2d 1248 (Fed. Cir. 2014) ...................................................... 2
*Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)........................................ 2, 3
*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................................ 2, 3
*Conley v. Gibson,*
355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)............................................................. 4
*Erickson v. Pardus,*
551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)............................................... 4
*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.,*
467 F.3d 1355, 1366 (Fed. Cir. 2006)............................................................................... 12
*Progme Corp. v. Comcast Cable Comm. LLC,*
2017 WL 5070723 at *3 (E.D. Pa.) ................................................................................... 11
*Speaker v. U.S. Dep't of Health & Human Servs.,*
623 F.3d 1371, 1384 (11th Cir.2010) .................................................................................. 2

Rules

Fed. R. Civ. Proc. 12.................................................................................... 1, 2, 3, 4, 12
Fed. R. Civ. Proc. 56............................................................................................... 1, 3
Fed. R. Civ. Proc. 8............................................................................................... 2, 12

Plaintiff, Bounts Technologies Ltd., submits this memorandum in opposition to Defendant's Rule 12(b) motion to Dismiss ("Motion") (Docket No. ECF 18).

INTRODUCTION

This is a patent case.  It is governed by the Courts' Standing Order Governing Proceedings – Patent Cases.

Defendant's Motion is procedurally and substantively insufficient for a patent case in this District.  The core issue and argument of Defendant's Motion turns upon claim construction.

Defendant's Motion presents premature and incomplete claim construction and infringement analysis; the Motion merely presents lawyer argument referencing only limited portions of the Patent-in-Suit and its prosecution history and then proceeds with its plausibility analysis as to infringement.  This is defective analysis.

Other portions of the patent and/or prosecution history address the scope of the claim terms and refute Defendant's incomplete claim construction and infringement analysis.  Defendant's Motion is procedurally premature and insufficient because it ignores notice pleading and improperly by-passes procedure of this District's Standing Order Governing Proceedings – Patent Cases, including claim contention, construction and infringement issues, all subject to amendment.

Defendant's Motion also appears to be a disguised motion for summary judgment. The Defendant's Motion reveals that at least genuine issues facts underlying plausible grounds for relief exist which preclude granting the motion under Rule 12(b) or 56.

1

Furthermore, Plaintiff has filed a Second Amended Complaint (ECF 26) which renders Defendant's pending motion to dismiss moot.

I.      The Second Amended Complaint Fully Complies with Rule 8 Notice Pleading and Rule 12(b) Requirements in a Patent Case

Notice pleading requires identification of asserted patent claims and the alleged infringing product.  Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, by the presence of factual allegations making relief under the governing law plausible, not merely speculative.[1]

Thus, Rule 8(a)(2) requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which requires that the complaint " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' "[2]

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level."[3]  Rule 8's pleading standard "does not require 'detailed factual allegations.' "[4]  But it requires more than "barren recitals of the statutory elements, shorn of factual specificity,"[5]  and more

---

[1] *ABB Turbo Sys AG v. TurboUSA Inc.,* 774 F3d 979, 984, 113 USPQ2d 1248 (Fed. Cir. 2014).
[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ).
[3] *Id.*
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ); see also  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*) ("Specific facts are not necessary....").
[5] *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1384 (11th Cir.2010).

than the mere possibility of liability or mere consistency with liability.[6]  What is needed is "facial plausibility" of the claim, which exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]  Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation.[8]

II.    The Second Amended Complaint Properly Alleges Plausible Claims of Infringement

A. Direct Infringement

The allegations of infringement of the Second Amended Complaint[9] expressly plead infringing products, namely, Defendant's Wifi Direct products including Defendant's Hotspot Product with is cross connection functionality.[10]  The Second Amended Complaint expressly pleads the elements of claim 1 of the '309 Patent.[11]  The Second Amended Complaint expressly pleads that the claim elements of claim 1 read on Defendant's Wifi direct products.[12]  The Second Amended Complaint expressly pleads that without authorization from Plaintiff Defendant makes, uses, sell, distributes and exports Plaintiff's patented technology.[13]  Taken as true under the Rule 12, these acts of Defendant constitute direct infringement.

