IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOUNTS TECHNOLOGIES LTD., | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : |
| v. | : 2:23-cv-00890-MRP |
| | : |
| CONNECTIFY, INC., and DOES 1-100 | : |
| | : |
| Defendants. | : |

**OPPOSITION MEMORANDUM OF PLAINTIFF**
**TO DEFENDANT'S SECOND MOTION FOR SANCTIONS**

Plaintiff, Bounts Technologies Ltd., submits this memorandum in opposition to Defendant's motion for sanctions (Docket No. ECF 24) and memorandum in support (Docket No. ECF 24-1) (collectively "Motion" herein).

## INTRODUCTION

This is a patent case. It is governed by the Court's Standing Order Governing Proceedings – Patent Cases.

Defendant's Motion is procedurally and substantively insufficient for a patent case in this District. The core issues and arguments of Defendant's Motion require proper claim construction. No proper claim construction is presented in the Motion. Without proper claim construction, infringement cannot properly be analyzed.

The Motion merely presents lawyer argument referencing only limited portions of the Patent-in-Suit and its prosecution history. This is defective analysis.

1

Defendant's Motion seeking to impose the evidentiary standard of the burden of proof for liability as the pleading standard and improperly by-passes the claim construction procedure of this District's Standing Order Governing Proceedings – Patent Cases.

Defendant's Motion also appears to be a disguised motion for summary judgment. The Defendant's Motion relies upon matters outside the pleadings and reveals that at least genuine issues of material fact underlying the non-plausibility argument exist, thereby precluding granting the motion under Rule 11 or 56.

I. A Proper Pre-filing Investigation was Conducted by one of Skill in the Art

Consistent with Rule 11, a pre-filing investigation, review and analysis of Defendant's Hotspot Product was conducted by one skilled in the art.[1] That investigation reviewed Defendant's own publications related to its Hotspot Product and permitted one skilled in the art to identify software code, processes, routing tables, networks, steps and functionality of Defendant's Hotspot Product which meet each and every element of claim 1 of the asserted '309 Patent.

Inventor Levi Russell is skilled in the art. He downloaded, used and analyzed the accused Hotspot Product. He was able to identify software code, processes, routing tables, networks, steps and functionality of Defendant's Hotspot Product that would be understood by one skilled in the art. For example, he was able to run, observe and analyze the operation, steps, code, code-induced functionality and results achieved by the methods employed by Defendant's Hotspot Products and as explained by Defendant's own published descriptions of the Hotspot Products. His inspection of the Hotspot Product revealed that Defendant's Hotspot Product embodies all the claim elements of claim 1 of the '309 Patent.

---

[1] Ex. 1 – Declaration of Levi Russell.

The '309 Patent is directed to "a method of operating a wireless access point for providing access to a network. This allows, for example, operation of a wireless access point for providing access to the Internet ( commonly know[n] as a "hotspot").[2]  Mr. Russel identified that, like the '309 Patent, Defendant's Hotspot Products provides a wireless access point to the Internet: Indeed, Defendant admits: "Connectify Hotspot: Turn your PC into a Wi-Fi Hotspot and share Internet with all your devices."[3]   Defendant expressly explains in its own publication[4]:



Mr. Russell also determined that like claim 1 directed to "a method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, " Defendant's Hotspot Products provides the same.  Defendant expressly states[5] that using Defendant's Hotspot Products requires using just one network interface card namely "just your computer's internal WiFi card and Connectify Hotspot software:"

---

[2] '309 Patent, 1:7-10 (citation format to '309 Patent throughout is to column:line(s)).
[3] www.connectify.me.
[4] www.connectify.me.
[5] https://connectify.me/virtual-router-for-windows/.

> **Best Virtual Router Software for Windows 7, 8, 10 and 11**
>
> If you need to share an Internet connection with other devices, extend a WiFi network or maybe just create a network between your devices, what will you use? Most probably the first thing that comes into your mind is a WiFi router. But there's no reason to spend time configuring it and carrying it around in order to stay connected on-the-road or at job sites. With just your computer's internal WiFi card and Connectify Hotspot software, you've got a fully-featured virtual router.

