**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOUNTS TECHNOLOGIES LTD., <br><br>　　　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>CONNECTIFY, INC., and DOES 1-100, <br><br>　　　　　　　　　　Defendants. | CASE NO. 2:23-cv-00890 <br><br> Judge Mia Roberts Perez |

**CONNECTIFY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS BASED ON INVALIDITY UNDER 35 U.S.C. § 101 OF ALL CLAIMS OF <u>U.S. PATENT NO. 9,258,309 PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

　　　　Defendant, Connectify, Inc. ("Connectify"), submits this Memorandum of Law in support of its Motion to Dismiss the Second Amended Complaint of Plaintiff, Bounts Technologies Ltd. ("Bounts" or "Plaintiff"), in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because all claims of U.S. Patent No. 9,258,309 fail to recite patent eligible subject matter under 35 U.S.C. § 101 and are invalid under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................1

UNDISPUTED FACTS .........................................................................................................3

    I. BOUNTS' COMPLAINTS ........................................................................................3

    II. THE '309 PATENT ...................................................................................................3

    III. THE SPECIFICATION OF THE '309 PATENT....................................................4

    IV. THE CLAIMS OF THE '309 PATENT ..................................................................6

THE APPLICABLE LAW ....................................................................................................7

ARGUMENT .........................................................................................................................9

    I. Independent Claims 1, 13, and 19 Are Not Patent Eligible.........................................9

        A.  Independent Claims 1, 13, and 19 Are Directed to the
            Abstract Idea of Controlling Access based on a User Request………...........10

        B. The Elements of the Independent Claims Do Not Supply
           an Inventive Concept......................................................................................12

    II. Dependent Claims 2-12 and 14-18 Do Not Add Any Inventive Concept...............14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases:**                                                                                                              **Page(s)**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)..................................................................................13

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ...................................................................................1

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)........................................................................................... *passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)................................................................................1, 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................8, 9

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) .......................................................................11, 14

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993)......................................................................................................1

*CLS Bank International v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013)................................................................................11

*CyberFone Sys., L.L.C. v. CNN Interactive Grp., Inc.*,
   558 F. App'x. 988 (Fed. Cir. 2014) ............................................................................1

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366, 1372 (Fed. Cir. 2011) .....................................................................12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................................11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings*,
   955 F.3d 1317 (Fed. Cir. 2020)........................................................................ *passim*

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)................................................................................11

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ...................................................................1

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ..............................................................................12

*Intellectual Ventures I LLC v Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ................................................................................1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ...................................................................................................8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ............................................................................2, 9

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ..............................................................................9, 14

*Simio, LLC v. FlexSim Software Prod., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ................................................................................8

*Ultramercial, Inc. v. Hulu, L.L.C.*,
    772 F.3d 709 (Fed. Cir. 2014) ..................................................................................1

*Universal Secure Registry LLC v Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ................................................................................1

**Statutes**

35 U.S.C. § 101............................................................................................................. *passim*

F. R. Civ. P. 12(b)(6) .................................................................................................... *passim*

F. R. Civ. P. 12(c) ...................................................................................................................9

**Other Authorities**

37 C.F.R. § 1.75(e) .................................................................................................................6

Jeffrey A. Lefstin, et. al., *Final Report of the Berkeley Center for Law & Technology Section 101 Workshop: Addressing Patent Eligibility Challenges*,
    33 Berkeley Tech. L.J. 551, 578 tbl.2, 579 (2018)...................................................1

U.S. Manual of Patent Examining Procedure § 2129 ............................................................6

**INTRODUCTION**

Defendant, Connectify, Inc. ("Connectify"), respectfully asks this Court to dismiss with prejudice Plaintiff's Second Amended Complaint [Dkt. No. 26] because claims 1-19 of U.S. Patent No. 9,258,309 ("the '309 Patent") fail to recite patent-eligible subject matter as required by 35 U.S.C. § 101 and are invalid. Invalid patents should be removed from the public arena as a matter of public policy. *See*, *e.g.*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993). The ineligibility of the claims of the '309 Patent can be properly addressed at the pleadings stage because patent eligibility is a threshold issue of law and there are no genuine disputes concerning any material facts.[1] Courts routinely dismiss, at the pleadings stage, software related patent infringement claims like those at issue in this action based on patent ineligibility under Section 101. *See, e.g.*, Jeffrey A. Lefstin et. al., *Final Report of the Berkeley Center for Law & Technology Section 101 Workshop: Addressing Patent Eligibility Challenges*, 33 Berkeley Tech. L.J. 551, 578 tbl.2, 579 (2018) ("District courts have resolved the majority of

