IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOUNTS TECHNOLOGIES LTD., | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : |
| v. | : 2:23-cv-00890-MRP |
| | : |
| CONNECTIFY, INC., and DOES 1-100 | : |
| | : |
| Defendants. | : |

OPPOSITION OF PLAINTIFF TO

DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Plaintiff, Bounts Technologies Ltd., submits this response to Defendants' Rule 12(b) motion to dismiss (ECF 40).

I. INTRODUCTION

Plaintiff respectfully submits this memorandum in opposition to Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted. However, dismissal at this stage is improper because Plaintiff has sufficiently pleaded facts that, if taken as true, state a plausible claim for relief.

Moreover, Defendant's arguments improperly rely on prior art determinations, which involve questions of fact that cannot be resolved on a motion to dismiss. Additionally, Defendant has proffered no evidence as to how the claim language and teaching of the prior art are understood by one of skill in the art. The understanding of one of skill in the art is central to

1

validity analysis. As proffered by Plaintiff via one of skill in the art, the scope and content of prior art and the claim language support Plaintiff's infringement claims; Plaintiff states a claim upon which relief may be granted. Accordingly, Defendant's motion should be denied.

## II. LEGAL STANDARDS

### A. Standard for a Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint only if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[1]

When ruling on a Rule 12(b)(6) motion, courts must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff.[2] A complaint survives dismissal if it contains sufficient factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[3]

The burden of proof in a Rule 12(b)(6) motion rests with the moving party.[4] Because factual disputes should not be resolved at this stage, a motion to dismiss is generally inappropriate where the complaint presents factual allegations that, if proven, would support the plaintiff's claim.

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[2] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[3] *Iqbal*, 556 U.S. at 678.
[4] *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007).

B. Patent claims and the prior art must be construed as understood one of skill in the relevant art

Patent claims define the scope of the patentee's rights and are interpreted through the lens of a person of ordinary skill in the relevant technical field. The Federal Circuit has consistently reinforced this standard: "The words of a claim are generally given their ordinary and customary meaning…which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[5]

Similarly, when assessing the scope and content of prior art references in determining patentability, courts apply the person of ordinary skill in the art standard for understanding the prior art. Prior art references must be considered for what they fairly teach to a person of ordinary skill in the art.[6]

C. Determining the Scope and Content of Prior Art is a Question of Fact

Defendant's motion seeks to resolve factual issues related to prior art at the pleading stage. However, determining the scope and content of prior art is a factual inquiry that is not appropriate for resolution on a motion to dismiss. The Federal Circuit has consistently held that "[t]he scope and content of the prior art are questions of fact."[7]

---

[5] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (*en banc*).
[6] *E.g., Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (prior art references must be considered together for what they fairly teach a person of ordinary skill in the art, prior art in context, taking account of demands known to the design community, the background knowledge possessed by a person having ordinary skill in the art, and the inferences and creative steps that a person of ordinary skill in the art would employ.)
[7] *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

Additionally, the Federal Circuit has explained that factual findings regarding the content of prior art require a detailed evidentiary record, which cannot be established at the motion to dismiss stage.[8]

Because resolving the scope and content of prior art requires fact-finding, Defendant's motion must be denied. The Court must accept Plaintiff's factual allegations as true and allow discovery to proceed before making any determinations regarding the prior art.

III. ARGUMENT

### A. DEFENDANT FAILS TO PRESENT THE UNDERSTANDING OF ONE SKILLED IN THE RELEVANT ART AT THE TIME THE INVENTION WAS MADE

Controlling authority requires that both the claim language and the scope and content of the prior art are to understood as they would be one of ordinary skill in the relevant art at the time the invention was made.

Defendant's motion presents no understanding of one skilled in art, only counsel argument. There is no showing that Ms. Kats, counsel for Defendant, is one skilled in the art. Defendant proffers no evidence as to how one of skill in the art understands the patent claim language and the prior art. For this reason alone, Defendant's motion fails for failure to carry its burden of proof by failing to present the necessary understanding of one skilled in the art pertaining to both the claim language and the scope and content of the prior art argued by Defendant.