---

[6] *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ; *Twombly*, 550 U.S. at 557, 570, 127 S.Ct. 1955.
[7] *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).
[8] *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.
[9] Second Amended Complaint, ECF 26, ¶¶ 10-32.
[10] *Id.,* ¶ 11.
[11] *Id.,* ¶ 12.
[12] *Id.,* ¶¶ 13-14.
[13] *Id.,* ¶ 23.

The Second Amended Complaint includes factual specificity as to how the Defendant's Hotspot Products operate with correspondence to each element of asserted claim 1 of the '309 Patent at paragraphs 10-22 including the following factual specificity and context.

Without authorization from Bounts, Defendant has and/or does manufacture, import into, sell, offer for sale, use and/or provide and promotes in the United States systems and/or methods for operating a wireless access point for providing access to a network including, but not limited to, its WiFi Direct products.

Defendant's WiFi Direct products include systems and/or methods named Connectify Hotspots with cross connect which provide and operate a wireless access point for providing access to a network by providing a local hotspot ("Defendant's Hotspot Products").

For example, claim 1 of the '309 Patent claims:

A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub- network, the method comprising:

setting up a first network address and routing table in the network interface card or module for use in the first sub-network;

setting up a second network address and routing table in the network interface card or module for use in the second sub-network;

using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,

wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and

wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user

4

to access the gate- way if and only if the user is entitled to access the gateway.

When read and understood by one skilled in the art, Claim 1 of the '309 Patent reads on the systems, processes and/or methods of Defendant's Hotspot Products offered for sale, sold, taught, encouraged and induced by Defendant in the United States.

At least claim 1 of the '309 Patent ("Asserted Claim") reads on functionality of Defendant's Hotspot Products.  This is confirmed by one skilled in the art, prior to filing this action, running, observing and analyzing the operation, steps, code, code-induced functionality (herein "functionality") and results achieved by the methods employed by Defendant's Hotspot Products and by Defendant's own descriptions thereof, as set forth in the following allegations.

The '309 Patent is directed to "a method of operating a wireless access point for providing access to a network. This allows, for example, operation of a wireless access point for providing access to the Internet ( commonly know[n] as a "hotspot").  '309 Patent, 1:7-10 (citation format to '309 Patent throughout is to column:line(s)).  Like the '309 Patent, Defendant's Hotspot Products provides a wireless access point to the Internet: "Connectify Hotspot: Turn your PC into a Wi-Fi Hotspot and share Internet with all your devices." www.connectify.me.  Defendant expressly admits:



## Connectify Hotspot Features

### Hotspot Easily Connects All Your Devices to Wi-Fi

Connectify Hotspot makes all your devices happy. This easy-to-use **virtual router** application lets you share Internet from your laptop with your smartphone, tablet, media player, e-reader, other laptops, and even your nearby friends. Use it anywhere in the world without restrictions.

www.connectify.me.

As to claim 1, Defendant's Hotspot Products provides "a method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network" as follows. Defendant expressly states that using Defendant's Hotspot Products requires using just one network interface card namely "just your computer's internal WiFi card and Connectify Hotspot software:"

### Best Virtual Router Software for Windows 7, 8, 10 and 11

If you need to share an Internet connection with other devices, extend a WiFi network or maybe just create a network between your devices, what will you use? Most probably the first thing that comes into your mind is a WiFi router. But there's no reason to spend time configuring it and carrying it around in order to stay connected on-the-road or at job sites. With just your computer's internal WiFi card and Connectify Hotspot software, you've got a fully-featured virtual router.

https://connectify.me/virtual-router-for-windows/.  The first sub-network in a hotspot configuration is the network established between the computing device and the router also called the Wireless Local Area Network (WLAN).  The first sub-network communicates with the network card in the computing device. The second sub-network is generated by Defendant's Hotspot Product software including its cross connect

6

functionality. The cross connect functionality establishes a second, virtual sub-network which also communicates with the network card. The second sub-network includes an IP address of a routing table entry established by Defendant's Hotspot Products.