Based upon Mr. Russell observation, the Hotspot Product generates a first sub-network between the computing device and the router also called the Wireless Local Area Network (WLAN). The first sub-network communicates with the network card in the computing device. The second sub-network is generated by Defendant's Hotspot Product software including its cross connect functionality. The cross connect functionality establishes a second, virtual sub-network which also communicates with the network card. The second sub-network includes an IP address of a routing table entry established by Defendant's Hotspot Products.

Mr. Russell also determined that like claim 1 directed to "setting up a first network address and routing table in the network interface card or module for use in the first sub-network" that the Defendant's Hotspot Product also does so. His observation of the operation of Defendant's Hotspot Product reveals that its first network address is an IP address received by the Defendant's hotspot software from the WLAN router and is used by Defendant's Hotspot Product software to set up or configure a routing table entry with the network or IP address for use in the first sub-network.

Mr. Russell's inspection also determined that like claim 1 directed to "setting up a second network address and routing table in the network interface card or module for use in the second sub-network" that Defendant's Hotspot Products uses this technique. Mr. Russell's observation identified Defendant's Hotspot Product with its cross connection providing functionality of a

DHCP server, setting up a second network address (virtual network) in a routing table entry. An example of setting up a second network address and routing table is found in the WiFi Alliance's Wi-Fi Peer-to-Peer (P2P) Technical Specification v1.7, section 3.2.6.1. That second network or IP address is used in the second sub-network of the Defendant's Hotspot Products.

In addition, Mr. Russell's inspection determined that like claim 1 directed to "using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables" that Defendant's Hotspot Products also does so. He observed the use of routing tables and data transmission established, caused and used when Defendant's Hotspot Product software is running and which show that on the single network card, data is transmitted between the first and second sub-networks (WLAN and Guest) using the network addresses and routing tables/entries that are generated by Defendant's Hotspot Products including governance of data traffic between network destinations.

Mr. Russell's inspection also determined that like claim 1 directed to "wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway" that Defendant's Hotspot Products also include these features and functions. He observed that the cross connect functionality of Defendant's Hotspot Products uses the first sub-network to act as a gateway for transmitting data to and from the internet. He identified that the cross connect functionality of Defendant's Hotspot Products uses the network card or adapter configured to carry data from the second sub-network and to the network gateway and to control access between the second sub-network and the network gateway.

Further, Mr. Russell's inspection also determined that like claim 1 directed to "wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway." that Defendant's Hotspot Products also do so by receiving a data request from a user at the second sub-network seeking access to the gateway of the first sub-network. The Defendant's Hotspot Products with cross connect requires use of a password to verify the user's right to access the internet gateway. Within the cross connection functionality standard, the Defendant's Hotspot Product software verifies the user's access rights associated with the user's password and the user is allowed to access the gateway and beyond only if the user is entitled to access the gateway. An example of this is taught in WiFi Alliance's WiFi Peer-to-Peer (P2P) Technical Specification, section 3.2.1 P2P Group ID.

This pre-filing inspection by one skilled in the art reveals Plaintiff's good faith investigation under Rule 11.

II. The Motion Fails to present the Understanding of One Skilled in the Art

It is axiomatic that claim construction must be guided by the understanding of one skilled in the relevant art at the time of the filing of the patent application.[6]

---

[6] *E.g., Cellcast Techs. v. United States*, No. 15-1307, slip op. page 7 (Fed. Cl. Oct 29, 2020) ("To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing.") (quoting *Chamberlain Grp. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008)); *Innova/ Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed.Cir.2004); *Phillips v. Awh Corp.*, 415 F.3d 1303, 1313 2005 WL 1620331 (Fed. Cir. 2005) ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention."); *Ferguson Beauregard/ Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed.Cir.2003) (claim terms "are examined through the viewing glass of a person skilled in the art"); see also *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed.Cir.2005) (meaning of claim "must be interpreted as of [the] effective filing

Defendant's Motion presents no evidence of the understanding of one skilled in the art; the Motion is based only upon lawyer argument only with evidence for any properly qualified expert. All claim construction and infringement analyses of the Motion are made only by litigation-related counsel, namely, litigation counsel "which represents the Defendant, Connectify, Inc., in this litigation" -- Kevin Casey (Casey Declaration, ECF 24-3, ¶ 2), and "a patent attorney working with Connectify, Inc." --Kamron Emdadi (Emdadi Declaration ECG 24-2, ¶ 3.). Neither Mr. Casey nor Mr. Emdadi are qualified as experts, or being or knowing the understanding of one skilled in the art. Absent a presentation of the understanding of one skilled in the art, the claim construction and infringement analyses presented in the Motion should be given no weight. This fatal shortcoming is a sound basis to deny the Motion.