---

[1] *See*, *e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1381 (Fed. Cir. 2024) (affirming district court's dismissal under Rule 12(b)(6) based on subject matter ineligibility under § 101); *Universal Secure Registry LLC v Apple Inc.*, 10 F.4th 1342, 1358 (Fed. Cir. 2021) (affirming the dismissal of patent infringement claims where all of the asserted patents claimed patent-ineligible subject matter pursuant to 35 U.S.C. §101 because they were all directed to a non-abstract idea); *Ultramercial, Inc. v. Hulu, L.L.C.*, 772 F.3d 709, 713, 717 (Fed. Cir. 2014) (affirming grant of "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims"); *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *1 (Fed. Cir. Jan. 9, 2024) ("we agree that all asserted claims are ineligible and the pleadings thus fail to state a claim upon which relief can be granted"); *Intellectual Ventures I LLC v Erie Indem. Co.*, 850 F.3d 1315, 1332 (Fed. Cir. 2017) (holding that the dismissal of patent infringement claims at the pleading stage was proper where all of the patents were directed to patent-ineligible subject matter under §101); *CyberFone Sys., L.L.C. v. CNN Interactive Grp., Inc.,* 558 F. App'x. 988, 991 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility"); and *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (finding no error where the district court declared the infringement claims patent-ineligible under §101 at the pleading stage as none of the claims "amount[ed] to 'significantly more' than [an] abstract idea").

§ 101 controversies early in case management--on the pleadings, motion to dismiss, and summary judgment stages" and reporting that, from June 2014 to February 2017, 69.4% of district court decisions on eligibility were made on a motion to dismiss or for judgment on the pleadings and that 63.1% of those pleading-stage decisions invalidated the patent); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring) (explaining that employing Section 101 against patents early in litigation "works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents").

Claims 1-19 fail to recite patent-eligible subject matter because they are directed to the abstract idea of controlling access (or limiting permission) to network resources. The claims recite nothing more than the time immemorial idea of asking a guest to provide a password before gaining access or admission to a network. The claims do not recite any additional limitations that supply an inventive concept rendering the claims eligible for patent protection. Instead, the additional limitations are merely routine, conventional, and well-known computer functions and generic components. Such claims are invalid under the two-part test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

*Alice* held that computer-implemented patent claims are invalid under 35 U.S.C. § 101 when they implement an abstract idea using only routine and conventional computer functions. Applying *Alice*, the Federal Circuit has held that patent claims directed to controlling access (or limiting permission) to resources were abstract and thus invalid under Section 101. Specifically, as discussed in detail below, claims 1-19 are like those the Federal Circuit found ineligible in *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317 (Fed. Cir. 2020) (reversing the district court's denial of TCL's motion for summary judgement and concluding that the asserted claims were ineligible for patenting under Section 101). As in *Ericsson*, the asserted claims in

this case are directed to the abstract idea of waiting for a user request as part of the claim operations and providing a data receiving operation if the user has the identified "access rights." The Federal Circuit held the claims in *Ericsson* to be patent ineligible for reciting an abstract idea of "controlling access to, or limiting permission to, resources" and because the claims "require nothing more than this abstract idea." *Ericsson*, 955 F.3d at 1326.  Because all claims of the '309 Patent are directed to patent-ineligible subject matter, Connectify respectfully requests that the Court dismiss the Second Amended Complaint concluding that those claims are invalid under Section 101, thereby preserving this Court's resources.