In stark contrast, Plaintiff has provided rebuttal evidence of one skilled in the relevant art, Mr. Russell. Mr. Russell refutes Defendant's prior art assertions.

---

[8] *See Phillips,* at 1317 (noting that determining the meaning of terms in prior art references is a factual question).

Defendant's ineligibility argument is based solely on its prior art premise. Having refuted Defendant's prior art premise, Defendant's eligibility argument also fails.

### B. DEFENDANT'S MOTION REQUIRING FINDINGS OF FACT SHOULD BE DENIED

Defendant argues the scope and content of the prior art. However, assessment of the scope and content of the prior art require factual inquiries based on evidentiary considerations including the under of one skilled in the art. The lawyer arguments misconstrue the scope and content of the prior art.

Provided herewith is the declaration of one skilled in the art, Levi Russell. Mr. Levi identifies the scope and content of the prior art. Mr. Russell entirely refutes Defendant's lawyer arguments.

Defendant's ineligibility argument is premised upon its underlined and bolded presentation of independent claim 1 on page 6 of Defendant's motion. This premise is incorrect and contradicts the scope and content of the argued prior art in the context of the claimed invention of the '309 patent for at least the following reasons, as understood by one skilled in the art.

In the time frame of November 2008 when the patent application was originally filed, computers included the use of a network adapters comprising network interface cards. In 2008, a typical computer comprised a single network adapter comprising a single network interface card. '309 Patent, column 1, line 65 to column 2, line 3 (1:65-2:3).[9]

In 2008, the computer hardware and software disclosed in the '309 Patent was any typical laptop, general purpose computer. '309 Patent, 3:57-61, 4:19-24, 8:35-39 and FIG. 4 "PC".

---

[9] Ex. 1 hereto, the Declaration of Levi Russell, ¶ 4.

Such typical computers comprised a single network adapter comprising a single network interface card using a list in table format of one or more routing destinations or routing tables. The list is referred to as a routing table. '309 Patent, 2:13-15, 2:58-67, 3:16-21, 3:57-61, 5:57-59, 7:9-11, 8:26-30. No typical 2008 computer or any computer disclosed in the '309 Patent comprised more than one network adapter, network interface card or routing table list.[10]

In the context of the computers disclosed in the '309 Patent, the claimed inventions comprise routing tables which are routing table entries in the same routing table. For example, the claim language of the '309 Patent does not claim a "first routing table" and/or a "second routing table" because there was only one "routing table in the [single] network interface card." '309 Patent, claim 1 and 19. That is, the claimed inventions use one routing table list for all sub-network IP addresses or sub-routing table entries (also known as routing tables) for governing travel of data packets between multiple devices in the computing system.[11]

Based upon the nature and context of computing devices in 2008, the claimed inventions of the '309 Patent do not require two, distinct routing lists tables to govern data packet travel in multi-network or multi-device computing systems.[12]

This is expressly taught by the '309 patent (col. 1 line 60 to col. 2, line 9):

> In the system of FIG. 1, two ports 6a, 6b are used on the wireless access point controller 5 of the wireless access point 3, each point 6a, 6b having its own Internet Protocol (IP) address. A disadvantage of this arrangement is that each port 6a, 6b requires a network adaptor, such as a network card. As commonly available personal computers and laptops are not conventionally provided with two network adaptors the requirements for two network adaptors is an impediment to commissioning of conventional wireless access points 3 as shown in FIG. 1.

---

[10] *Id.*, ¶ 5.
[11] *Id.*, ¶ 6.
[12] *Id.*, ¶ 7.