As to claim 1, Defendant's Hotspot Products provides "setting up a first network address and routing table in the network interface card or module for use in the first sub-network" as follows.

The first network address is an IP address received by the Defendant's hotspot software from the WLAN router and is used by Defendant's Hotspot Product software to set up or configure a routing table entry with the network or IP address for use in the first sub-network.

As to claim 1, Defendant's Hotspot Products provides "setting up a second network address and routing table in the network interface card or module for use in the second sub-network" by Defendant's Hotspot Product with its cross connection providing functionality of a DHCP server, setting up a second network address (virtual network) in a routing table entry. An example of setting up a second network address and routing table is found in Defendant's Wi-Fi Peer-to-Peer (P2P) Technical Specification v1.7, section 3.2.6.1. The second network or IP address is used in the second sub-network of the Defendant's Hotspot Products.

As to claim 1, Defendant's Hotspot Products provides "using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables" as follows. Observation of routing tables and data transmission established, caused and used when Defendant's Hotspot Product software is

running shows that on the single network card, data is transmitted between the first and second sub-networks (WLAN and Guest) using the network addresses and routing tables/entries that are generated by Defendant's Hotspot Products and that attribute sub-network destination and source for the data traffic.

As to claim 1, Defendant's Hotspot Products provides "wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway" as follows. The cross connect functionality of Defendant's Hotspot Products uses the first sub-network to act as a gateway for transmitting data to and from the internet. The cross connect functionality of Defendant's Hotspot Products uses the network card or adapter configured to carry data from the second sub-network and to the network gateway and to control said access between second sub-network and the network gateway.

As to claim 1, Defendant's Hotspot Products provides "wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway." The Defendant's Hotspot Products include functionality to receive a data request from a user at the second sub-network seeking access to the gateway of the first sub-network. The Defendant's Hotspot Products with cross connect also has functionality requiring a password to verify the user's right to access the internet gateway. Within the cross connection functionality standard, the Defendant's Hotspot Product software verifies the user's access rights associated with the user's password and the user is allowed to access the gateway and beyond only if the user is entitled to access

8

the gateway.  *E.g.,* Defendant's WiFi Peer-to-Peer (P2P) Technical Specification, section 3.2.1 P2P Group ID.

This factual specificity, accepted as true, provides the Court a reasonable basis to infer that, as alleged, the Second Amended Complaint present plausible claims for relief for direct infringement.

### B.  Inducing Infringement

The allegations of infringement of the Second Amended Complaint expressly plead inducing infringement.[14]  The allegation of inducing infringement continues with each day to the current date until Defendant ceases doing so.

The allegation of inducing infringement includes:

Without authorization from Bounts, Defendant has and/or does manufacture, import into, sell, offer for sale, use and/or provide Defendant's Hotspot Products with the forgoing method functionality in or export them out of the United States to third-parties.

Without authorization from Bounts, Defendant has and/or does provide, promote, teach and/or encourage the use of Defendant's Hotspot Products with the forgoing method functionality.  This is established by Defendant's own instructions to third parties.  For example, the Defendant expressly touts the ability of and encourages the use of its Hotspot Product software to establish a wireless hotspot which uses the forgoing method as established above.  *E.g.,* https://youtu.be/E9RnRdCwteY.

Since at least as early the initial filing of this action March 8, 2023, Defendant has known of the '309 Patent and Plaintiff's allegations of infringement.

---

[14] *Id.,* ¶¶ 24-29.