    III.    The Motion is an Improper Motion for Summary Judgment

Sanctions are awarded upon a finding of improper conduct. There are no findings of improper conduct in this case. Sanction motions are typically reserved for the end of the case.[7]

Instead, the Motion prematurely seeks such findings at the pleading stage by relying upon matters outside the pleadings including at least the declarations of Mr. Casey (ECF 24-3) and Mr. Emdadi (ECF 24-2) and a factual "ANALYSIS OF US 9,258,309 B2" "drafted" by litigation

---

date" of the patent application); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 1007, (Fed. Cir. 1995)("Inventors' usages of words to describe their inventions, and the meaning thereby conveyed to persons skilled in the field, are questions of fact, not matters of law, in patent documents as in other written instruments."); also *Massachusetts Instit. of Tech. v. Abacus Software,* 462 F.3d 1344, 1362 (Fed. Cir. 2006) (an inventor can explain what claim terms mean to one skilled in the art).

[7] *E.g., Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998) ("However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation."; *Fed. R. Civ. P.* 11 (Rule 11 sanction "normally will be determined at the end of the litigation.") advisory committee notes (1983 amendment).

counsel with Mr. Emdadi. As such, under Rule 12(b) the Motion should be treated as a motion for summary. However, findings of fact related to infringement are not made during summary judgment. Defendant's Motion improperly asks the Court to make findings of facts at this pleading stage of the case. This should be rejected under Rule 56.

The evidence provided by Mr. Russell presents, at a minimum, genuine issues of material facts as to claim construction and infringement analyses. Therefore, the Motion should be denied.

    IV.    The Standard of Compliance with Rule 8 Notice Pleading and Rule 12(b) Requirements in a Patent Case

Notice pleading requires identification of asserted patent claims and the alleged infringing product. Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, by the presence of factual allegations making relief under the governing law plausible, not merely speculative.[8]

Thus, Rule 8(a)(2) requires that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which requires that the complaint " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' "[9]

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level."[10] Rule 8's pleading standard "does not require 'detailed factual allegations.' "[11] But it requires more than "barren recitals of

---

[8] *ABB Turbo Sys AG v. TurboUSA Inc.,* 774 F3d 979, 984, 113 USPQ2d 1248 (Fed. Cir. 2014).
[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ).
[10] *Id*.
[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ); see also *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*) ("Specific facts are not necessary....").

the statutory elements, shorn of factual specificity,"[12] and more than the mere possibility of liability or mere consistency with liability.[13] What is needed is "facial plausibility" of the claim, which exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation.[15]

    V.    The Complaint[16] Properly Alleges Plausible Claims of Infringement

        A.    Direct Infringement

The allegations of infringement of the Complaint[17] expressly plead infringing products, namely, Defendant's Wifi Direct products including Defendant's Hotspot Product with is cross connection functionality.[18] The Complaint expressly pleads the elements of claim 1 of the '309 Patent.[19] The Complaint expressly pleads that the claim elements of claim 1 read on Defendant's Wifi direct products.[20] The Complaint expressly pleads that without authorization from Plaintiff Defendant makes, uses, sell, distributes and exports Plaintiff's patented technology.[21] Taken as true under the Rule 12, these acts of Defendant constitute direct infringement.

---

[12] *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1384 (11th Cir.2010).
[13] *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ; *Twombly*, 550 U.S. at 557, 570, 127 S.Ct. 1955.
[14] *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).
[15] *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.
[16] The Second Amended Complaint ECF 26.
[17] Second Amended Complaint, ECF 26, ¶¶ 10-32.
[18] *Id.,* ¶ 11.
[19] *Id.,* ¶ 12.
[20] *Id.,* ¶¶ 13-14.
[21] *Id.,* ¶ 23.

The Complaint includes factual specificity as to how the Defendant's Hotspot Products operate with correspondence to each element of asserted claim 1 of the '309 Patent at paragraphs 10-24 including the following factual specificity and context.