## UNDISPUTED FACTS

### I. BOUNTS' COMPLAINTS

Bounts' original Complaint filed on March 8, 2023 (¶ 13), its Amended Complaint filed on August 21, 2023 (¶ 13), and its Second Amended Complaint [Dkt. No. 26] filed on September 27, 2023 (¶ 14) -- all allege that Connectify's products infringe "[a]t least claim 1 of the '309 Patent." Thus, per Bounts, claim 1 is a representative claim. The Federal Circuit has held that a court may treat a patent claim as representative of others when the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Trans'n LLC*, 776 F.3d at 1348.

### II. THE '309 PATENT

The '309 patent issued on February 9, 2016, and is titled "Method And System For Operating A Wireless Access Point For <u>Providing Access</u> To A Network."  (Emphasis added.) *See* Ex. 1 to Second Am. Compl., Dkt. No. 26-1.  The alleged invention disclosed in the '309 Patent "relates to a method of operating a wireless access point for providing access to a network. This allows, for example, operation of a wireless access point for providing access to the Internet (commonly know [sic, known] as a "hotspot")." *Id.*, Column 1, lines 7-10.

3

## III. THE SPECIFICATION OF THE '309 PATENT

According to the '309 Patent, International Patent Publication No. WO2006021784 teaches a conventional, well-known, prior art system 1a that is illustrated in Figure 1 (reproduced in the chart below) and described from column 1, line 14 to column 2, line 3 of the '309 Patent. "A feature of this system [1a] is that any person can set-up and run a revenue generating hotspot."[2]  The improvement to the conventional system 1a is allegedly provided by the invention illustrated as the system 102 in Figure 2 (also reproduced in the chart below) of the '309 Patent.



---

[2] In summary, a wireless access point 3 of the conventional system 1a includes a wireless access point controller 5 (i.e., a computer) and a base station 7.  The computer 5 has (i) a first port 6a connected via a modem 11 to a network 13 (e.g., the Internet) and then to a server 15 which includes a server processor 16 and a software storage 17, and (ii) another port 6b that connects to the base station 7 which provides wireless access to enabled devices 9 (including a personal digital assistant 19, a laptop 21, and a personal computer 23).  The ports 6a and 6b have their own Internet Protocol addresses, and each port requires its own network adapter or network card.  This "two network adaptor approach" is deemed a "disadvantage." Id. at column 1, lines 64-65.

4

The system 102 ostensibly "allow[s] the use of a standard wireless router to provide a hotspot for guest access." *Id*. at column 2, lines 6-9. The two configurations illustrated in Figures 1 and 2 above do not differ in the number or type of network elements used. To the contrary, both configurations rely on a server 15/115, a network 13/113, a modem 11/111, a hotspot controller 5/105, a base station or wireless transceiver 7/112, and wireless devices 9/109. The only discernible differences are that one port 106c is used in Figure 2 versus the two ports 6a and 6b used in the prior art depicted in Figure 1, and that the modem 111 of Figure 2 has an additional connection to the transceiver/wireless access point 112 -- so that the system 102 places the modem 111 and the wireless transceiver 112 (similar to the elements 11 and 7 in Figure 1) away from the hotspot controller 105, which was identified as part of the wireless access point 3 in the prior art depicted in Figure 1. These differences are trivial. No meaningful difference exists between the system components used in the alleged invention and the prior art acknowledged by Plaintiff in the '309 Patent. The alleged invention simply adds that a request may be made to access the network gateway depicted in both Figures above.

This addition is described as the specification of the '309 Patent progresses, providing details about end user subscription. *Id*. at column 5, lines 12-20. For example, a determination is made about whether the wireless enabled device 109 is a subscriber or not a subscriber of the access service to the network. An end user is identified as a person that can enter personal information to register their device and receive subsequent authentication by providing a username and password, or code, or other input to log in and access the Internet 113. When the user of a wireless enabled device 109 logs in, the access point controller 105 checks whether the user can be connected to the Internet 113 based on information stored in the software storage 117 and the access point controller 105 may be authorized to allow the user full access to the network

113.  *Id*. at column 5, lines 27-35.  This request for permission to gain access is the only addition to the prior art.

### IV. THE CLAIMS OF THE '309 PATENT

Independent claim 1 recites (underlined and bold emphases added):

> 1. A <u>method of operating a single network adapter</u>, comprising a single network interface card or module, <u>to communicate wirelessly with a first sub-network and a second sub-network</u>, the method comprising:
>
> <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u>
>
> <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u>
>
> <u>using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>
>
> **wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and**
>
> **wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway**.