However, in such prior art hotspot arrangements, it is necessary to have a separate router (for internet access) such as a modem 11 and a wireless access point 3. T[he '309] invention provides improvements to the system and method described above, allowing the use of a standard wireless router to provide a hotspot for guest access.[13]

At the time of the '309 invention, a single network card could potentially support two IP addresses and subnets. However, there was no functionality or need to route traffic between these two subnets or to verify or authenticate the traffic. The two IP addresses and subnets were primarily used for vertical traffic to and from the IP addresses. They were not intended for horizontal IP traffic transit, nor for verified and authenticated traffic, such as would be seen in the hotspot system operated by the patentee at the time of the invention.[14]

Unlike the '309 invention, the technology of Fig. 1 pertains to 2004 technology that converts an ordinary PC into a hotspot by connecting two Ethernet cables. One cable connects to the PC's onboard network card (a standard feature on modern PCs and laptops), while the other connects to a second, specially added network card that enables the PC or laptop to function as a Wi-Fi hotspot controller.  This techniques utilizes two network adapter cards.  This technique is illustrated in Fig. 1 as follows:

---

[13] *Id.*, ¶ 8.
[14] *Id.*, ¶ 9.



Item 11 represents the modem or router commonly found in homes or businesses connected to the internet. Item 11 is typically connected via an Ethernet cable to Item 5 at port 6a, the PC or laptop. Item 5, in turn, has a separate Ethernet cable running from port 6b a second network card to Item 7, the Wireless Access Point. This second network card port 6b could either be installed in the back of a modular desktop PC or connected via a USB adapter if it's a laptop, as laptops typically don't come with two built-in Ethernet network cards, neither do they come with network card slots like modular desktop PC's often do.[16]

Another embodiment described in the 2004 technology would involve Item 11 being connected to the PC or laptop via Ethernet, with the PC or laptop's on-board Wi-Fi card or

---

[15] *Id.*, ¶ 10.
[16] *Id.*, ¶ 11.

module serving as the second network card. In this case, no additional Ethernet connection to Item 7 (the Wireless Access Point) would be required.[17]

The 2004 prior art involves a PC functioning as a hotspot controller with two separate network cards or modules. PCs and laptops typically do not come with two network cards or modules of the same type. Therefore, for practical reasons, anyone wishing to use the prior art would need to separately install a second network card. [18]

The improvement described in the '309 patent eliminates this extra burden, simplifying the process for anyone setting up a hotspot controller using the onboard network card or module that comes with the PC or laptop. Unlike the 2004 invention, the '309 invention addresses the IP transit and control between two subnet networks on a single network card or adapter, whether wired or wireless.[19]

At page 6 of Defendant's motion, Defendant argues that the "portion of the claim [1] that appears above in bold is the 'invention' for which patent protect was sought. The portion of the claim above that is underscored is prior art acknowledged in the '309 patent." argument at page 6 of the motion paper. This statement is not correct. The scope and content of the 2004 prior art was not a "method of operating a single network adapter" "to communicate wirelessly with a first sub-network and a second sub-network." Unlike the prior art, that is part of the invention of the '309.[20]

The prior art does not teach using a single network adapter to set up a first network address and routing table in the network interface card for use in the first network and setting up

---

[17] *Id.*, ¶ 12.
[18] *Id.*, ¶ 13.
[19] *Id.*, ¶ 14.
[20] *Id.*, ¶ 15.

a second network address and routing table in the network interface card for use in the second sub-network, and using a single network interface card to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the of the first and second sub-networks, using the network addresses and routing tables.  This is part of the invention of the '309 patent.[21]

Defendant ascribes the preamble and first three stated claim elements of claim 1 as prior art.  This is not consistent with the scope and content of the prior art as established by Mr. Russell.  Mr. Russell's explanation of the scope and content of the prior art and of the invention of the '309 show a plausible evidentiary basis for claim construction and infringement analysis, which when proven entitle Plaintiff to relief for patent infringement.

Because Defendant's motion requires factual inquiries, and because of the factual matters are not established by Defendant as to one of skill in the art, genuine disputes of material fact are raised by one skilled in the art, Mr. Russell.  All inferences associated with these factual matters must be resolved in favor of Plaintiff.  As a result, Defendant's Rule 12(b)(6) motion should be denied.