Since at least March 8, 2023, the '309 Patent and infringement thereof was called to the attention of Defendant.  However, Defendant has not affirmatively sought to avoid using or change the methods described and alleged herein.  As a result, it can be reasonably inferred from Defendant's conduct that Defendant has actually known with a high likelihood that infringing conduct has occurred and continues to occur by Defendant and that Defendant has expressly and affirmatively provided instructions materials to its clients that enable them to perform the acts that infringe the '309 Patent as promoted by Defendant, or Defendant has been and/or continues to be willfully blind to the acts of direct infringement and inducement of infringement.

Defendant has engaged and continues to engage, with at least willful blindness to the existence of the patent-in-suit, in affirmative acts to induce third parties to perform acts that Defendant knew and/or knows constitutes infringement of the '309 Patent or was and continues to be willfully blind to that fact with the specific intent to cause such infringement, and which resulted and results in third parties directly infringing as established herein.

Thus, without authorization from Bounts, Defendant has actively induced and/or is actively inducing one or more distributors and/or resellers to further sell, provide, promote, teach and encourage the use of Infringing Products in the United States.

Similarly, without authorization from Bounts, Defendant has actively induced and/or is actively inducing customers and/or other third parties to use Infringing Methods in the United States.

This factual specificity, accepted as true, provides the Court a reasonable basis to infer that, as alleged, the Second Amended Complaint present plausible claims for relief for induced infringement.

### C.  Willful Infringement

The allegations of infringement of the Second Amended Complaint expressly plead willful infringement.[15]  The allegation of willful infringement continues with each day to the current date until Defendant ceases infringing.

The allegations of willful infringement further include:  The conduct of Defendant is willful or willfully blind and will continue to be unless enjoined by this Court.  As established herein, the objectively high likelihood that Defendant's action constitute direct infringement of the '309 Patent has been and continues to be actually know by Defendant or has been and is so obvious that Defendant would know of the infringement but for willful blindness.

As shown, the Second Amended Complaint includes "detailed factual allegations" and "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  The Second Amended Complaint sufficiently alleges facial plausibility of Plaintiff's infringement claims for liability and willfulness..

Taken as true under the Rule 12(b) standard, Defendant's conduct can result in liability for infringement and willful infringement.  Defendant' Motion should be denied.

---

[15] *Id.,* ¶¶ 25-32.
[16] *Progme Corp. v. Comcast Cable Comm. LLC*, 2017 WL 5070723 at *3 (E.D. Pa.).

III.    Defendant's Motion Improperly Imposes the Infringement Contention
Standards of Standing Order 2020-05-06 at the Initial Pleading Level

Without proper discussion of Rule 8 and 12(b) in the context of this case,
Defendant's Motion seeks to impose the infringement contention requirements of the
Standing Order at the initial pleading stage.  Defendant cites no authority for this
imposition.  Defendant's "each and every limitation" demand is met by reading the claim
elements of claim 1 on Defendant's products.  Defendant appears to demand the
equivalent of claim-chart-type allegations citing supporting evidence.  This standard for
claim contentions does not belong at the initial pleading state: Defendant is seeking to
foist claim contention requirements into initial pleadings.  The Federal Circuit has
rejected this approach and it should be rejected in this case:

> [i]f a local patent rule required the final identification of infringement and
> invalidity contentions to occur at the outset of the case, shortly after the pleadings
> were filed and well before the end of discovery, it might well conflict with the
> spirit, if not the letter, of the notice pleading and broad discovery regime created
> by the Federal Rules.[17]

Rule 8 allegations and Standing Order contentions are different in nature and scope.
Contentions are and can be influenced and amended based upon discovery.

Defendant's Motion appears to require allegations far beyond Rule 8 and 12(b)
pleading by demanding contention type disclosures.  There is no authority for this
demand.  Defendant's demand for pleading beyond the requirements of Rule 8 and 12
should be rejected.