When read and understood by one skilled in the art, Claim 1 of the '309 Patent reads on the systems, processes and/or methods of Defendant's Hotspot Products offered for sale, sold, taught, encouraged and induced by Defendant in the United States.

As established above, each element of claim 1 is observed in Defendant's Hotspot Product. This factual specificity, accepted as true, provides the Court a reasonable basis to infer that, as alleged, the Complaint presents a plausible claim for relief for direct infringement.

B.  Inducing Infringement

The allegations of infringement of the Complaint expressly plead inducing infringement. The allegation of inducing infringement continues with each day to the current date until Defendant ceases doing so.

The allegation of inducing infringement includes:

Without authorization from Bounts, Defendant has and/or does manufacture, import into, sell, offer for sale, use and/or provide Defendant's Hotspot Products with the forgoing method functionality in or export them out of the United States to third-parties. Without authorization from Bounts, Defendant has and/or does provide, promote, teach and/or encourage the use of Defendant's Hotspot Products with the forgoing method functionality. This is established by Defendant's own instructions to third parties. For example, the Defendant expressly touts the ability of and encourages the use of its Hotspot Product software to establish a wireless hotspot which uses the forgoing method as established above.[22]

---

[22] *E.g.*, https://youtu.be/E9RnRdCwteY.

Since at least as early the initial filing of this action March 8, 2023, Defendant has known of the '309 Patent and Plaintiff's allegations of infringement.

Since at least March 8, 2023, the '309 Patent and infringement thereof was called to the attention of Defendant.  However, Defendant has not affirmatively sought to avoid using or change the methods described and alleged herein.  As a result, it can be reasonably inferred from Defendant's conduct that Defendant has actually known with a high likelihood that infringing conduct has occurred and continues to occur by Defendant and that Defendant has expressly and affirmatively provided instructions materials to its clients that enable them to perform the acts that infringe the '309 Patent as promoted by Defendant, or Defendant has been and/or continues to be willfully blind to the acts of direct infringement and inducement of infringement.

Defendant has engaged and continues to engage, with at least willful blindness to the existence of the patent-in-suit, in affirmative acts to induce third parties to perform acts that Defendant knew and/or knows constitutes infringement of the '309 Patent or was and continues to be willfully blind to that fact with the specific intent to cause such infringement, and which resulted and results in third parties directly infringing as established herein.

Thus, without authorization from Bounts, Defendant has actively induced and/or is actively inducing one or more distributors and/or resellers to further sell, provide, promote, teach and encourage the use of Infringing Products in the United States.  Similarly, without authorization from Bounts, Defendant has actively induced and/or is actively inducing customers and/or other third parties to use infringing methods in the United States.

This factual specificity, accepted as true, provides the Court a reasonable basis to infer that, as alleged, the Complaint presents plausible claims for relief for induced infringement.

C.  Willful Infringement

The allegations of infringement of the Complaint expressly plead willful infringement. The allegation of willful infringement continues with each day to the current date until Defendant ceases infringing. The Motion presents no analysis including the understanding of one skilled in the art. Nevertheless, Defendant continues to sell and encourage others to use the Hotspot Product. This conduct reveals willful or willfully blind conduct and will continue to be unless enjoined by this Court. As established herein, the objectively high likelihood that Defendant's action constitutes direct infringement of the '309 Patent has been and continues to be actually known by Defendant or has been and is so obvious that Defendant would know of the infringement but for willful blindness.

As shown, the Complaint includes "detailed factual allegations" and "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The Complaint sufficiently alleges facial plausibility of Plaintiff's infringement claims for liability and willfulness.

Taken as true under the Rule 12(b) standard, Defendant's conduct can result in liability for infringement and willful infringement. Defendant' Motion should be denied.

VII.  Defendant's Motion Improperly Imposes the Infringement Contention Standards of Standing Order 2020-05-06 at the Initial Pleading Level

The Motion appears to demand the equivalent of claim-chart-type allegations at this pleading stage. This standard for claim contentions does not belong at the initial pleading state: Defendant is seeking to foist claim contention requirements into initial pleadings. The Federal Circuit has rejected this approach and it should be rejected in this case:

> [i]f a local patent rule required the final identification of infringement and invalidity contentions to occur at the outset of the case, shortly after the pleadings were filed and

12

well before the end of discovery, it might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules.[23]

Rule 8 allegations and Standing Order contentions are different in nature and scope. Contentions are and can be influenced and amended based upon discovery.