Ex. 1 to Second Am. Compl., Dkt. No. 26, at columns 8 and 9 (emphasis added).  The portion of the claim that appears above in **bold** is the "invention" for which patent protection was sought.  The portion of the claim above that is <u>underscored</u> is prior art acknowledged in the '309 Patent.

In the "Summary of the Invention" of the '309 Patent, at column 2, lines 13-33, Bounts separated the underlined part of claim 1 from the bold part of claim 1 with the transition "characterized in that."  *See id*. at line 23.  This separation is delineated in the two-part, Jepson claim format of claim 1. The general interpretation of a Jepson claim is that the part before the transition describes the state-of-the-art or the prior art, while the post-transition part describes the

6

inventive feature. *See*, *e.g.*, 37 C.F.R. § 1.75(e) and U.S. Manual of Patent Examining Procedure (MPEP) § 2129 ("Drafting a claim in Jepson format . . . is taken as an implied admission that the subject matter of the preamble is the prior art work of another."). Thus, Bounts admitted in the specification of the '309 Patent that all the limitations recited and underlined above in claim 1 before the last two "access" limitations in the "whereas" clauses recite known, prior art computer steps and components.

Claim 1 focuses on a method of using a single network interface card to communicate with a first and second sub-network. Initially, first and second network addresses and routing tables are set up. Then, the network interface card is used to receive data and re-transmit the data to and from the first and second sub-networks. The network adapter, which is used synonymously with the term "network interface card," is used to control access from the second sub-network to the network gateway. The last clause of claim 1 requires a user requesting access from the second sub-network to access the gateway on the first sub-network and the user's access rights are verified before authorizing the access request. Most important, the method operations of claim 1 require the final user request and the user verification steps.

Although claim 1 is representative of all claims recited in the '309 Patent, claims 13 and 19 are also independent. Claim 13 recites an apparatus corresponding to the method recited in claim 1 (*see* the first line of the Abstract of the '309 Patent) that performs steps of the method like claim 1. Claim 19 recites a method that further limits the scope of the sub-networks and thus further limits claim 1. Therefore, each of the independent claims 1, 13, and 19 are invalid under Section 101 for being directed to patent ineligible subject matter.

## THE APPLICABLE LAW

A defendant may move to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to

state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Twombly*, 550 U.S. at 555 (emphasis added)).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] ... the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).  Conclusory allegations cannot defeat a motion to dismiss. *See, e.g.*, *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (noting that conclusory statements are disregarded when evaluating a complaint under Rule 12(b)(6) and affirming grant of dismissal and denial of leave to amend complaint).

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  The U.S. Supreme Court has long held that patents cannot claim abstract ideas. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).  In *Alice*, the U.S. Supreme Court described a two-step test for determining whether claims are directed to patent-ineligible subject matter.  573 U.S. at 217-18.  In the first step of *Alice*, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea.  *Id*. at 218.  If the claims are directed to an abstract idea, the court must then, under the second step of *Alice*, "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 78-79).

8

Invalidity for failure to claim patent-eligible subject matter under Section 101 is an issue of law that the Federal Circuit reviews without deference. *Ericsson*, at 1325. "Section 101 disputes may be resolved on a Rule 12(b)(6) or Rule 12(c) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698 (Fed. Cir. 2023) (quoting *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020)). Courts routinely dismiss patent-ineligible claims on a motion to dismiss, even when a plaintiff argues that claim construction or factual disputes preclude dismissal. *See, e.g., Sanderling*, 65 F.4th at 706 (affirming dismissal of complaint and denial of leave to amend where claims were directed to an abstract idea and not patent-eligible). "Failure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *OIP Techs., Inc.*, 788 F.3d at 1364 (Mayer, J., concurring) (citing *Twombly*, 550 U.S. at 558; *see also Sanderling*, 65 F.4th at 704 (noting that "if claims are directed to ineligible (or eligible) subject matter under all plausible constructions, then the court need not engage in claim construction before resolving a Section 101 motion" and affirming dismissal of complaint under Rule12(b)(6) based on district court's holding of Section 101 invalidity)).