### C. THE INVENTIONS OF THE '309 PATENT ARE PATENT ELIGIBLE

1. The Patent Office record reflects a conclusion of patent eligibility

The '309 patent claims are presumed valid.[22]  When the claims of the '309 patent were examined in their entirely as they must,[23] not parsed into individual element as Defendant's

---

[21] *Id.*, ¶ 16.
[22] 35 U.S.C. §282 (an issued patent is presumed valid).
[23] *E.g., Diamond v. Diehr*, 450 U.S. 175 , 188 , 101 S. Ct. 1048 , 67 L. Ed. 2d 155 (1981) (patent claims "must be considered as a whole.").

attempt, the patent examiner concluded that they present inventive, valid subject matter eligible for patent protection.

Further, when examining a patent application, the patent examiner is to make all refusals pertaining to the application in written response to the applicant including a section 101 rejection.[24] When examining the application, if the patent examiner concludes "that the claim is eligible, [] there will be no rejection of the claim on eligibility grounds. In practice, the record may reflect the conclusion of eligibility simply by the absence of an eligibility rejection or may include clarifying remarks, when appropriate."[25]

In this instance, when examining the application for the '309 patent, the patent examiner made no section 101 eligibility refusal or rejection.[26] The lack of a section 101 rejection in this case reflects the examiner's conclusion that the claims of the '309 patent are patent eligible. The Defendant has not overcome the presumption of validity and the conclusion of the examiner of record.

    2.   The claimed invention of the '309 patent is eligible improvements

As shown above from the declaration of Mr. Russell, the claimed invention of the '309 patent presents improvements over the prior are which are patent eligible subject matter. As shown above and explained in further detail in the '309 patent,[27] the claims of the '309 patent are not merely directed to an abstract idea but teach and disclose inventive concepts including actual, concrete and implementable methods (claims 1-12 and 19) and apparatus (claim 13-18) for creating an improved hot spot technology using just one network interface card.

---

[24] United States Patent Office Manual of Patent Examining Procedure, § 2106.
[25] *Id.*, § 2106.06.
[26] Ex. 1 hereto, the Declaration of Levi Russell, ¶27.
[27] ECF 1-1.

The validity of inventive subject matter is supported by allowance of the claims over any prior art as supported by teaching of the '309 patent and the explanations provided by Mr. Russell without a section 101 eligibility refusal or rejection. Defendants have not rebutted the presumption of validity or provided any admissible evidence contrary to Mr. Russell's explanation of the inventive concepts.

Defendants argue that the claimed inventions "are merely directed to a well-known human activity," and "tangential, routine, well-understood, or convention." However, glaringly absent is any presentation that the claimed inventions were a well-known human activity, tangential, routine, well-understood, or conventional to a person of skill in the art. Defendant presents no evidence of one skilled in the art in support of these arguments. The contrary is illustrated herein. Mr. Russell establishes that the prior art shows that the claimed invention was no well-known, tangential, routine, well-understood, or conventional to one of skill in the art for create the improvement hot spot using just one network card. Any argument of Defendant that creating a hot spot using just one network card was so well-known, understood, tangential, routine or conventional is just argument, lawyer argument.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss under Rule 12(b)(6) should be denied. Plaintiff has sufficiently pleaded a plausible claim for relief, and Defendant's arguments improperly attempt to resolve factual disputes regarding prior art, which is inappropriate at the motion to dismiss stage. Given that the scope of claim language and prior art determinations are questions of fact as understood by one of skill in the art, the evidence provided by declarant Levi Russel established eligible subject matter and at least presents genuine disputes of material fact that preclude granting the Rule 12(b)(6) motion at this pleading stage.

Accordingly, Defendant's motion should be denied in its entirety.

Respectfully submitted,

Dated this 13th day of March 2025.

/s/  *Todd E. Zenger*

Todd E. Zenger
DUREN IP PC
610 E. South Temple Street,
Suite 300
Salt Lake City, UT 84102
801-869-8535
Email: tzenger@durenip.com

Mark E. Seiberling (No. 91256)
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.: 215-568-2000
Email: mseiberling@kleinbard.com

13

CERTIFICATE OF SERVICE

I certify that the forgoing paper was duly filed using the court's electronic filing system causing service on the following counsel, and/or that the foregoing was served on the following counsel by email:

Patrick R. Kingsley
Philip Foret
Samantha B. Kats
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355-1481
tel.:    610.640.5813

*/s/ Todd E. Zenger*