---

[17] *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

IV.    Defendant's Motion Presents Claim Construction Issues

The basis and arguments of Defendant's Motion are noninfringement.  An analysis of infringement requires reading properly construed claims of the '309 Patent on the Defendant's products.  Defendant's Motion clearly presents claim construction issues.

V.    Claim Construction Governs Defendant's Motion

The basis and arguments of Defendant's Motion require claim construction of terms of United States Patent 9,258,309 ("'309 Patent" or "Patent-in-Suit").  Claim construction has not occurred in this case: Defendant's Motion objectively lacks the procedure and content required for proper claim construction.

VI.    The Court's 2020-05-06 Standing Order Governs this Patent Case

This Court's 2020-05-06 Standing Order Governing Proceedings – Patent Case ("Standing Order")[18] identifies the accepted procedure of this Court for determinations of claim construction and infringement.  Defendant's Motion is premature because the Standing Order procedure has not yet occurred.

---

[18] Ex. 1, 2020-05-06 Order Governing Proceedings - Patent Cases.pdf, found at https://www.paed.uscourts.gov/documents/standord/2020-05-06%20Order%20Governing%20Proceedings%20-%20Patent%20Cases.pdf.

VII.    Defendant's Motion Presents Incomplete Claim Construction Analysis
Attempting to By-Pass the Procedure of Standing Order 2020-05-06

Defendant's Motion is substantively deficient in the scope and content of proper claim construction pursuant to the Standing Order.  Defendant's reliance upon lawyer argument alone as to selected portions of the prosecution history reveals the incomplete nature of Defendant's claim construction and infringement analysis.

Defendant's arguments of claim construction and infringement lack the very context of the claimed inventions of the '309 Patent.  The context of the claimed inventions of the '309 Patent require a proper analysis and understanding of the term "computer,"[19] "laptop computer"[20] or "a general purpose"[21] using "single network interface card"[22] related to "first network address and routing table,"[23] and "second network address and routing table"[24] all as of November 2008, the filing date of the '309 Patent. Defendant does not provide this analysis.

Material questions of fact and law underly the meaning of the terms "computer," "laptop computer" or "a general purpose" using "single network interface card" related to "first network address and routing table," and "second network address and routing table" as interpreted by those of skill in the art as of the November 2008 filing date.  No such presentation or analysis has occurred and will not occur until the procedure of the Standing Order goes forward later in this case.  The abbreviated claim construction argument of Defendant's Motion is wholly deficient and should be given no weight.

---

[19] Ex. 2, '309 Patent, *e.g.,* column 3, line 20.
[20] *Id.*, *e.g.,* column 4, line 23.
[21] *Id.*, *e.g.,* column 4, lines 23-24.
[22] *Id.*, *e.g.,* column 5, line 41.
[23] *Id.*, *e.g.,* column 2, line 60.
[24] *Id.*, *e.g.,* column 2, line 62.

14

Absent proper claim construction, Defendant's infringements arguments fail and should be given no weight.

CONCLUSION

At this pleading stage, the Second Amended Complaint expressly alleges sufficient detailed factual allegations and factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The Second Amended Complaint sufficiently alleges facial plausibility of Plaintiff's infringement claims for liability. Defendant's Motion is rendered moot and should be denied under either the Rule 12(b) or Rule 56 standard.

Dated this 27th day of September 2023.

/s/ *Todd E. Zenger*

Todd E. Zenger
DUREN IP PC
610 E. South Temple Street,
Suite 300
Salt Lake City, UT 84102
801-869-8535
Email: tzenger@durenip.com

Mark E. Seiberling (No. 91256)
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.: 215-568-2000
Email: mseiberling@kleinbard.com

CERTIFICATE OF SERVICE

I certify that the forgoing paper was duly filed using the court's electronic filing system causing service on the following counsel, and/or that the forgoing was served on the following counsel by email:

Kevin R. Casey
Patrick R. Kingsley
Samantha B. Kats
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355-1481
tel.:    610.640.5813

*/s/ Todd E. Zenger*