Defendant's Motion appears to require allegations far beyond Rule 8 and 12(b) pleading by demanding contention type disclosures. There is no authority for this demand. Defendant's demand for pleading beyond the requirements of Rule 8 and 12 should be rejected.

### A. The Court's 2020-05-06 Standing Order Governs this Patent Case

This Court's 2020-05-06 Standing Order Governing Proceedings – Patent Case ("Standing Order")[24] identifies the accepted procedure of this Court for determinations of claim construction and infringement. Defendant's Motion is premature because the Standing Order procedure has not yet occurred.

### B. Defendant's Motion Presents Incomplete Claim Construction Analysis Attempting to By-Pass the Procedure of Standing Order 2020-05-06

Defendant's Motion is substantively deficient in the scope and content of proper claim construction pursuant to the Standing Order. Defendant's reliance upon lawyer argument, selected portions of the prosecution history and matters outside the pleadings reveals the incomplete nature of Defendant's claim construction and infringement analysis.

The Motion lacks the required showing of the understanding of one skilled in the art as to the claimed inventions of the '309 Patent. For example, the context of the claimed inventions of

---

[23] *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).
[24] Ex. 2, 2020-05-06 Order Governing Proceedings - Patent Cases.pdf, found at https://www.paed.uscourts.gov/documents/standord/2020-05-06%20Order%20Governing%20Proceedings%20-%20Patent%20Cases.pdf.

the '309 Patent require a proper analysis and understanding of the terms "computer,"[25] "laptop computer"[26] or "a general purpose computer"[27] using a "network interface card"[28] or "single network interface card"[29] related to "first network address and routing table,"[30] and "second network address and routing table,"[31] and, importantly, the meaning of all these terms as of November 2008, the filing date of the '309 Patent. The Motion does not provide this analysis. This analysis is, however, necessary for the proper context/interpretation of the claimed inventions vis-à-vis the allegations of infringement.

Material questions of fact and law underly the meaning of the terms "computer," "laptop computer" or "a general purpose computer" using a "network interface card" or "single network interface card" related to "first network address and routing table," and "second network address and routing table" as interpreted by those of skill in the art as of the November 2008 filing date.[32] This required analysis is not presented in the Motion. The abbreviated, incomplete claim construction argument of Defendant's Motion is wholly deficient and should be given no weight. Absent proper claim construction, the Motion fails and should be given no weight.

## CONCLUSION

At this Rule 8 pleading stage, the Complaint expressly alleges sufficient detailed factual allegations and factual content warranted under existing law which allows the Court to draw the reasonable inference, accepting the allegations as true, that Connectify can be found liable for

---

[25] Ex. 3, '309 Patent, *e.g.,* column 3, line 20.
[26] *Id.*, *e.g.,* column 4, line 23.
[27] *Id.*, *e.g.,* column 4, lines 23-24.
[28] *Id.*, *e.g.,* column 5, line 41.
[29] *Id.*, e.g., column 3, lines 16-21.
[30] *Id.*, *e.g.,* column 2, line 60.
[31] *Id.*, *e.g.,* column 2, line 62.
[32] See footnote 5.

the misconduct alleged. The Complaint sufficiently alleges facial plausibility of Plaintiff's infringement claims for liability. Defendant's Motion should be denied under either the Rule 11 or Rule 56 standard.

Dated this 6th day of October 2023.

/s/ *Todd E. Zenger*

Todd E. Zenger
DUREN IP PC
610 E. South Temple Street,
Suite 300
Salt Lake City, UT 84102
801-869-8535
Email: tzenger@durenip.com

Mark E. Seiberling (No. 91256)
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.: 215-568-2000
Email: mseiberling@kleinbard.com

CERTIFICATE OF SERVICE

I certify that the forgoing paper was duly filed using the court's electronic filing system causing service on the following counsel, and/or that the forgoing was served on the following counsel by email:

Kevin R. Casey
Patrick R. Kingsley
Samantha B. Kats
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355-1481
tel.:    610.640.5813

*/s/ Todd E. Zenger*