## ARGUMENT

**I. Independent Claims 1, 13, and 19 Are Not Patent Eligible**

The Court should grant Connectify's motion because claims 1, 13, and 19 fail to recite patent-eligible subject matter. Under the two-step *Alice* analysis described by the U.S. Supreme Court, this Court should first determine under step 1 of the *Alice* test whether the claims are directed to an abstract idea and then evaluate whether any claim elements include an inventive concept under step 2 of the *Alice* test. *Alice*, 573 U.S. at 217.

9

Here, claims 1, 13, and 19 are directed to the abstract idea of controlling access (or limiting permission) to resources through the well-known activities of organizing a human activity and collecting information. The "user" in claims 1, 13, and 19 is required to request "access to the gateway" and is then allowed to "access the gateway if and only if the user is entitled to access the gateway." Thus, the claims recite nothing more than the time immemorial idea of asking a user or guest to provide a password before gaining access.

The additional claim elements, including "setting up a first network address and routing table in the network interface card or module," "setting up a second network address and routing table in the network interface card or module," and "using said single network interface card or module to receive data for one of the first and second sub-networks, and to retransmit the data to the other of the first and second sub-network" do not include any inventive concepts rendering the claims patentable because they are merely routine, well-known functions of a networking device and a network interface card.

### A. Independent Claims 1, 13, and 19 Are Directed to the Abstract Idea of Controlling Access based on a User Request

The limitations recited in representative claim 1 and highlighted above are unpatentable as an abstract idea because they perform activities which are not significantly more than the abstract idea of a user requesting access and receiving verification - a method of organizing a human activity to perform a well-known generic activity. *Alice*, 573 U.S. at 218; *see also Ericsson*, at 1326 ("Based on the claim language, we conclude that claims 1 and 5 are directed to the abstract idea of controlling access to, or limiting permission to, resources. Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea."). Claims 1, 13, and 19 seek to preclude all uses of establishing data

communications between two sub-networks regardless of how the data network access is implemented.

Claims 1, 13, and 19 do not purport to make any improvement to a network, devices operating on a network, or routing tables in general. In fact, a first routing table and a second routing table used in a single network adapter is hardly an improvement to a computer or computing device. Merely invoking computers as a tool is not more than an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). None of the alleged improvements "enables a computer . . . to do things it could not do before." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). Such claims, whose focus is "not a physical-realm improvement but an improvement in a wholly abstract idea," are not eligible for patenting. *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) (unpublished but citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018)).

Claims 1, 13, and 19 of the '309 Patent fail the *Alice* test as a matter of law. They recite well-known components of a data network, then require a request from a user to receive access which must be verified by a conventional data retrieval operation. The claims all recite details which require a person's request and thus the process is without question one that a human is required to perform. Therefore, the claims are directed to a well-known human activity which is patent ineligible. The U.S. Supreme Court has pointed out that, "Limitations that represent a human contribution but are merely tangential, routine, well-understood, or conventional, or in practice fail to narrow the claim relative to the fundamental principle therein, cannot confer patent eligibility." *CLS Bank International v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1283 (Fed. Cir. 2013).

Finally, independent claims 1, 13, and 19 are like those found invalid in *Ericsson*, where the Federal Circuit held that the claims were directed to a system and method for controlling access to a platform for a mobile terminal for a wireless telecommunications system, which it found was only an abstract idea in and of itself for controlling access to or limiting permission to resources. The Federal Circuit indicated that, "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson*, at 1327 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)). As in *Ericsson*, the independent claims recited in the '309 Patent monopolize the use of the abstract idea "of itself" when applied to allowing a user to access a gateway and verifying the user's access rights. This is the type of pre-emption the U.S. Supreme Court aims to prevent with the *Alice* doctrine. *Alice*, 573 U.S. at 216 ("We have described the concern that drives this exclusionary principle as one of pre-emption.").

### B. The Elements of the Independent Claims Do Not Supply an Inventive Concept

While independent claims 1, 13, and 19 are directed to an abstract idea, the Court should next determine under step 2 of the *Alice* test whether any claim elements, alone or in combination, provide an inventive concept. Step 2 requires the patent claims to practically amount to "significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, at 72-73). The U.S. Supreme Court has instructed that using generic computer components and functions to implement a claim does not render the claim patentable. *Id*. at 223. "[G]eneric computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id*. at 223-24 (quoting *Mayo*, at 77). A patentee that emphasizes a claim's use of certain technology, for example, generic computer steps and

12

components, fails at step two of *Alice* when the intrinsic record establishes that the technology is conventional or well-known in the art. *See, e.g., Int'l Bus. Machs. Corp.*, 50 F.4th at 1380. Similarly, limiting the claim to a particular technological field does not render the claim patentable. *Alice*, 573 U.S. at 223 (citing *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)).

The *Ericsson* Court stated, "we conclude at step two [of *Alice*] that claims 1 and 5 do not provide a sufficient inventive concept to render them patent eligible. [None of the] most specific elements actually recited in the claim . . . are sufficient to turn the claim into anything more than a generic computer for performing the abstract idea of controlling access to resources. Even assuming that this collection of elements led to a more efficient way of controlling resource access, 'our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.'" *Ericsson*, 955 F.3d at 1330 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)). The Court's analysis in *Ericsson* applies equally well to the claims of the '309 Patent, which also use a generic computer to perform an abstract idea of controlling access to network resources.

The claims merely recite common network elements and components. The specification of the patent describes these common network computer components as generic and well-known. In fact, the elements illustrated in Figure 1 (prior art configuration) are the same elements illustrated in Figure 2 (the alleged invention). Compare column 2 (prior art configuration) with column 4 (the alleged invention) of the '309 Patent. The components recited in independent claims 1, 13, and 19 are generic individually and when taken as a whole.

"When the insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional

13

features remain in the claims." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012)). Here, there are no additional features beyond generic and well-known components. Therefore, the claim limitations do not convert the abstract idea of controlling access based on a user request into a patent eligible claim because they do "not meaningfully distinguish the abstract idea over the patent ineligible . . . claim." *Accenture*, 28 F.3d at 1344. Independent claims 1, 13, and 19 are invalid under Section 101, and the Court should dismiss Plaintiffs' Second Amended Complaint in Connectify's favor. *See Sanderling*, 65 F.4th at 706 (affirming dismissal of complaint where claims were directed to an abstract idea and not patent-eligible subject matter).

## II. Dependent Claims 2-12 and 14-18 Do Not Add Any Inventive Concept

Dependent claims 2-12 and 14-18 fail to add anything to the independent claims beyond mere generic computer components and functions. These dependent claims therefore contain nothing that would convert the underlying abstract idea of a computer/gateway providing network access based on a user request into a patent-eligible inventive concept. Specifically, the dependent claims recite the addition of a network address translation (NAT) table, a wireless router, broadcasting information, data rates, frequency of broadcasts, driver software, and a plurality of network interface cards to independent claims 1 and 13 (no claims depend on claim 19). The specification of the patent describes these components as generic because no examples are provided which further modify those components beyond the basic and abstract ideas associated with their intended conventional use. Similar conventional components of a network that intercept data and transmit the data were found to be generic computer components by the Federal Circuit in *Bridge & Post, Inc.*, 778 F. Appx. at 892.

Like independent claims 1, 13, and 19, the limitations of dependent claims 2-12 and 14-18 fail to supply any inventive concept. Thus, the dependent claims are also invalid under Section 101.

## CONCLUSION

For all the foregoing reasons, Connectify respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint, conclude that claims 1-19 of U.S. Patent No. 9,258,309 are invalid under Section 101 because the claims fail to recite patent eligible subject matter, and enter an Order in the form attached hereto.

Respectfully submitted,

Stradley Ronon Stevens & Young, LLP

*/s/ Samantha B. Kats*
Patrick R. Kingsley (Pa. Attorney No. 62915)
Philip J. Foret, Esquire (Pa. Attorney No. 87509)
Samantha B. Kats, Esq. (Pa. Attorney No. 316178)
30 Valley Stream Parkway
Malvern, PA 19355
610-640-5800
Skats@stradly.com

*Attorneys for Connectify, Inc.*

Dated: February 24, 2025

15