# EXHIBIT 1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reexamination of:     U.S. Patent No. 9,258,309

First Name Inventor:        Russell Levi

Application Serial No.:      14/249,174

Issued:                     February 9, 2016

Filed:                      April 9, 2014

For:                        METHOD AND SYSTEM FOR OPERATING A WIRELESS
                            ACCESS POINT FOR PROVIDING ACCESS TO A NETWORK

Certificate of Electronic Filing under 37 C.F.R. § 1.8
I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is
being transmitted to the Office's electronic filing system in accordance with
37 C.F.R. § 1.6(a)(4)
Dated: August 1, 2025
Electronic signature for Lawrence E. Ashery: /Lawrence E. Ashery/

REQUEST FOR *EX PARTE* REEXAMINATION OF U.S. PATENT NO. 9,258,309

Mail Stop *Ex Parte* Reexam
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

    Connectify, Inc. ("Requester") by and through its undersigned attorney, pursuant to 35

U.S.C. § 301-037 and 37 C.F.R. § 1.510 et seq., hereby requests *ex parte* reexamination of claims

1-19 of U.S. Patent No. 9,258,309 (hereinafter, "the '309 patent"), entitled "Method and System

for Operating a Wireless Access Point for Providing Access to a Network," which issued

February 9, 2016 from U.S. Patent Application No. 13/127,223 (hereinafter, "the '223

application"), filed October 20, 2009 as a national stage entry of PCT/IB2009/054623.

    The patent owner of record is Bounts Technologies Ltd  as recorded January 14, 2016, at

Reel 037489 and Frame 0343. The '309 patent has not expired and is in its enforceability period.

Substantial new questions of patentability exist with respect to the references detailed below,

which are newly cited references that were not considered in any earlier conducted examination or review of the '309 patent.

<u>TABLE OF CONTENTS</u>

TABLE OF EXHIBITS.................................................................................................... 10

TABLE OF CHALLENGED CLAIMS ...........................................................................11

I. INTRODUCTION AND REQUEST FOR REEXAMINATION............................. 16

    A. REQUEST FOR *EX PARTE* REEXAMINATION............................................................ 16
    B. 37 C.F.R. § 1.510(B)(6) – CERTIFICATION BY THE THIRD-PARTY REQUESTER ...... 16
    C. RESERVATION OF RIGHTS .................................................................................... 16
    D. IDENTIFICATION OF RELATED MATTERS ............................................................... 17
    E. THE OFFICE SHOULD NOT DENY THIS REQUEST ................................................. 17

II. IDENTIFICATION OF THE PATENT AND CLAIMS FOR WHICH REEXAMINATION IS REQUESTED ........................................................................... 18

III. THE '309 PATENT ................................................................................................... 19

IV. CHALLENGED CLAIMS ......................................................................................... 20

V. PROSECUTION HISTORY........................................................................................ 22

VI. STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY .......................................................................................................... 22

VII. DETAILED EXPLANATION UNDER 37 C.F.R. § 1.510........................................ 23

    A. REJECTION 1 (SNQ 1): CLAIMS 1, 10 - 13, 18 AND 19 ARE OBVIOUS OVER KHAKI IN VIEW OF TURLEY OR JI ............................................................................................... 23
        1. Khaki ................................................................................................................ 23
        2. Turley .............................................................................................................. 27
        3. Ji ...................................................................................................................... 31
        4. Claim 1 ............................................................................................................ 33
            a. [1PRE]: <u>A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising:</u> ................................................. 33
            b. [1A]: <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u>................................................. 33
            c. [1B]: <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u> ......................................... 34
            d. [1C]: <u>using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>............................. 34
            e. [1D]: <u>wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and</u>................................................................................................. 35

f. [1E]:  wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway. ................................................................................ 38

g. Motivations to Combine Kahki with Turley or Ji ...................................... 40

5. Claim 10 ............................................................................................................. 45

a. [10]:  The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user. ............................................................. 45

6. Claim 11 ............................................................................................................. 48

a. [11] The method as claimed in claim 1, wherein the second sub-network includes a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules. ................................................................................................................... 48

7. Claim 12 ............................................................................................................. 49

a. [12] The method as claimed in claim 1, wherein the first sub-network and second sub-network are within wireless communication range of said single network interface card or module. .......................................................................................................... 49

8. Claim 13 ............................................................................................................. 51

a. [13PRE]: A computing apparatus for exchanging network data traffic between a first sub-network and a second sub-network, the apparatus comprising:.................................. 51

b. [13A]: a network adapter, comprising a single network interface card or module, for communicating wirelessly with the first sub-network and second sub-network; ............. 51

c. [13B]: a processor; ............................................................................................ 51

d. [13C]: a data store storing a driver for the network interface card or module, the driver being configured to store a first network address and routing table for use in the first sub-network; a second network address and routing table for use in the second sub-network; to operate said single network interface card or module to receive data for one of the first and second sub-networks and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables, ........................................ 52

e. [13D]: wherein the first sub-network includes a network gateway and the network interface card or module is configured to control access from the second sub-network to the network gateway and comprises an authentication controller for receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if the user is entitled to access the gateway, or blocking the user access to the gateway if the user is not entitled to access the gateway. ................................................................................ 52

9. Claim 18 ............................................................................................................. 52

a. [18] The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user. ...................................................... 52

10. Claim 19 ................................................................................................ 53

    a. [19PRE]: <u>A method of operating a single network adapter consisting of a single network interface card or module for communicating with a local area network that includes a first sub-network and a second sub-network of the same type, the second sub-network including a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules, and the method comprising</u>: ................................................ 53

    b. [19A]: <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u> ................................................ 53

    c. [19B]: <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u> ................................ 53

    d. [19C]: <u>using the network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u> ......................... 54

    e. [19D]: <u>wherein the first sub-network includes a network gateway and the network interface card or module is configured as a hotspot controller to control access from the second sub-network to the network gateway, and</u> ............................................. 54

    f. [19E]: <u>wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway</u>. ................................................................. 54

B. REJECTION 2 (SNQ 2): CLAIMS 1, 10 - 13, 18 AND 19 AND ARE OBVIOUS OVER NAGHSHINEH IN VIEW OF TURLEY OR JI ..................................................................... 54

  1. Naghshineh ................................................................................... 54

  2. Claim 1 ......................................................................................... 57

    a. [1PRE]: <u>A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising</u>: ................................................ 57

    b. [1a] <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u> ............................................. 59

    c. [1b] <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u> ................................ 61

    d. [1c] <u>using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u> ..................... 63

    e. [1d] <u>wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and</u> ................................................................................. 65

f. [1e] wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway. ....................................................................................... 66

g. Motivations to Combine Naghshineh with Turley or Ji ................................................ 67

3. Claim 10 ............................................................................................................................. 73

a. [10] The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user. ..................................................................... 73

4. Claim 11 ............................................................................................................................. 73

a. [11] The method as claimed in claim 1, wherein the second sub-network includes a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules. ..................................................................................................................... 73

5. Claim 12 ............................................................................................................................. 74

a. [12] The method as claimed in claim 1, wherein the first sub-network and second sub-network are within wireless communication range of said single network interface card or module ........................................................................................................................ 74

6. Claim 13 ............................................................................................................................. 74

a. [13PRE]: A computing apparatus for exchanging network data traffic between a first sub-network and a second sub-network, the apparatus comprising: ..................................... 75

b. [13A]: a network adapter, comprising a single network interface card or module, for communicating wirelessly with the first sub-network and second sub-network; ............ 75

c. [13B]: a processor; ....................................................................................................... 75

d. [13C]: a data store storing a driver for the network interface card or module, the driver being configured to store a first network address and routing table for use in the first sub-network; a second network address and routing table for use in the second sub-network; to operate said single network interface card or module to receive data for one of the first and second sub-networks and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables, ......................................... 75

e. [13D]: wherein the first sub-network includes a network gateway and the network interface card or module is configured to control access from the second sub-network to the network gateway and comprises an authentication controller for receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if the user is entitled to access the gateway, or blocking the user access to the gateway if the user is not entitled to access the gateway. ...................................................................................... 76

7. Claim 18 ............................................................................................................................. 76

a. [18] The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user. .......................................................... 76

8. Claim 19 ................................................................................................................ 76

a. [19PRE]: <u>A method of operating a single network adapter consisting of a single network interface card or module for communicating with a local area network that includes a first sub-network and a second sub-network of the same type, the second sub-network including a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules, and the method comprising</u>: ............................................... 77

b. [19A]: <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u> ...................................................... 77

c. [19B]: <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u> .............................................. 77

d. [19C]: <u>using the network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u> ........................... 77

e. [19D]: <u>wherein the first sub-network includes a network gateway and the network interface card or module is configured as a hotspot controller to control access from the second sub-network to the network gateway, and</u> .............................................. 78

f. [19E]: <u>wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway.</u> ................................................................... 78

C. REJECTION 3 (SNQ 3): CLAIMS 3, 6 AND 14 ARE OBVIOUS OVER KHAKI OR NAGHSHINEH IN VIEW OF TURLEY OR JI AND FURTHER IN VIEW OF VELMURUGAN ...................................... 78

1. Velmurugan ......................................................................................................... 78

2. Claim 3 ............................................................................................................... 80

a. [3]: <u>The method as claimed in claim 1, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the method further comprises: generating broadcasts to inform wireless stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network.</u> ...................... 80

3. Claim 6 ............................................................................................................... 83

a. [6] <u>The method as claimed in claim 3, further comprising receiving a user instruction to adjust the rate of generating and sending said broadcasts on the wireless network setting the network adapter as the gateway, and adjusting said rate according to the user instruction.</u> ................................................................................................ 83

4. Claim 14 ............................................................................................................. 85

a. [14]: <u>The apparatus as claimed in claim 13, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the apparatus further comprises a transmitter for generating broadcasts to</u>

inform stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network. .......... 85

D. REJECTION 4 (SNQ 4): CLAIM 4, 5, 15 AND 16 ARE UNPATENTABLE OVER KHAKI OR NAGHSHINEH IN VIEW OF TURLEY OR JI AND FURTHER IN VIEW OF VELMURUGAN AND BASHIR  85

  1. Bashir ......................................................................................................................... 85

  2. Claim 4 ...................................................................................................................... 87

    a. [4]: The method as claimed in claim 3, further comprising generating and sending said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway. ............................................................................................................... 87

  3. Claim 5 ...................................................................................................................... 90

    a. [5]: The method as claimed in claim 4, further comprising automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway, and automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter as the network gateway, according to the number of such packets that are detected. ............................... 90

  3. Claim 15 .................................................................................................................... 92

    a. [15]: The apparatus as claimed in claim 14, wherein the transmitter is configured to generate and send said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway ............................................................................. 92

  4. Claim 16 .................................................................................................................... 93

    a. [16]:  The apparatus as claimed in claim 15, further comprising a packet detector for automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway, and automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter to as the network gateway, according to the number of such packets that are detected. ...... 93

E. REJECTION 5 (SNQ 5): CLAIMS 10 AND 18 ARE OBVIOUS OVER KHAKI OR NAGHSHINEH, IN VIEW OF TURLEY OR JI, AND FURTHER IN VIEW OF SAWADA. .................................................... 93

  1. Sawada ....................................................................................................................... 93

  2. Claim 10: .................................................................................................................... 94

    a. [10]: The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user. ..................................................................... 94

  3. Claim 18 .................................................................................................................... 97

    a. [18]: The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user. ............................................................. 97

F. REJECTION 6 (SNQ 6): CLAIMS 2, 7, 8, 9 AND 17 ARE UNPATENTABLE OVER KHAKI OR NAGHSHINEH, IN VIEW OF TURLEY AND JI ...................................................................................... 97

  2. Claim 2 ...................................................................................................................... 97

a. [2]: <u>The method as claimed in claim 1, wherein the second sub-network comprises a NAT routable sub-network that is subservient to the first sub-network</u> ........................... 97

3. Claim 7 ........................................................................................................... 98

a. [7]: <u>The method as claimed in claim 1, wherein said verifying comprises retrieving locally or remotely stored user subscription information or information about user permissions to access the gateway.</u> ................................................................ 98

4. Claim 8 ........................................................................................................... 100

a. [8]: <u>The method as claimed in claim 1, further comprising controlling an allocated bandwidth through the gateway for users connecting via the second sub-network</u>........ 100

5. Claim 9 ........................................................................................................... 102

a. [9]: <u>The method as claimed in claim 1, wherein said method is performed by executing driver software to configure a standard network adapter to exchange network traffic between the first and second sub-networks.</u> ................................................... 102

6. Claim 17 ......................................................................................................... 104

a. [17]: <u>The apparatus as claimed in claim 13, wherein the authentication controller comprises locally stored user subscription information or information about user permissions to access the gateway, or a retrieval system for retrieving user subscription information or information about user permissions from a remote location.</u> ................. 104

VIII. CONCLUSION ................................................................................................ 104

TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 9,258,309 ("the '309 patent") |
| B | U.S. Patent No. 6,067,569 ("Khaki") |
| C | U.S. Patent No. 8,543,710 ("Turley") |
| D | U.S. Patent 7,447,795 ("Naghshineh") |
| E | U.S. Patent Application No. 2004/0103275 ("Ji") |
| F | Velmurugan, A., et al.,"Mobile Ad-hoc Network Internetworking With Next Generation Internet," Information Technology Journal, 4: 398-404, 2005. ("Velmurugan") |
| G | Bashir, M. S., "ARP Cache Poisoning with Ettercap," GIAC GSEC Security Essentials Certification, Practical Assignment, Version 1.4b, Option 1, August 4th 2003 ("Bashir") |
| H | U.S. Patent Application No. 2002/0016858 ("Sawada") |
| I | Altunbasak, H., et al., "Securing Layer 2 in local area networks," (ICN '05: Proceedings of the 4th international conference on Networking, Proceedings, Part II), published on April 17, 2005. ("Altunbasak") |

TABLE OF CHALLENGED CLAIMS

| CLAIM | TEXT |
|---|---|
| [1PRE] | A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising: |
| [1A] | setting up a first network address and routing table in the network interface card or module for use in the first sub-network; |
| [1B] | setting up a second network address and routing table in the network interface card or module for use in the second sub-network; |
| [1C] | using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables, |
| [1D] | wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and |
| [1E] | wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway. |
| [2] | The method as claimed in claim 1, wherein the second sub-network comprises a NAT routable sub-network that is subservient to the first sub-network. |
| [3] | The method as claimed in claim 1, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the method further comprises: generating broadcasts to inform wireless stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network. |

| [4] | The method as claimed in claim 3, further comprising generating and sending said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway. |
|---|---|
| [5] | The method as claimed in claim 4, further comprising automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway, and automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter as the network gateway, according to the number of such packets that are detected. |
| [6] | The method as claimed in claim 3, further comprising receiving a user instruction to adjust the rate of generating and sending said broadcasts on the wireless network setting the network adapter as the gateway, and adjusting said rate according to the user instruction. |
| [7] | The method as claimed in claim 1, wherein said verifying comprises retrieving locally or remotely stored user subscription information or information about user permissions to access the gateway. |
| [8] | The method as claimed in claim 1, further comprising controlling an allocated bandwidth through the gateway for users connecting via the second sub-network. |
| [9] | The method as claimed in claim 1, wherein said method is performed by executing driver software to configure a standard network adapter to exchange network traffic between the first and second sub-networks. |
| [10] | The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user. |
| [11] | The method as claimed in claim 1, wherein the second sub-network includes a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules. |

| | |
|---|---|
| [12] | The method as claimed in claim 1, wherein the first sub-network and second sub-network are within wireless communication range of said single network interface card or module. |
| [13PRE] | A computing apparatus for exchanging network data traffic between a first sub-network and a second sub-network, the apparatus comprising: |
| [13A] | a network adapter, comprising a single network interface card or module, for communicating wirelessly with the first sub-network and second sub-network; |
| [13B] | a processor; |
| [13C] | a data store storing a driver for the network interface card or module, the driver being configured to store a first network address and routing table for use in the first sub-network; a second network address and routing table for use in the second sub-network; to operate said single network interface card or module to receive data for one of the first and second sub-networks and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables, |
| [13D] | wherein the first sub-network includes a network gateway and the network interface card or module is configured to control access from the second sub-network to the network gateway and comprises an authentication controller for receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if the user is entitled to access the gateway, or blocking the user access to the gateway if the user is not entitled to access the gateway. |
| [14] | The apparatus as claimed in claim 13, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the apparatus further comprises a transmitter for generating broadcasts to inform stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network. |

| [15] | The apparatus as claimed in claim 14, wherein the transmitter is configured to generate and send said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway. |
| --- | --- |
| [16] | The apparatus as claimed in claim 15, further comprising a packet detector for automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway, and automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter to as the network gateway, according to the number of such packets that are detected. |
| [17] | The apparatus as claimed in claim 13, wherein the authentication controller comprises locally stored user subscription information or information about user permissions to access the gateway, or a retrieval system for retrieving user subscription information or information about user permissions from a remote location. |
| [18] | The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user. |
| [19PRE] | A method of operating a single network adapter consisting of a single network interface card or module for communicating with a local area network that includes a first sub-network and a second sub-network of the same type, the second sub-network including a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules, and the method comprising: |
| [19A] | setting up a first network address and routing table in the network interface card or module for use in the first sub-network; |
| [19B] | setting up a second network address and routing table in the network interface card or module for use in the second sub-network; |
| [19C] | using the network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the |

| | |
|---|---|
| | first and second sub-network, using the network addresses and routing tables, |
| [19D] | wherein the first sub-network includes a network gateway and the network interface card or module is configured as a hotspot controller to control access from the second sub-network to the network gateway, and |
| [19E] | wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway. |

## I. INTRODUCTION AND REQUEST FOR REEXAMINATION

### A. Request for *Ex parte* Reexamination

Requester respectfully requests reexamination under 35 U.S.C. § 301-307 and 37 C.F.R § 1.510 et seq. of claims 1-19 of U.S. Patent No. 9,258,309 (Exhibit A, "the '309 patent"), and issuance of a reexamination certificate cancelling those claims. As explained below, the prior art references identified and applied in this Request raise substantial new questions of patentability and render the above-noted claims unpatentable.

Requester certifies that on August 1, 2025, a complete copy of this Request was served via First Class Mail on the record Patent Owner of the '309 patent, at the following address:

> Graeser Associates International Inc.
> ATTN: Myra Spearman
> 111 West Jackson
> Suite 1700
> Chicago, IL 60604

Pursuant to 37 C.F.R. § 1.20(c)(1), Requester is submitting a fee of $5040. To the extent that any additional fees are required to complete this Request, the Office is hereby authorized by the undersigned to charge Deposit Account No. 606534 for such fees.

### B. 37 C.F.R. § 1.510(b)(6) – Certification By the Third-Party Requester

Pursuant to 37 C.F.R. § 1.510(b)(6), third-party Requester Connectify, Inc. hereby certifies that the statutory estoppel provisions of 35 U.S.C. § 315(e)(1) and 35 U.S.C. § 325(e)(1) do not prohibit Connectify, Inc. from filing this *ex parte* reexamination request. No PTAB challenges that would implicate those estoppel provisions have been filed by Requester.

### C. Reservation of Rights

Requester reserves all rights and defenses available, including, without limitation, defenses as to invalidity, unenforceability, and noninfringement regarding the '309 patent. Any interpretation or construction of the claims or particular terms, phrases or clauses made in this Request, either implicitly or explicitly, are solely for the purpose of this proceeding and should not be viewed as constituting, in whole or in part, Requester's own interpretation or construction. Moreover, because the *ex parte* reexamination procedure does not permit

16

challenges under 35 U.S.C. § 112, Requester has not included any indefiniteness or written description arguments herein. Requester reserves the right, however, to raise such arguments in other proceedings.

D. Identification of Related Matters

The '309 patent is the subject of the following related proceedings:

> *Bounts Technologies Ltd. V. Connectify, Inc., and Does 1-100*, 2:23-cv-00890 (E.D. Pennsylvania)

E. The Office Should Not Deny This Request

35 U.S.C. § 325(d) provides that:

> [D]uring the pendency of any post-grant review under this chapter, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the postgrant review or other proceeding or matter may proceed, including providing for the stay, transfer, consolidation, or termination of any such matter or proceeding. In determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.

35 U.S.C. § 325(d).

***First,*** there is no other Office proceeding involving the Reexam Claims ( claims 1 – 19 of the '309 Patent). This is the first post-grant proceeding challenging the Reexam Claims and thus there is no other proceeding relevant to claims 1 - 19 that is "before the Office." Thus, there is no basis to deny or stay this Request based upon the any other proceedings before the Office.

***Second,*** the same or substantially the same prior art or arguments have not been presented to the Office with respect to the Reexam Claims. None of the references in the SNQs herein were before the Office during prosecution of the '309 Patent.

In the reexamination context, the Trial Practice Guide explains that "the Office may not necessarily consider these *[Becton, Dickinson]* factors" when deciding whether to order reexamination as "[a]n *ex parte reexamination* proceeding is not a trial proceeding, and the considerations with respect to issues involving 35 U.S.C. § 325(d) may differ due to the differ nature of an *ex parte* reexamination proceeding." *(See Patent Trial and Appeal Board Consolidated Trial Practice Guide* (Nov. 2019)).

However, to the extent the Office wishes to consider the *Becton, Dickinson* factors, the

17

*Becton, Dickinson* factors weigh against denial under 35 U.S.C. § 325(d). The *Becton, Dickinson* factors (a), (b), and (d) support institution because the grounds herein present were not before the Examiner. Factors (c), (e) and (f) support institution because the Examiner never issued a prior art rejection nor indicated any substantive evaluation or appreciation of the prior art relied upon herein. Requester submits there was an error or oversight at least in not recognizing that prior art, including the art relied upon herein, invalidates the Reexam Claims. But for the misapprehension or oversight, the '309 Patent would not have been granted. *(See Advanced Bionics, LLC v. Med-El Elektromedizinische Gerdte GMBH,* IPR2019-01469, Paper 6 (Feb. 13, 2020) (precedential) (material oversight by the Examiner of specific teachings of prior art favors institution)).

Thus, the Office should grant this Request as there are substantial new questions of patentability with respect to the Reexam Claims and there is no basis to deny or stay pursuant to 35 U.S.C. § 325(d).

## II. IDENTIFICATION OF THE PATENT AND CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

Reexamination is requested of issued claims 1-19 of the '309 patent ("Requested Claims") in view of the following references:

U.S. Patent No. 6,067,569 to Khaki et al. ("Khaki"), filed July 10, 1997, qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1).

U.S. Patent No. 8,543,710 to Turley et al. ("Turley"), filed March 10, 2005, qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(2).

U. S. Patent No. 7,447,795 to Naghshineh et al. ("Naghshineh"), filed April 11, 2002 as a PCT application (and satisfied 371(c) 1, 2, and 4 on April 19, 2004), qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1).

U.S. Patent Application No. 2004/0103275 to Ji et al. ("Ji"), filed May 27, 2004, qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(2).

Velmurugan, A. et al., Mobile Ad-hoc Network Internetworking With Next Generation Internet, , Mobile Ad-hoc Network Internetworking with Next generation Internet. Information Technology

18

Journal, 4: 398-404 ("Velmurugan"), 2005 (and bears a copyright date of 2005), qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1).

Bashir, M. S., ARP Cache Poisoning with Ettercap, GIAC GSEC Security Essentials Certification, Practical Assignment, Version 1.4b, Option 1(Global Information Assurance Certification), was published August 4, 2003, qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1). Bashir is a public document that was cited, for example, in Altunbasak (Exhibit I)

U.S. Patent No. 2002/0016858 to Sawada ("Sawada") filed June 28, 2001, qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(2)

Each of the above patents and publications are prior art to the '309 patent and the grounds of rejection outlined in this Request raise substantial new questions of patentability (SNQs) because the references used to establish these grounds provide new teachings not previously considered by the Office. None of the references used to establish the grounds for rejection in the Request, nor the grounds themselves, were substantively advanced by the Examiner during prosecution of the '309 patent.

III. THE '309 PATENT

The '309 patent discloses a system and method for operating a wireless access point that enables communication between two logically distinct sub-networks using a single network adapter. This approach supports hotspot services with access control and user authentication integrated directly into the network interface controller.

> This invention relates to a method of operating a wireless access point for providing access to a network.

The invention permits a single adapter to manage routing and authentication for both a guest network and a network-connected gateway, eliminating the need for two separate network interface cards.

The system configures two IP addresses and routing tables within the network interface:

19

setting up a first network address and routing table in the network adapter for use in the first sub-network; setting up a second network address and routing table in the network adapter for use in the second sub-network

This enables the adapter to receive packets from one sub-network and forward them to the other:

receiving data for one of the first and second sub-networks, and re-transmitting the data to the other...

The design divides the sub-networks as follows:

•      First sub-network: Connected to the Internet gateway

•      Second sub-network: Wireless devices (guest users)

The core functionality centers around verifying user permissions before granting gateway access:

receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled

The hotspot controller handles this process, using:

•      MAC address recognition

•      Password or PIN validation

•      Subscription credentials

The '309 patent presents a system for managing dual-subnetwork communication, routing, and access control via a single network adapter. By consolidating these features into one interface and using dedicated logic and broadcasts, the system achieves secure, authenticated wireless access without needing multiple NICs.

## IV. CHALLENGED CLAIMS

Claims 1-19 are reproduced in the Table of Challenged Claims that follows the Table of Contents and Table of Exhibits above. Independent claim 1 (the broadest independent method claim) is reproduced below:

[1PRE] A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising:

[1A] setting up a first network address and routing table in the network interface card or module for use in the first sub-network;

[1B] setting up a second network address and routing table in the network interface card or module for use in the second sub-network;

[1C] using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,

[1D] wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and

[1E] wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway.

Independent claim 13 is substantially similar to independent claim 1 except that claim 13 is a "computing apparatus" that performs the steps set forth in claim 1, and further comprises a "driver" that performs the steps set forth in Limitations [1A], [1B], and [1C] of claim 1.

Independent claim 19 is substantially similar to independent claim 1, except for reciting that that second sub-network includes "a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules…"

The dependent claims (depending only from claims 1 and 13) recite the following additional features: second sub-network is NAT subservient (claim 2), broadcasts announce adapter as internet gateway (claims 3 and 14), broadcast rate overrides router gateway broadcasts (claims 4 and 15), detect misuse and auto-adjust broadcast frequency (claims 5 and 16), broadcast rate is

based on user instruction (claim 6); gateway access determined from stored user information (claims 7 and 17); control user bandwidth through gateway (claim 8); driver configures standard adapter to exchange traffic between networks (claim 9); network adapter talks directly to multiple devices (claim 11); sub-networks are within wireless range (claim 12); authentication controller authenticates users (claim 18).

## V. PROSECUTION HISTORY

The patent application that matured into the '309 patent was filed on April 9, 2014, and is a continuation of U.S. Patent Application Serial No. 13/127,223 that was filed on May 2, 2011 (and subsequently abandoned), which is a national phase of PCT/IB2009/054623 that was filed on October 20, 2009, and that claims priority to United Kingdom application 0820108.9 that was filed on November 3, 2008. All prior art references in the Grounds below are dated prior to November 3, 2008.

In a Non-Final Office Action mailed on January 27, 2015, the Examiner rejected claims 1, 7, 9-13 and 17-19 under 35 U.S.C. § 103(a) as being unpatentable over Luo (US 7,469,294) in view of Knox (US 2007/0225019) and Wu (US 2008/0069065). The remaining claims were rejected by combining the above references with Biswas (US 2007/0019540), Geoffrion (US 2005/0182839), Dutta (US 7,296,091, Regan (US 2006/0023730), and/or Klamer (US 2005/0163223).

In response, Applicant stated that the wrong claims had been examined, and submitted a copy of the claims that should have been examined. No amendments were made.

The Examiner then allowed the application with no comments or remarks.

## VI. STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY

All grounds raised in this Request raise a Substantial New Question of Patentability (SNQ). These SNQ's are new for at least the following reasons:

1) None of the prior art relied upon herein is subject to a final judgement on invalidity of the '309 patent by a federal court. While the '309 patent has been asserted in federal court (and only

in the Copending Litigation), no final judgment regarding the invalidity of the '309 patent has been entered.

2) None of the prior art relied upon herein has been raised by the PTO in a pending examination.

3) The SNQs raised by the prior art relied upon herein were not relied upon by the PTO during examination of the '309 patent.

The table below summarizes the proposed rejections for each SNQ:

| SNQ # | References | Claims | Basis |
|---|---|---|---|
| 1 | Khaki in view of Turley or Ji | 1, 10-13, 18,19 | § 103 |
| 2 | Naghshineh in view of Turley or Ji | 1,10-13, 18,19 | § 103 |
| 3 | Khaki or Naghshineh, in view of Turley or Ji, and further in view of Velmurugan | 3, 6, 14 | § 103 |
| 4 | Khaki or Naghshineh, in view of Turley or Ji, and further in view of Velmurugan and Bashir | 4, 5, 15, 16 | § 103 |
| 5 | Khaki or Naghshineh, in view of Turley or Ji, and further in view of Sawada | 10, 18 | § 103 |
| 6 | Khaki or Naghshineh, In view of Turley and Ji | 2, 7-9, 17 | § 103 |

## VII. DETAILED EXPLANATION UNDER 37 C.F.R. § 1.510

A. Rejection 1 (SNQ 1): Claims 1, 10 - 13, 18 and 19 are obvious over Khaki in view of Turley or Ji

1. Khaki

U.S. Patent 6,067,569 to Khaki et al. ("Khaki") (Exhibit B), titled "Fast-forwarding and filtering of network packets in a computer system" was filed July 10, 1997 and issued on May 23, 2000. Khaki qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1). Khaki is analogous art to the '309 patent, in addition to being in the same field of endeavor.

Khaki relates to packet-level routing and filtering mechanisms within a networked computer environment. The invention is implemented within a general-purpose computer

system, but distinctively <u>relocates the routing function from the main CPU to the network card</u>, referred to as "fast-forwarding" in the disclosure.

Khaki begins by describing conventional network systems, where routing decisions are performed by a central CPU with support from an operating system. Traditional routers include a cross-reference mechanism between computer addresses and LAN segments. Filtering by network administrators, when enabled, prevents the use of routing caches, leading to significant latency. Khaki seeks to overcome this problem by enabling routing and filtering (network authorization) functionality to be performed directly on the network card, thereby bypassing the CPU and reducing latency.

Khaki discloses a network card 14 that includes multiple Network Interface Connections (designated NIC1–NIC4). These NICs connect to different networks. The network card 14 is shown in Khaki Figure 4:



In addition to microprocessor 32, and as illustrated in Figure 4, the card includes:

1) A fast-forwarding cache 76 – which is a routing table; and

2) Network Interface Connections ("The network card includes a number of NICs. These NICs are designated as NIC1, NIC2, NIC3, and NIC4." Column 4, lines 42 – 44).

A central element of the invention is the fast-forwarding cache, which is described as a routing table that routes data by holding packet identifiers and corresponding routing metadata:

> The fast-forwarding cache holds information that facilitates the fast-forwarding of network packets by the network card. As will be described in more detail below, the fast-forwarding cache serves as a lookup table to which incoming network packets may be compared to determine whether they should be fast-forwarded by the network card. Column 4, line 52 et seq.

Each row contains a packet identifier... a network address... a framing field... and a NIC port number... Column 5, line 4 et seq.

The system updates this cache dynamically as packets are processed.

The routing decision logic implemented in the network card operates independently of the operating system.

> When it is determined that a network packet should be fast-forwarded to the destination network by the network card, it is fast-forwarded without intervention of the main central processing unit. Col 3, line 5 et seq.

> The fast-forwarding mechanism fast-forwards a network packet that is received in the network card to a destination network without intervention by a main central processing unit... Col. 3, line 13 et seq.

Khaki makes repeated reference to the NIC connecting to multiple local area networks (LANs), which inherently represent sub-networks:

> A network 100 comprises several local area networks 101–102 that are connected to a routing system 103... (Col. 1, lines 17-19) [T]he routing system interconnects each of the local area networks into an overall network. (Col. 1, lines 53-54)

These LANs represent distinct sub-networks between which the NIC may forward packets, guided by its routing table.

Khaki is analogous art to the '309 patent because Khaki addresses the same field of endeavor: inter-network communication using a network interface card. Both the '309 patent and Khaki relate to using a single network interface card or module to handle communications across multiple sub-networks, including the use of network addresses, routing tables, and packet forwarding techniques.

26

'309 specifically claims a method of operating a single network interface card to set up routing tables for two sub-networks and to forward data between them. Khaki teaches this exact structure, describing a NIC that supports multiple network addresses, routing logic implemented in cache, and forwarding across NIC ports:

> The network card includes a fast-forwarding mechanism and multiple ports for interfacing with the multiple networks. (Col. 3, lines 11-13)

> Each NIC is connected to a communications link of a network and can be used to send and receive packets on the network. (Col. 4, lines 18-20)

Khaki further describes packet-level filtering based on destination or protocol, akin to policy enforcement. While Levi focuses on user-based access to a gateway, the underlying technical mechanism—a NIC with routing and filtering ability across two sub-networks—is the same.

Thus, Khaki is directed to the same problem as the '309 patent: efficient and controlled routing between network segments using a single NIC. Its teachings are pertinent to the 309 patent's technology, making it analogous art.


2. Turley

U.S. Patent 8,543,710 to Turley et al. ("Turley") (Exhibit B), titled "Method and system for controlling network access" was filed March 10, 2005, published September 15, 2005 and issued on September 24, 2013. Turley qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(2). Turley is analogous art to the '309 patent, in addition to being in the same field of endeavor.

Turley patent pertains to systems and methods for network access control, particularly methods to dynamically constrain, redirect, or authorize a network client's access to resources within or beyond a network boundary. The patent describes techniques for isolating users or devices based on security status, policy classification, or other metadata, using network access gateways. Turley introduces the concept of "walled

gardens" in which clients are granted access only to selected resources, based on their status, identity, or behavior.

The core functionality of Turley resides in a network access gateway that applies client-specific access rules. These rules are enforced through routing technologies, firewall filters, and traffic analysis, allowing or denying access to network destinations. This control is often dynamic, and clients may be reclassified at runtime based on external inputs or observed network behavior.

Embodiments of the present invention allow a service provider to use the network access gateway to constrain a network client's level of network access... and still allow the user access to a limited set of network destinations...(Turley, Col. 1, lines 61-65)

Turley's system architecture consists of client devices, a network access gateway, and one or more external networks. As illustrated in Figure 1, clients (1–4) on a local network (LAN 10) connect to the Internet (13) through a central gateway (11). This gateway mediates all outbound and inbound traffic and applies access control rules.

Clients 1, 2, 3, 4 on LAN network 10 are connected to Internet 13 via gateway 11.



*FIG. 1*

Turley discloses client classification based on IP address, MAC address, subnet membership, or behavioral patterns. The classified client is then associated with a particular set of access control rules (the walled garden):

> [C]lient[s]... may be arbitrarily classified or grouped based on facts known to the system such as assigned client subnet, organizational boundaries, or security standing based on traffic patterns or content. (Col. 3, lines 56-60)

Clients not entitled to unrestricted access may be limited to specific domains or protocols. If a user attempts to access a resource outside the allowed list, the gateway may block, redirect, or serve an explanatory web page:

> [R]estricting all network traffic emanating from the client device to an allowed
> network destination address... and rendering a web page... wherein the webpage
> contains an offer for a user... to obtain unrestricted access. (Col. 6, lines 43-49)

This shows that the system supports user-specific access verification and conditional
gateway access. Turley also integrates feedback mechanisms—such as warning or
instruction pages—to inform the user and guide them to take actions to regain broader
access privileges.

> The page can inform the user of his status in the access gateway and offer choices
> of action. (Col. 5, lines 9-11)

Turley is analogous art to the '309 patent because it is directed to the same problem—
controlling access between network segments using a combination of routing and access
control mechanisms—and is reasonably pertinent to the '309 patent's field of endeavor.
Both Turley and the '309 patent deal with controlling access from one sub-network to
another via a network gateway, based on user identity or authorization status.

The '309 patent claims a method where a network adapter receives a request from a user
on one sub-network to access a gateway on another sub-network and verifies the user's
access rights. Turley discloses the same concept through the use of a network access
gateway that imposes user-specific access policies, verifies entitlement, and restricts
traffic accordingly.

Moreover, Turley supports the notion of user classification and grouping using subnets:

> [C]lients... may be arbitrarily classified or grouped based on facts known to the
> system such as assigned client subnet..." (Col. 3, lines 56-59)

This matches the 309 patent's architecture of first and second sub-networks and
demonstrates that Turley is directed to controlling user access to gateways across subnet
boundaries, just as the '309 patent claims. The Turley system also uses routing
technologies and firewall rules to enforce these access controls, making it technically and
legally analogous art:

In still other embodiments, network routing technologies are employed to limit network packet traversal by a constrained client." (Col. 6, lines 14-16)

Therefore, Turley is pertinent to the problem the '309 patent addresses and would be considered analogous art.

3. Ji

U.S Patent Application 2004/0103275 to Ji et al. ("Ji") (Exhibit E), titled "Methods and apparatus for secure, portable, wireless and multi-hop data networking" was filed on June 18, 2003 and issued on May 27, 2004. Ji qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1). Ji is analogous art to the '309 patent, in addition to being in the same field of endeavor.

Ji relates to a Secure Nomadic Wireless Network (SNOWNET), a hierarchical and dynamic wireless network designed to provide self-configured, portable, and secure wireless network access. It aims to overcome limitations of traditional Wireless Local Area Networks (WLANs), such as complex deployment, static configurations, and security vulnerabilities (like those found in WEP and initial 802.11 authentication). SNOWNET utilizes "SNOWNET nodes" that form a wireless backbone and also provide local access services to mobile clients, enabling quick deployment in various environments irrespective of existing wired infrastructure. Security is a core aspect, implemented through authentication of both nodes and clients, along with data encryption and dynamic key management.

Ji places a strong emphasis on controlled access for users. It includes a robust client authentication mechanism. The patent describes that a SNOWNET node:

> …may optionally host an authentication server 534 such as a RADIUS server 303 that will provide all of the necessary checking of credentials, generation of keys and storage of credential information. [0056]

This server stores and manages critical information, including certificates and credentials for all authorized clients. During the authentication process, client certificates are verified against this stored information to ensure that only authenticated users are granted access

to the network and its services, including connections to external networks through SNOWNET gateways. Furthermore, it states,

> Before SNOWNET deployment, this node 303 downloads all necessary certificates into its system memory 404 so it can carry out the authentication duties. Such certificates include those for SNOWNET nodes 302 as well as for all authorized clients. [0060]

Furthermore, SNOWNET is equipped with capabilities to manage network resources effectively. It includes a Quality of Service (QoS) module that plays a crucial role in controlling how communication bandwidth is allocated among connected clients. The patent explicitly states:

> The Quality of Service module 524 controls the share of the communication bandwidth given to each client. [0054]

This module ensures that network capacity is managed dynamically, allowing the system to distribute available bandwidth efficiently based on client needs or network conditions. This capability helps optimize the user experience by maintaining performance and fairness across the network for users accessing services through the system's access points and gateways.

The SNOWNET system is built upon software components that interact directly with the network hardware. The patent details that:

> The software components 500 include operating system kernel space drivers 502 for various network interfaces, including drivers for … 802.11 Network Interface Card (NIC) in Host AP mode 506, and 802.11 NIC in Ad Hoc mode 508. [0052]

These drivers enable the SNOWNET nodes to effectively handle and exchange network traffic between different levels of communication within the network. It clarifies that:

> SNOWNET nodes 302 relay communication between these two levels [0043]

referring to backbone communication and local access communication.

32

4. Claim 1

a. [1PRE]: <u>A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising</u>:

To the extent that the preamble of claim 1 is limiting, Khaki discloses it. Khaki discloses a general-purpose computer system equipped with a network card that has "multiple ports for interfacing with the multiple networks" (col. 3, lines 11-12). The network card includes multiple network interface connections (NIC) (col. 4, lines 16-20).The NICs described by Khaki include NIC1, NIC2, NIC3, NIC4 (col. 4, line 44), and they connect to different LANs (Fig. 4). These LANs correspond to sub-networks, and the NIC is configured to communicate across them.

Khaki is connected to "number of different networks 20" (col. 4, line 13), and does not limit the type of network Kahki is connected to. Khaki connects to networks using "typical types of typical types of network cards" and provides examples such as 802.3, DIX, TR, and FDDI. The structural and functional features of a single NIC managing communication across multiple sub-networks are fully disclosed, and sub-networks are commonly known to be wireless. Thus, Kahki discloses "a single network adapter" as claimed.

Turley discloses a "wireless" network as an example of a network (col. 2, line 5).

b. [1A]: <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u>

Khaki discloses that the NIC stores routing information in a "fast-forwarding cache" located on the NIC itself (Col. 4, lines 43-47). This cache holds routing data including packet identifiers and NIC port assignments corresponding to destinations on specific networks, effectively serving as a routing table. For example:

> Each row contains a packet identifier... and a NIC port number that identifies the port..." (Col. 5, lines 4-9).

33

This mechanism operates per destination sub-network, fulfilling the function of a routing table specific to a first network. Thus, Kahki discloses "setting up a first network address and routing table."

c. [1B]: setting up a second network address and routing table in the network interface card or module for use in the second sub-network;

Khaki similarly supports handling multiple destination networks using the same routing infrastructure. The fast-forwarding cache supports entries for distinct packet identifiers corresponding to multiple sub-networks. For instance, Fig. 5C illustrates multiple routing entries, each identifying different network destinations and corresponding NIC ports.

**Fig. 5C**

| Packet identifier | Network Addresses | Framing | NIC |
|---|---|---|---|
| <A5,B2,TCP,14,25> | B2,E7 | 802.3 | 3 |
| <E1,B2,UDP,36,97> | B3,A5 | Ethernet | 1 |
| | | | |

The NIC thus handles routing for multiple sub-networks simultaneously using its internal cache, which acts as a multi-network routing table.

d. [1C]: using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,

Khaki explicitly teaches the process of receiving data on one NIC port and forwarding it to another, using the internal fast-forwarding cache as a routing table. Col. 7, lines 1-22 describes the packet being received by the NIC, checked against the cache, updated with new address and framing data, and then transmitted to the appropriate NIC port:

> FIG. 7 is a flow diagram of the routine of the network card that receives a packet from the network. This routine receives packets and determines

34

whether fast-forwarding information for the packet is in the fast-forwarding cache. If fast-forwarding information is in the cache, the routine fast-forwards the packet, otherwise the routine sends the packet to the NDIS driver. In step 701, the routine extracts the packet identifier from the received network packet. In step 702, if a row in the fast-forwarding cache matches the extracted packet identifier, then the routine continues at Step 704, else the routine continues at step 703. In step 703, the routine stores the packet in the incoming cache and forwards the packet to the NDIS driver which forwards the packet to is the operating System and completes. In steps 704–706, the routine fast-forwards the packet. In Step 704, the routine updates the network source and destination address in the packet with the information from the fast-forwarding cache. In step 705, the routine adjusts the framing of the packet, if necessary. In Step 706, the routine transmits the updated package to the NIC port indicated in the cache and completes.

This satisfies the requirement of receiving from one sub-network and re-transmitting to the other, using stored routing information.

e. [1D]: wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and

Khaki clearly discloses the presence of a network gateway in the first sub-network. It describes a "routing system" that interconnects local area networks, which serves the function of a gateway:

> A network 100 comprises several local area networks 101–102 that are connected to a routing system 103... (Col. 1, lines 17-19)

> [T]he routing system interconnects each of the local area networks into an overall network." (Col. 1, lines 53-54).

[S]uch routing techniques can be used on wide area networks and on the
Internet (Col. 1, lines 56-58)

Additionally, the network interface card is configured to apply filtering rules to
control whether packets are forwarded or dropped, directly enforcing access policies.
This control mechanism is inherent in gateway functionality. As stated:

Filtering is concurrently active with the fast-forwarding so that the main
central processing unit applies filtering to at least some of the network
packets... to determine whether to accept or drop the network packets." (Col.
3, lines 27-29).

The ability to determine whether a packet is forwarded to a destination network using
routing and filtering constitutes control over access to that gateway. Therefore, Khaki
not only supports the presence of a gateway in the first sub-network, it also clearly
shows that the network adapter is responsible for controlling access to it.

Turley explicitly discloses a system in which a network access gateway controls
traffic between a client device (connected to a local network) and broader network
destinations, such as the Internet or an internal system. Turley states that

Clients 1, 2, 3, 4 on LAN network 10 are connected to Internet 13 via gateway
11. All network traffic from clients 1, 2, 3, 4 bound for Internet 13 is handled
by gateway 11." (Col. 4, lines 31–33).

The gateway inspects incoming traffic and applies access control based on user
identity or classification, e.g.,

At network access gateway 11, incoming network traffic is inspected for
attributes that identify the traffic as associated with a particular client..." (Col.
4, lines 47-49).

The system determines whether traffic should be forwarded, dropped, or redirected
depending on the user's classification and assigned walled garden. This fulfills the
'309 patent's requirement that a network adapter (or module) is configured to control
access to a gateway from another network, since Turley shows that such a gateway

36

mediates access based on traffic origination and rules, including source network and user identity. The client's LAN acts as the "second sub-network" and the gateway-enforced destination region (e.g., the Internet or walled garden) is the "first sub-network" containing the gateway. Thus, Turley clearly describes access control from one sub-network to a gateway residing in another.

Ji discloses:

> Some SNOWNET nodes may also have an additional link 312 connected to the rest of an organizational network, the global Internet or some other external network. These nodes, called SNOWNET gateways act as gateways for the SNOWNET 300 to reach the Internet or other external networks. (Ji, ¶0041)

This passage expressly establishes that Ji discloses a first sub-network including a network gateway, namely the SNOWNET gateway node, which provides access to an external network such as the Internet.

> Only authorized devices (both SNOWNET nodes and mobile clients) are allowed to access and be served by the SNOWNET. (Ji, ¶0021)

This establishes that SNOWNET nodes enforce *control* over who may access the network, including control over access to any services provided by the SNOWNET, such as access to a gateway to the Internet.

> SNOWNET provides security through authentication of the nodes and clients, as well as through encryption of the data. [0023]

> SNOWNET nodes 302 that provide local network access services act as authenticators in the IEEE 802.1x architecture using its Client Authentication Module 526. [0061]

These statements confirm that the SNOWNET node includes functionality to perform authentication of clients seeking access, and that this authentication controls whether the client can access network services.

37

> Mutual authentication between mobile clients 310 and the SNOWNET
> network 300 is supported through the successful completion of the
> authentication process, as this can only be accomplished if both the client 310
> and SNOWNET nodes 302 are properly identified using a public key
> infrastructure. [0061]

> Using the same RADIUS server 303, SNOWNET 300 dynamically and
> periodically updates the shared keys used for communications between clients
> 310 and APs 302. [0063]

This shows that access control is performed on a per-user basis using an
authentication process, consistent with the requirement in step (d) that access is
"verified" and "allowed… if and only if the user is entitled."

Taken together, Ji teaches that (1) the first sub-network includes a gateway to the
Internet (the SNOWNET gateway node); (2) the SNOWNET node includes
functionality to authenticate clients; and (3) client access to the SNOWNET,
including to gateway services, is permitted only following successful authentication.
These disclosures satisfy the limitation of step (d) of claim 1: "the first sub-network
includes a network gateway and the network adapter is configured to control access
from the second sub-network to the network gateway."

f. [1E]:  wherein the step of receiving data comprises receiving a request from a user
via the second sub-network to access the gateway on the first sub-network, verifying
the user's access rights, and allowing the user to access the gateway if and only if the
user is entitled to access the gateway.

Turley explicitly discloses this functionality. It describes a network access gateway
that inspects traffic originating from clients and restricts it based on user
classification, behavior, or group membership. For example, it states:

> [R]estricting all network traffic emanating from the client device to an
> allowed network destination address... and rendering a web page... wherein

the webpage contains an offer for a user... to obtain unrestricted access." (Col. 6, lines 43-49).

Access is therefore granted only if the user complies with access conditions, thereby verifying entitlement.

Additionally, Turley includes mechanisms for user interaction with the gateway, including status messages and conditional access paths:

> The page can inform the user of his status in the access gateway and offer choices of action." (Col. 5, lines 8-10).

This corresponds directly to the 309 patent's claim that the system must verify access rights and allow access only if the user is entitled. The enforcement of access control policies—based on identity, behavior, or compliance with prescribed actions—meets the requirement that the gateway allow access "if and only if" the user is authorized. Thus, Turley anticipates the final element of claim 1 of the '309 patent by disclosing a method for validating user rights and conditionally permitting gateway access.

Ji discloses:

> SNOWNET nodes 302 that provide local network access services act as authenticators in the IEEE 802.1x architecture using its Client Authentication Module 526. [0061]

This shows that a SNOWNET node (i.e., the network adapter) operates as an IEEE 802.1x authenticator, meaning it is responsible for managing user access by receiving and processing access requests.

> As shown in FIG. 5, a supplicant (or client) 310 accesses the SNOWNET 300 through the access point interface of the SNOWNET node 302. The SNOWNET node 302 serves as an authenticator, and is in communication with an Authentication Server 303. [0059]

This passage confirms that the client initiates an access request to the SNOWNET node (which is part of the network adapter), thereby satisfying the step of "receiving a

39

request from a user via the second sub-network to access the gateway on the first sub-network."

> During the EAP handshake between the mobile client 310 and authenticating SNOWNET node 302, the client 310 sends an EAP start message and the SNOWNET node 302 returns an EAP message requesting the user's identity. The client 310 returns his certificate... The authentication server 303 verifies the client certificate and if the certificate is valid, the authentication server 303 generates a session key... [0062]

This shows that the user's access rights are verified based on their certificate using a public key infrastructure and that access is conditional on successful validation.

> If the client 310 accepts the network certificate, the client 310 decrypts the local shared WEP key, configures the shared key into its IEEE 802.11 device, and begins to access the network 300. [0062]

This indicates that the user is allowed to access the network (and thus the gateway) only upon successful authentication. Access is not granted unless the verification step is completed successfully.

Therefore, Ji discloses all the elements of step (e): (1) the SNOWNET node receives a request from a user to access the network via the second sub-network; (2) it verifies the user's access rights using public key authentication; and (3) the user is granted access to the network gateway only if entitled to do so.

g. Motivations to Combine Kahki with Turley or Ji

A person of ordinary skill in the art would be motivated to combine Kahki with Turley or Ji for the reasons set forth below. First, the Kahki/Turley combination will be discussed. Then, the Kahki/Ji combination will be discussed.

With regard to a first motivation to combine: A person of ordinary skill in the art (POSITA) would have been motivated to combine the teachings of Khaki and Turley based on the rationale that their combination would yield predictable results.

40

Turley's mechanism for controlling access to a network gateway was well known and directly extends the access control and packet-forwarding concepts already contemplated by Khaki. Specifically, Khaki describes packet-level filtering at the network interface controller (NIC), where "filtering is concurrently active with the fast-forwarding so that the main central processing unit applies filtering to at least some of the network packets... to determine whether to accept or drop the network packets" (Khaki, Col. 3, lines 27–30). This functionality forms the basis for enforcing access policies at the data-plane level—i.e., at the level of network traffic itself—consistent with basic gateway enforcement techniques.

Turley builds upon this concept by introducing user-centric access control applied at a network gateway, where access decisions are based not only on packet content or filtering rules, but also on user authentication and interaction. Turley describes: "[R]estricting all network traffic emanating from the client device to an allowed network destination address to selected one or more network protocols; and rendering a web page to display on the client device from the network access gateway device, wherein the webpage contains an offer for a user of the client device to perform an action in order to obtain unrestricted access to the Internet" (Turley, Col. 6, lines 40–50). This integrates access control with interactive, user-level conditions.

A POSITA reviewing Khaki would recognize that combining Khaki's packet-level NIC filtering with Turley's user-based gateway enforcement would be a logical, technically compatible integration. Both systems serve the same general purpose: controlling packet flow across network boundaries. The combination would yield a predictable result—namely, a system that enforces access controls both at the NIC level and at the user session level, providing fine-grained control over network access. Such an enhancement would be straightforward for a POSITA to implement using known methods, and it would not require inventive skill to foresee its benefits in network security systems that require both performance (as in Khaki) and dynamic user management (as in Turley).

A second, independent motivation to combine the teachings of Khaki and Turley is that doing so would have been obvious to try from the perspective of a person of

41

ordinary skill in the art (POSITA), faced with the problem of implementing dynamic access control at a network boundary.

Khaki already discloses selective forwarding and packet filtering at the NIC level, where traffic is permitted or dropped based on filtering rules. This capability forms the basis of basic access control. However, Khaki does not prescribe how the filtering rules are generated or adapted in response to user-specific conditions, such as whether a user has authenticated or agreed to terms of use.

Turley, by contrast, discloses a system where user interactions are used to determine whether access is permitted. The gateway in Turley applies filtering rules conditionally, based on whether the user has taken an action (e.g., responding to a web page prompt). Turley's mechanism thus represents a known way to refine access control by integrating dynamic, user-aware rule sets.

Faced with the design need to enforce filtering not just statically but based on user interactions, a POSITA would have found it obvious to try combining Turley's gateway logic with Khaki's NIC-level filtering. The technical options for implementing such conditional access were finite and predictable—including rule-based gating, session-based state tracking, and redirecting users to a captive portal. Each of these was well-known and compatible with Khaki's architecture, making the application of Turley's teaching a logical extension of Khaki's filtering model.

Thus, combining Turley's dynamic access rules with Khaki's static filtering would have been obvious to try, with a reasonable expectation of success and no need for inventive ingenuity.

With regard to a third motivation to combine: A person of ordinary skill in the art (POSITA) would have been motivated to combine the teachings of Khaki and Turley based on design need or market pressure to solve a problem and pursue known options

Khaki discloses an efficient, high-performance packet forwarding mechanism in which routing decisions are offloaded to the network interface card (NIC), thereby reducing CPU involvement: "fast-forwarded without intervention of the main central processing unit" (Khaki, Summary). In contrast, Ji addresses a very different, yet highly complementary problem: how to create a wireless network infrastructure that is rapidly deployable, secure, and capable of autonomous operation in the absence of traditional wired infrastructure or power sources [0021, 0045].

A person of ordinary skill in the art (POSITA) would be motivated to combine Khaki's fast-forwarding NIC technology with Ji's SNOWNET system because the latter's deployment in mobile, resource-constrained, infrastructure-free environments would benefit from the former's efficient routing. Specifically, SNOWNET nodes, which are "embedded systems comprising a processor... and … one or more network interfaces" (Ji, ¶0045), must handle user authentication, data encryption, routing, and mobility support using limited processing power. Integrating Khaki's NIC-level fast-forwarding directly supports Ji's objective of reducing dependency on central processing units, which are power- and computation-intensive. This integration directly addresses the "design need" of reducing latency and CPU load in constrained environments such as battlefields or disaster zones.

Furthermore, Khaki already envisions that its invention may be implemented on "general-purpose computer systems," not requiring specialized infrastructure (Khaki, Detailed Description), which aligns with SNOWNET's deployment scenarios. Both systems also address routing and filtering challenges—Khaki with caching and fast-forwarding, Ji with node-level and client-level authentication and access control. The combination yields predictable results: a portable and secure wireless network whose routing efficiency is improved by hardware acceleration without compromising SNOWNET's core functions. Thus, in view of KSR, the combination of these elements would have been obvious because it involves applying known techniques (Khaki) to improve the performance of a known system (Ji) in a way consistent with the design goals of both.

With regard to a fourth motivation to combine, a person of ordinary skill in the art (POSITA) would have been motivated to combine the teachings of Khaki and Turley based on the rationale that it would be obvious to try and would be a use of known technique to improve similar devices.

In Khaki, fast-forwarding is achieved by implementing routing logic directly in the network card: "without intervention of the main central processing unit" (Khaki, Summary). A routing cache is used to quickly determine if a packet can be forwarded without full routing table lookup or processing by the operating system. This architecture explicitly "minimizes the overhead placed on the main central processing unit" and accelerates routing operations.

In Ji, the SNOWNET system is designed around embedded devices with limited processing power and energy resources. SNOWNET nodes are described as running on batteries and being "power-efficient and power-aware" [0048]. Each node must perform complex operations including authentication, secure communications, packet forwarding, and routing. The SNOWNET network layer is also described as providing services to multiple software components and middleware modules [0054], imposing a significant burden on the embedded processor.

A POSITA would readily understand that reducing CPU overhead in SNOWNET nodes would conserve both processing and battery resources, improving system longevity and performance. Since Khaki already teaches a known method of achieving this goal—by offloading routing functions to the NIC using caching and fast-forwarding—the combination would have been "obvious to try" using known techniques with a reasonable expectation of success. The modification is routine engineering: replacing software-based routing in SNOWNET nodes with Khaki's hardware-accelerated, cache-based NIC forwarding.

Thus, both Khaki and Turley suggest the claimed combination. Khaki provides the infrastructure (NIC, cache, fast-forwarding, filtering), while Turley supplies the policy and identity-based logic. The combined system performs packet forwarding

between networks with access control based on user authorization, matching the structure and function of claim 1 of the '309 patent.

5. Claim 10

a. [10]: <u>The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user</u>.

The combination of Khaki in view of Turley or Ji teach all the features of claim 1, as established above in section VII.A.4.

Turley further discloses an apparatus with functionality that corresponds to a system in which an authentication controller authorizes and authenticates users. Although Turley does not use the specific words "authorize" and "authenticate," it clearly describes the functional equivalent of these steps in the context of granting or denying network access based on a user's identity, membership, or behavior. Specifically, Turley states:

> Embodiments of the present invention may make use of network firewall rule technology, configured to recognize clients by identity or membership in a group. Once classified, traffic from a client can then be subjected to a particular list of access rules… (Col. 2, lines 9 - 13).

This functionality inherently involves *identifying* the user (authentication) and *determining their permissions* (authorization) to access certain network resources. Further, Turley explains:

> A network access gateway can support any number of these walled gardens and can dynamically move clients in and out of these walled gardens based on any status information it maintains, discovers, or is notified about from an external source (Col. 2, lines 15 - 19).

Turley also explains that:

> Clients ... whose traffic is not addressed to a location in an access list ... may have the traffic dropped, denied, or redirected by gateway 11 (Col. 4, line 66 – Col. 5, line 3).

45

Thus, the system distinguishes among users and controls access based on those distinctions, consistent with the operation of an "authentication controller ... programmed to authorise and authenticate a user." The client's access to the network is gated on the system's recognition and classification of the client, which is equivalent to authentication and authorization.

Therefore, Turley discloses the limitations of claim 10 through its use of identity-based classification and access control

Ji also discloses the features of claim 10.

Ji Discloses Authentication and Authorization of Users

> SNOWNET nodes 302 that provide local network access services act as authenticators in the IEEE 802.1x architecture using its Client Authentication Module 526. Regular mobile clients 310 are supplicants.
> *(Ji, ¶0061)*

> To execute the authenticator functions, the Client Authentication Module 526 in SNOWNET nodes 302 run the Open1X Authenticator software... SNOWNET Client Authentication Modules 526 enhance the standard IEEE 802.1x security by offering additional features such as mutual authentication between the mobile clients and the network and dynamic key rotation. [0061]

> The authenticator 302 then forwards this encrypted certificate to the authentication server 303. The authentication server 303 verifies the client certificate and if the certificate is valid, the authentication server 303 generates a session key... Using this session key, the AP 302 encrypts the local shared WEP key and sends the encrypted shared key to the client 310... If the client 310 accepts the network certificate... begins to access the network 300. [0062]

Ji discloses that clients (users) must be authenticated using IEEE 802.1x and a RADIUS server before being allowed to access the network. The certificate

46

verification, session key issuance, and mutual authentication establish both authorization and authentication. This matches the core requirement of Claim 10.

Ji discloses that authentication:

> If the certificate is valid... the authentication server 303 generates a session key... the AP 302 encrypts the local shared WEP key and sends the encrypted shared key to the client 310... If the client 310 accepts the network certificate... configures the shared key... and begins to access the network 300. [0062]

This quote ties receiving data to the process of authentication. Ji discloses that a client cannot access the network to send/receive data until the authentication is successful. In fact, the client's ability to configure its network interface and begin communication only follows successful authorization.

Thus, the receipt of data is contingent on and comprises authentication — which is what Claim 10 recites.

Ji discloses that authorizing and authenticating is integral to data access

> The SNOWNET node 302 serves as an authenticator, and is in communication with an Authentication Server 303. [0059]

> SNOWNET 300 dynamically and periodically updates the shared keys used for communications between clients 310 and APs 302. [0063]

Authorization is enforced not just at first connection but periodically thereafter, tying ongoing data communication to a continuing authorization process. This strengthens the disclosure that data receipt includes an authorization step, not merely a one-time gate check.

Ji thus discloses:

- Explicit, standards-based client authentication and authorization using IEEE 802.1x and RADIUS [0061–0062],

- That such authentication is required before data transmission or reception occurs [0062],

- That session keys and network access are only granted after successful authentication [0062],

- And that key rotation maintains ongoing authorized communication [0063].

Therefore, Ji discloses the features of Claim 10.

6. Claim 11

a. [11] <u>The method as claimed in claim 1, wherein the second sub-network includes a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules</u>.

The combination of Khaki in view of Turley or Ji teach all the features of claim 1, as established above in section VII.A.4. Including a plurality of devices on a network as recited by claim 11 was notoriously well known at the time of the '309 patent's priority date. Including network interface cards or modules in devices was also notoriously well known at the time of the '309 patent's priority date. Network interface cards or modules communicating with each other was also notoriously well known at the time of the '309 patents priority date.

Khaki Figure 1 illustrates that computer systems on multiple networks (101,102). Khaki discloses that each computer system may include a network card 14 (Figure 3), respectively for communicating with each other. As multiple networks were known, and the use of a network card on a network was known, by definition the use of multiple network cards communicating with each other was known. Therefore, the features of claim 11 were both notoriously well known at the time of the 309 patent's priority date and are disclosed in Khaki.

Accordingly, Khaki discloses each and every feature of Claim 11

48

7. Claim 12

a. [12] The method as claimed in claim 1, wherein the first sub-network and second sub-network are within wireless communication range of said single network interface card or module.

The combination of Khaki in view of Turley or Ji teach all the features of claim 1, as established above in section VII.A.4. Furthermore, wireless networks were well known well before the '309 patent's priority date. Placing the "single network interface card or module" of claim 1 within network wireless communication range is inherent.

Furthermore, Turley states the following:

> An example of this is a public wireless network at a venue that wishes to provide free information about the venue via its own website or affiliated websites, yet requires payment for clients desiring general access to the Internet from the venue. (Col. 4, line 17)

> Client computers 1, 2, 3, 4... can be connected to gateway 11… in any manner known in the art (e.g., by LAN, wireless network, direct connection or other manner known in the art)." (Col. 4, lines 31 -39)

Turley explicitly describes wireless networking. Clients connect to a network gateway using wireless technology, and the gateway manages access between multiple sub-networks, such as the local LAN and the public Internet. Because both sub-networks are accessible via the same gateway and via wireless means, this satisfies the requirement of Claim 12 that "the first sub-network and second sub-network are within wireless communication range of said single network interface card or module."

In addition, Ji states:

> ...the same IEEE 802.11 interface may run in ad hoc mode in some time slots to act as the backbone interface and in AP mode in other time slots to act as the local access service interface. Moreover, a SNOWNET node may

49

dynamically change one of its AP interfaces to a backbone interface or vice versa. [0042]

Ji states that a single IEEE 802.11 network interface can dynamically time-share between operating in *AP mode* and *Ad Hoc mode*. These two modes serve different network purposes—AP mode for local client access, and Ad Hoc mode for peer-to-peer backbone links. This discloses a single interface communicating with two distinct networks.

Ji further states:

> Communications in a SNOWNET 300 are organized into two levels: backbone communication and local access communication. SNOWNET nodes 302 relay communication between these two levels. [0043]

This confirms that SNOWNET is structured into two levels (or sub-networks): the backbone network and the local access network. The SNOWNET node sits between these two sub-networks and facilitates communication between them.

Ji further states:

> For example, the SNOWNET node 302 of the present invention allows algorithms to be built so that the same IEEE 802.11 interface may run in ad hoc mode in some time slots to act as the backbone interface and in AP mode in other time slots to act as the local access service interface. [0042]

This reiterates that the same physical network interface can operate in two different wireless modes, each corresponding to a different network. Since the interface is able to communicate with both, it must be within wireless range of both networks. The SNOWNET node is placed so that its wireless interface can reach both types of nodes/clients.

Ji further states:

> ...A physical interface may be multiplexed or time-shared to create multiple virtual interfaces that can be used for different purposes...[0042]

50

The passage confirms that although there is only one physical interface, it acts as if it were multiple virtual interfaces—each serving a distinct sub-network (i.e., a local access network vs. a backbone peer). This makes it evident that both sub-networks are within range of the same card, which connects to each through time-multiplexing.

8. Claim 13

Independent claim 13 is substantially similar to claim 13 above, except claim 13 recites "A computing apparatus for exchanging network data traffic" using many of the same limitations of claim 1. Claim 13 also differs from claim 1 in that claim 13 recites "a driver for the network interface card or module.," but again many of the same limitations of claim 1 appear in claim 13.

a. [13PRE]: <u>A computing apparatus for exchanging network data traffic between a first sub-network and a second sub-network, the apparatus comprising:</u>

As established with respect to claim 1 above, the requirements of a computing apparatus exchanging network traffic between sub-networks is disclosed for the same reasons as discussed in Section VII.A.4.a.

b. [13A]: <u>a network adapter, comprising a single network interface card or module, for communicating wirelessly with the first sub-network and second sub-network;</u>

Limitation [13A] is substantially similar to Limitation [1PRE]. The requirements of Limitation [13A] are thus disclosed for the same reasons as discussed in Section VII.A.4.a above.

c. [13B]: <u>a processor;</u>

A processor is inherent in a computing apparatus.

d. [13C]: <u>a data store storing a driver for the network interface card or module, the driver being configured to store a first network address and routing table for use in the first sub-network; a second network address and routing table for use in the second sub-network; to operate said single network interface card or module to receive data for one of the first and second sub-networks and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>

Limitation [13C] is substantially similar to Limitations [1A] , [1B], and [1C]. The use of drivers in a computing apparatus is inherent. The requirements of Limitation [13D] are thus disclosed for the same reasons as discussed in Sections VII. A.4.a, VII.A.4.b, and VII.A.4.c above.

e. [13D]: <u>wherein the first sub-network includes a network gateway and the network interface card or module is configured to control access from the second sub-network to the network gateway and comprises an authentication controller for receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if the user is entitled to access the gateway, or blocking the user access to the gateway if the user is not entitled to access the gateway.</u>

Limitation [13D] is substantially similar to Limitations [1D] and [1E]. The requirements of Limitation [13D] are thus disclosed for the same reasons as discussed in Sections VII.A.4.e and VII.A.4.f above.

9. Claim 18

a. [18] <u>The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user.</u>

Limitation [18] is substantially similar to Limitation [10]. The requirements of Limitation [18] are thus disclosed for the same reasons as discussed in Section VII.A.5.

10. Claim 19

Independent claim 19 is substantially similar to claim 1 above, except claim 19 recites that that the first and second sub-networks are included in a local area network (LAN), and there are multiple devices in the second sub-network that each have a respective network interface card or module. Also, compared to claim 1, claim 19 omits the word "wireless."

a. [19PRE]: A method of operating a single network adapter consisting of a single network interface card or module for communicating with a local area network that includes a first sub-network and a second sub-network of the same type, the second sub-network including a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules, and the method comprising:

Limitation [19PRE] is substantially similar to Limitation [1PRE]. The inclusion of multiple devices in a sub-network is inherent. As Section VII.A.4 explained that a network interface card in a device is known, the inclusion of multiple network interface cards or modules in multiple devices is inherent. The requirements of Limitation [19PRE] are thus disclosed for the same reasons as discussed in Section VII.A.4.a.

b. [19A]: setting up a first network address and routing table in the network interface card or module for use in the first sub-network;

Limitation [19A] is substantially similar to Limitation [1A]. The requirements of Limitation [19A] are thus disclosed for the same reasons as discussed in Section VII.A.4.b.

c. [19B]: setting up a second network address and routing table in the network interface card or module for use in the second sub-network;

Limitation [19B] is substantially similar to Limitation [1B]. The requirements of Limitation [19B] are thus disclosed for the same reasons as discussed in Section VII.A.4.c

d. [19C]: <u>using the network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>

Limitation [19C] is substantially similar to Limitation [1C]. The requirements of Limitation [19C] are thus disclosed for the same reasons as discussed in Section VII.A.4.d.

e. [19D]: <u>wherein the first sub-network includes a network gateway and the network interface card or module is configured as a hotspot controller to control access from the second sub-network to the network gateway, and</u>

Limitation [19D] is substantially similar to Limitation [1D]. The requirements of Limitation [19D] are thus disclosed for the same reasons as discussed in Section VII.A.4.e.

f. [19E]: <u>wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway.</u>

Limitation [19E] is substantially similar to Limitation [1E]. The requirements of Limitation [19E] are thus disclosed for the same reasons as discussed in Section VII.A.4.f.

B. Rejection 2 (SNQ 2): Claims 1, 10 - 13, 18 and 19 and are obvious over Naghshineh in view of Turley or Ji

1. Naghshineh

U. S. Patent No. 7,447,795 to Naghshineh et al. ("Naghshineh") (Exhibit D) titled "Multi-purpose switching network interface controller" was filed on April 11, 2002 (as a PCT application), satisfied 371(c) 1, 2, and 4 on April 19, 2004, published (as a PCT application) on October 24, 2002 and issued on November 4, 2008. Naghshineh qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(2). Naghshineh is analogous art to the '309 patent, in addition to being in the same field of endeavor.

Naghshineh describes a single reconfigurable network interface controller circuit capable of operating in multiple networking modes, including as a NIC, switch, hybrid device, system controller, or network processor. Naghshineh not only discloses Layer 2 (MAC/Ethernet) switching, but also relates to Layer 3 (network-layer IP) functionality. This is clear from three examples in the specification:

Example 1 (L2/L3 Ethernet Switch):

Naghshineh:
> …is configurable to implement applications such as:
> Multi-Channel Ethernet NIC Controller
> **L2/L3 Ethernet Switch**
> System Controller
> SOHO Router
> Network Processor
> (Col. 1, lines 52 – 60, emphasis added)

This example confirms that Naghshineh can operate at Layer 3, which means it can examine IP network-layer addresses, consult a routing table, and forward based on those IP addresses (rather than only on MAC addresses). L3 switching is IP routing.

Example 2  (SOHO Router):

Naghshineh:
> …is configurable to implement applications such as:
> Multi-Channel Ethernet NIC Controller
> L2/L3 Ethernet Switch
> System Controller
> **SOHO Router**
> Network Processor
> (Col. 1, lines 52 – 60, emphasis added)

A SOHO Router is, by definition, a device that performs IP routing between separate networks, often with NAT and firewall capabilities. This requires parsing IP headers, using IP addresses to select the correct next-hop or output interface, and performing network-layer forwarding — the same basic IP-level function as an IP router.

Example 3 (TCP/IP/HTTP/UDP Checksums):

Naghshineh discloses:
> Narrow Checksum (NC 126) – This module calculates the **TCP/IP/HTTP/UDP** checksums and provides the result to the packet buffer 112 upon completion of a frame arriving from the MAC 110.
> (Col. 2, lines 41 – 44, emphasis added)
> Wide Checksum (WC) – This module calculates the **TCP/IP/HTTP/UDP**

55

> checksums and provides the result to the packet buffer PB 112 upon the
> completion of a frame as it is arriving from the PCI bus 101 via the PX 102.
> (Col. 2, lines 45 – 49, emphasis added)

The inclusion of checksum calculation for TCP/IP and UDP demonstrates that the controller parses and processes Internet Protocol packets, not just raw Ethernet frames. Checksum computation requires examining the IP header and payload, which is inherently Layer 3 and above functionality. Taken together, these disclosures establish that Naghshineh can perform full IP-level routing and processing. The forwarding engine in Naghshineh can therefore operate in a way directly comparable to an IP routing table — taking in packet header fields, performing lookups, and directing packets to the correct output port based on IP network-layer addressing.

<ins>Naghshineh therefore discloses data forwarding based on "network address" – a limitation of each of the claims of the '309 patent.</ins>

Naghshineh's controller integrates key functional blocks—such as scatter gather engines, a packet buffer, and a forwarding engine—within a unified hardware design. It is described as "a reconfigurable network interface controller circuit... scalable, and provides for redundancy in such networking operations," and is implemented as "an example configurable network interface controller circuit 100." The components are housed in a single module, which may be implemented in an ASIC or FPGA: "In some embodiments, the FIG. 1 network interface controller circuit is implemented in an application specific integrated circuit (ASIC), such as a field-programmable gate array (FPGA)."

Naghshineh supports multiple networks and communication between them. The controller is capable of concurrent participation in separate domains: "the FIG. 1 circuit is operable in at least four different modes by reconfiguring the operation of the various modules." In hybrid mode, "the FIG. 1 example circuit acts as a 4-port switch combined with a up to a 4-port NIC," and "can 'own' up to eight MAC addresses, four for its switched ports and up to four for its embedded NIC ports."

In switch mode, packets from the MAC are routed through internal processing: "the MAC 110 generates a long vector… This vector is then submitted to the forwarding engine FE 108," which "computes a routing vector 114…for the packet buffer 112 to place on the appropriate destination queue." Naghshineh includes a routing table embedded within the controller: "An optional forwarding engine is selectable to generate routing information corresponding to data received via the access circuits." This module "makes routing decisions based on a vector that it receives from the MAC 110 or the SGE 104 modules." These decisions involve lookups: "The forwarding engine 108 completes two lookups and a conditional learn operation," and the result is passed within the controller: "The results of the routing decisions are conveyed to the packet buffer PB 112 via the Route Vector bus 114." In transmission, "the routing vector from the first element of data is retrieved and submitted to forwarding engine 108 for multiplexing onto the Rvec bus 114."

2. Claim 1

    a. [1PRE]: <u>A method of operating a single network adapter, comprising a single network interface card or module, to communicate wirelessly with a first sub-network and a second sub-network, the method comprising:</u>

    To the extent that the preamble of claim 1 is limiting, Naghshineh discloses it.

    As explained in section VII.B.1. (above), Naghshineh discloses Layer 2 (MAC/Ethernet) switching as well as Layer 3 (network-layer IP) functionality.

    Naghshineh describes a configurable network interface controller circuit that can function as a NIC (Network Interface Card) or switch:

        A reconfigurable network interface controller circuit is provided for various networking operations. (Col. 1, line 21)

        In some embodiments, the FIG. 1 network interface controller circuit is implemented in an application specific integrated circuit (ASIC), such as a field-programmable gate array (FPGA). (Col. 1, lines 49 – 52)

        In NIC mode:

The NIC operation mode is now discussed… In this mode, the on-chip processor 124, the forwarding engine 108 and the associated secondary memory 122 are not used… Various NIC operation mode operations are now described. (Col. 3, lines 13 – 22)

This controller includes:

- Multiple MACs (10/100/1000)

- Scatter-Gather Engines (SGEs)

- A shared packet buffer

- Operable as a NIC, switch, or hybrid

All these modules are tightly integrated and work together as a single reconfigurable hardware unit, allowing it to operate as a single network adapter.

The FIG. 1 circuit is operable in at least four different modes by reconfiguring the operation of the various modules.

Thus, "a method of operating a single network adapter" — is met by Naghshineh.

Ji discloses that communication between two networks may be performed wirelessly. "These network interfaces 406 provide local wired or wireless access, wireless backbone access, or wired or wireless gateway access." [0045]

Turley discloses that communication between two networks may be performed wirelessly. "…the networks attached to the gateway 11 can be any networks known in the art including, but not limited to, LANs, WANs, the Internet, global commu nications networks, wireless networks and/or any other communications network known in the art." (Col. 4, lines 26 – 30)

Naghshineh describes communication across multiple logically distinct sub-networks, even within a single hardware device. This is especially clear in the hybrid and switch modes:

In the hybrid mode of operation, the FIG. 1 example circuit acts as a 4-port switch combined with up to a 4-port NIC. (Col. 5, lines 19 – 21)

58

In the hybrid mode, packets are routed or switched between ports, each representing a different sub-network.

Moreover:

> Once a packet arrives from the MAC 110... The Rvec 114 from the forwarding engine 108 indicates if the packet should be switched out of a port… or delivered to the host. (Col. 5, lines 30 – 37)

This implies directionality and routing between network segments.

The switch mode reinforces this:

> As data arrives from the MAC 110… the forwarding engine 108 computes a routing vector… to place [the packet] on the appropriate destination queue. (Col. 4, lines 50 – 58)

Communication between multiple sub-networks is therefore disclosed by Naghshineh.

b. [1a] setting up a first network address and routing table in the network interface card or module for use in the first sub-network;

Naghshineh discloses "Setting Up a First Network Address." In particular, Naghshineh discloses that the configurable circuit can "own" MAC addresses:

The FIG. 1 example circuit can 'own' up to eight MAC addresses, four for its switched ports and up to four for its embedded NIC ports. (Col. 5, lines 21 – 23)

This indicates that the network interface card/module is capable of being configured with (i.e., "set up" with) at least MAC-layer addresses, which are a form of network address.

Naghshineh discloses "Setting Up a Routing Table" in the network interface. In particular, Naghshineh discloses the presence and setup of a forwarding table (routing table) in the forwarding engine module:

> Lookup Memory Controller (LM 120) … provides a path to an external
> memory 122 (e.g., for a forwarding table and/or instruction memory).
> (Col. 2, lines 23 – 25)

> As data arrives … the MAC 110 generates a long vector … This vector is
> then submitted to the forwarding engine … the forwarding engine 108
> computes a routing vector 114… (Col. 4, lines 50 – 56)

These statements collectively show that routing decisions are made by the
forwarding engine using information stored in a forwarding table, which resides
in external memory connected via the Lookup Memory Controller.

Thus, the routing table is set up in or accessible by the network interface
controller module, specifically the forwarding engine and its associated memory.

Naghshineh discloses "in the First Sub-network".

Naghshineh refers to use in various network configurations (e.g., NIC mode,
switch mode, hybrid mode). Naghshineh references multiple MAC addresses,
VLANs, and node identities, meaning that the controller can operate across
multiple network segments or sub-networks.

For instance:

> MAC 110 generates a long vector comprised of the DA, SA, VLAN, QoS
> fields … submitted to the forwarding engine… (Col. 4, lines 50 – 53)

This implies operation in complex segmented networks (i.e., sub-networks).
Furthermore, Naghshineh's disclosure of a VLAN (Virtual Local Area Network)
in the above quotation inherently implies the existence of multiple subnetworks
because VLANs are, by design, a method of segmenting a single physical network
into distinct logical networks. Each VLAN creates a separate broadcast domain,
isolating traffic and treating devices within the VLAN as if they were on a
different physical network. This segmentation requires each VLAN to have its
own IP subnet to function correctly, since devices in different VLANs must rely
on Layer 3 routing to communicate with one another. Thus, the very concept of a

VLAN presupposes multiple subnetworks, each corresponding to a different VLAN and governed by separate addressing and routing rules.

Naghshineh discloses the setup of a routing table in the network interface controller module using the forwarding engine and associated memory.

Naghshineh also discloses the setup of MAC addresses.

c. [1b] <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u>

Naghshineh discloses a second network address setup

> The FIG. 1 example circuit can 'own' up to eight MAC addresses, four for its switched ports and up to four for its embedded NIC ports." (Col. 5, lines 21 – 23)

This sentence explicitly shows that the system can be set up with multiple distinct MAC addresses—i.e., more than one "network address"—with different addresses associated with different functional ports (e.g., NIC vs. switch). This supports the notion of setting up a second network address.

Naghshineh discloses a second routing table setup

> Lookup Memory Controller (LM 120) … provides a path to an external memory 122 (e.g., for a forwarding table and/or instruction memory). (Col. 2, lines 22 – 25)

This module makes routing decisions based on a vector that it receives from the MAC 110 or the SGE 104 modules.

> During this time, the forwarding engine 108 completes two lookups… (Col. 4, lines 60 – 62)

The routing decisions are made using lookup operations into forwarding tables. The third quote above is particularly relevant — it states that two lookups are completed per packet in some cases, suggesting the forwarding engine can access multiple entries (or even tables).

61

Furthermore, the first quote above shows that the forwarding engine, via LM 120, can access routing table data stored in memory — and can perform multiple independent lookups — supporting, the setup of a second routing table.

In addition, Naghshineh supports multiple sub-networks because he describes distinct functional ports:

> ...acts as a 4-port switch combined with a (sic) up to a 4-port NIC. (Col. 5, lines 20 – 21)

> ...can 'own' up to eight MAC addresses, four for its switched ports and up to four for its embedded NIC ports. (Col. 5, lines 21 – 22)

These quotes show that the circuit operates with two distinct groups of network-facing ports:

- One group of up to 4 ports for switch-mode operation
- Another group of up to 4 ports for NIC-mode operation

Each port group is associated with its own set of MAC addresses, indicating logical or physical separation between the switched ports and NIC ports.

Because switching and NIC functions typically serve different network domains, this architecture strongly implies the existence of at least two distinct sub-networks — one for the switch-facing side and another for the NIC-facing side.

Furthermore, the VLAN Fields Indicate Segmentation of Network Traffic

> ...the MAC 110 generates a long vector comprised of the DA, SA, VLAN, QoS fields... (Col. 4, lines 51 – 52)

The use of VLAN (Virtual LAN) fields directly implies the division of a physical network into multiple logical sub-networks. VLANs are standard mechanisms for segmenting network traffic so that devices belong to separate broadcast domains—i.e., separate sub-networks on a single NIC port.

Thus, even within a single MAC interface, traffic is separated into different sub-networks based on VLAN tagging.

Naghshineh also discloses routing Based on Metadata Supports Differentiated Paths

62

> ...routing decisions based on a vector that it receives from the MAC 110...
> (Col. 2, lines 2 – 3)

Because routing decisions are based on metadata (which includes VLAN, destination/source address, QoS), and VLANs are used to identify distinct network segments, this confirms that traffic is processed according to sub-network membership.

Naghshineh also discloses multiple virtual channels with dedicated addressing

> ...each node is effectively a quad-function PCI device and hence has 4 memory base addresses, thus allowing 4 virtual full-duplex links... (Col. 4, lines 26 – 27)

This shows that the system supports multiple logical data paths, each potentially associated with different nodes, endpoints, or networks — further reinforcing the idea of multiple sub-network communication contexts.

Naghshineh supports the concept of more than one sub-network through:

1. Distinct sets of ports and MAC addresses for switch and NIC functions

2. Use of VLANs to separate traffic into logical domains

3. Routing decisions based on metadata including VLANs

4. Support for multiple virtual PCI links with independent addressing

These features together demonstrate that Naghshineh relates to at least two sub-networks, thereby supporting the concept of a "second sub-network."

d. [1c] using said single network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,

Naghshineh discloses a Single Network Interface Card or Module:

> ...the FIG. 1 example circuit acts as a 4-port switch combined with a up to a 4-port NIC. (Col. 5, line 21)

This makes clear that the hybrid mode uses a single hardware module — the FIG. 1 circuit — to operate both as a switch and a NIC. Thus, only one physical device is used to connect two different network functions (and therefore two network segments).

Naghshineh discloses receiving data for one sub-network and re-transmitting to the other

> Once a packet arrives from the MAC 110 ('receive event'), the received packet is submitted to the forwarding engine 108. (Col. 5, line 30)

> The Rvec 114 from the forwarding engine 108 indicates if the packet should be switched out of a port (via one of the N-Buses) or delivered to the host (via a W-Bus)." (Col. 5, lines 33 – 34)

> For transmit, the data to be transmitted is normally gathered from the host memory into the packet buffer 112. However, the SGE 104 also submits the packet to the forwarding engine 108... (Col. 5, lines 38 – 41)

These sentences together show that:

• Data can arrive from the network side (MAC → N-Bus),

• Be routed internally using the forwarding engine, and

• Be re-transmitted to either the host (via W-Bus/NIC) or another network-facing port (via N-Bus).

This confirms the data path across functional boundaries — i.e., between two sub-networks.

Naghshineh discloses using network addresses and routing tables

> [T]he MAC 110 generates a long vector comprised of the DA, SA, VLAN, QoS fields of the incoming packet. This vector is then submitted to the forwarding engine FE 108. (Col. 4, lines 50 – 53)

> [T]he forwarding engine 108 computes a routing vector 114 which is provided to the packet buffer 112. (Col. 4, lines 55 – 57)

The hybrid mode of operation is handled in the forwarding engine 108. (Col. 5, lines 23 – 25)

These confirm that packet routing decisions — including which direction the packet should be sent — are made based on:

- Network address information (DA/SA = Destination/Source Address, VLAN),

- Using a forwarding engine that uses this info to compute a routing vector (i.e., routing table lookup).

Naghshineh discloses the above claimed features. Specifically:

- It uses a single network interface module in hybrid mode

- The module is capable of receiving data from one sub-network and re-transmitting it to another, using switch and NIC paths

- Forwarding engine decisions are based on network addresses and routing vectors derived from routing tables.

> e. [1d] wherein the first sub-network includes a network gateway and the network adapter is configured to control access from the second sub-network to the network gateway, and

Ji discloses a single network adapter

> [T]he same IEEE 802.11 interface may run in ad hoc mode in some time slots to act as the backbone interface and in AP mode in other time slots to act as the local access service interface. [0042]

This explicitly describes a single interface (i.e., adapter) operating in multiple modes (backbone and access point), which aligns with the idea of using one network adapter to perform two types of communications. This element is disclosed.

Ji discloses wireless communication with two sub-networks:

> [T]he same IEEE 802.11 interface may run in ad hoc mode... and in AP mode... [0042]

> [E]quipped with at least one wireless network interface... [0036]

> [P]rovides client coverage... [0037]

These sentences support the claim that a single wireless interface can serve two logically distinct roles—peer-to-peer (backbone) and client access (local). These can reasonably be considered two "sub-networks."

Ji discloses that the first sub-network Includes a network gateway

> These nodes, called SNOWNET gateways act as gateways for the SNOWNET 300 to reach the Internet or other external networks. [0041]

This is a direct statement that a SNOWNET node acts as a gateway to broader networks. Therefore, a first sub-network with a gateway exists in Ji.

Ji discloses controlling access from the second sub-network to the gateway

> [M]utual authentication between the mobile clients and the network [0061]

> SNOWNET node 302 serves as an authenticator [0059]

> … client… accesses the SNOWNET through the access point interface [0059]

SNOWNET nodes acting as authenticators control whether clients (in a different sub-network) can join the network that includes a gateway. So control of access is performed by the node.

Ji therefore discloses the above features.

> f. [1e] <u>wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway.</u>

Ji discloses receiving a request via the second sub-network

> Client 310 sends an EAP start message and the SNOWNET node 302 returns an EAP message requesting the user's identity. [0062]

This shows a request from a user (via EAP start) for access to the network (that includes the gateway). The access request is from one sub-network to another sub-network.

Ji discloses verifying user's access rights

66

> The authentication server 303 verifies the client certificate and if the certificate is valid, the authentication server 303 generates a session key for the client. [0062]

This sentence explicitly refers to verification of the client's credentials.

Ji discloses allowing access only if the user is entitled

> If the client 310 accepts the network certificate, the client 310 decrypts the local shared WEP key... and begins to access the network 300. [0062]

The condition "If the client... accepts the network certificate" and the required valid credentials before key issuance shows access is granted only when conditions are met. This conditional gating satisfies the "if and only if" requirement of claim 1.

Ji therefore discloses all of the above features of claim 1.

g. Motivations to Combine Naghshineh with Turley or Ji

Petitioner will first provide motivations to combine Naghshineh and Ji. Petitioner will then provide motivations to combine Naghshineh and Turley.

A person of ordinary skill in the art would be motivated to combine Naghshineh and Ji for the following reasons:

KSR Rationale 1: "Obvious to try" – Reusing Hardware for Multi-hop, Multi-subnet Communication

A person of ordinary skill in the art (POSITA) would have been motivated to combine the teachings of Naghshineh and Ji based on the rationale that the combination was obvious to try among a finite number of identified, predictable solutions. Ji teaches that a wireless node may operate both as an access point and as part of a multi-hop routing backbone, using "one or more" wireless interfaces. This constraint— potentially relying on only a single interface—naturally suggests a need for reconfigurable functionality at the network interface level to support software-defined role switching between access and backbone duties.

Naghshineh's architecture offers a solution that fits squarely within this design space: its network interface card (NIC) includes a network processor mode capable of per-

packet firmware-controlled routing, explicitly supporting multiple functional modes (e.g., router, switch, controller). Given the clear need in Ji for a flexible, programmable NIC, a POSITA would recognize Naghshineh's solution as one of a finite set of predictable options and would be motivated to try it as a means of implementing SNOWNET's multi-hop, multi-role functionality using a single network interface.

KSR Rationale 2: "Combining prior art elements according to known methods yields predictable results" – Sharing the NIC Across Address and Routing Domains

A POSITA would also be motivated to combine Naghshineh and Ji based on the rationale that each reference contributes known components that operate in a predictable manner when combined. Ji discloses a dual-role NIC that time-shares between ad hoc and access point modes, effectively allowing a single NIC to serve both backbone and local subnet contexts. This anticipates the requirement to maintain distinct address and routing table instances within one interface, as called for in Claim 1.

Naghshineh complements this with support for multiple MAC addresses and reconfigurable routing roles within the same NIC hardware. Its architecture permits isolation and multiplexing of logical interfaces on a single physical NIC. A POSITA would readily understand that combining Ji's time-shared, dual-mode operation with Naghshineh's programmable NIC would predictably enable a single NIC to act as multiple logical entities, each maintaining separate address and routing states. This combination is not inventive but rather a predictable application of known techniques from both references to achieve the desired result.

A person would be motivated to combine Naghshineh and Turley for the following reasons:

With regard to a first motivation to combine Naghshineh and Turley, a person of ordinary skill in the art would be motivated to combine the references to yield predictable results

Naghshineh discloses:

In the hybrid mode of operation, the FIG. 1 example circuit acts as a 4-port switch combined with up to a 4-port NIC... the forwarding engine 108 has only enough bandwidth for a single port NIC.

Once a packet arrives from the MAC 110 ('receive event'), the received packet is submitted to the forwarding engine 108... The Rvec 114... indicates if the packet should be switched out of a port... or delivered to the host... (Naghshineh, Hybrid Mode)

Turley discloses:

Embodiments of the current invention present methods for confining a network client's network access to a specific region of the network. (Col. 1, line 58)

A network access gateway can support any number of these walled gardens and can dynamically move clients in and out... based on any status information it maintains, discovers, or is notified about from an external source. (Col. 2, line 15)

Naghshineh discloses a highly flexible and configurable network interface controller that includes a forwarding engine capable of directing traffic between local ports and external systems. Turley provides a dynamic, rule-based access control framework where "walled gardens" can be assigned based on client identity or behavior.

A person of ordinary skill in the art would be motivated to combine Turley's traffic classification and restriction model with Naghshineh's hybrid-configurable forwarding engine, yielding a predictable result: a network interface controller capable not only of directing traffic based on routing vectors, but also of enforcing per-client policy rules. This would improve security and manageability in embedded NIC-switch hybrid systems, such as those disclosed in Naghshineh.

With regard to a second motivation to combine Turley and Naghshineh, a person of ordinary skill in the art would be motivated to combine the references based on design need or market pressure to solve a problem and pursue known options")

69

Naghshineh discloses:

> The processor 125 can access this data via the C-Bus path...(col. 5, line 55)
> the packet is modified... (col. 5, line 67) the checksum is computed...(col. 6,
> line 22) and the packet is forwarded..."(col. 6, line 38)

In the network processor mode... firmware effectively 'visits' every packet at the
wire speed while relieving some of the overhead of packet processing. (col. 5, line
59)

Turley discloses:

> The gateway 11 notices the abusive traffic and 'quarantines' client 1. (Col. 5,
> line 58)

> By assigning the client to a walled garden reserved for infected users, traffic
> from this client to destinations outside the walled garden becomes restricted.
> (Col. 5, line 63)

> The gateway's web server renders a web page informing the client of its
> perceived infection and offering links to self-help documents...(Col. 6, line 2)

Turley addresses a real-world problem—clients infected with malware—by
implementing behavior-based dynamic access control and redirection to support self-
remediation. Naghshineh discloses a processor-equipped NIC capable of reading and
rewriting packets in firmware at line speed (network processor mode).

Given the need to mitigate infected or misbehaving clients without removing them
from the network, a POSITA would recognize that integrating Turley's per-client
quarantine model into Naghshineh's firmware-capable NIC design offers a
compelling solution. With Turley's logic ported to run on Naghshineh's processor
(125), which already "visits every packet at wire speed," one could create a high-
performance interface device that not only processes traffic but enforces behavioral
access restrictions in real-time—an outcome clearly foreseeable and beneficial.

A third motivation to combine Turley and Naghshineh would be for a person of ordinary skill in the art to apply a known technique to a known device ready for improvement.

Naghshineh discloses:

> This module [forwarding engine] makes routing decisions based on a vector that it receives... The results of the routing decisions are conveyed to the packet buffer... (Col. 2, lines 3 – 5)

> The forwarding engine 108 computes a routing vector... and submits the routing vector to the packet buffer 112.(Col. 5, lines 6 – 8)

Turley discloses:

> Embodiments of the present invention may make use of network firewall rule technology, configured to recognize clients by identity or membership in a group.(col. 2, line 10)

> Once classified, traffic from a client can then be subjected to a particular list of access rules, or 'walled garden'... (col. 2, line 11)

Turley discloses the concept of group-based classification and associated access control lists to restrict or permit client traffic. Naghshineh's architecture, with its forwarding engine that determines routing based on structured vectors (e.g., DA, SA, VLAN, QoS), is ideally positioned to integrate such policy logic.

A POSITA would recognize that Naghshineh's forwarding engine could be enhanced by incorporating Turley's identity- or group-based filtering logic, either as added fields in the routing vector or as firmware- or memory-based rule tables (see Naghshineh's external memory 122, used for routing). This would provide predictable benefits: better access control granularity, policy enforcement near the network edge, and integration of security into the NIC/switch hardware—desirable improvements in enterprise or ISP environments.

71

Another motivation to combine Turley and Naghshineh would be a person of ordinary skill in the art combining the references based on known options within the grasp of a skilled artisan

Naghshineh discloses:

> The FIG. 1 circuit is operable in at least four different modes by reconfiguring the operation of the various modules. (Col. 3, lines 6 – 8)

> In the hybrid mode... the forwarding engine 108 indicates... if the packet should be switched... or delivered to the host... (Col. 5, lines 19 – 36)

Turley discloses:

> An example of this is a public wireless network at a venue that wishes to provide free information about the venue via its own website... yet requires payment for clients desiring general access...(Col 2, line 5)

> Gateway 11 can assign clients... automatically based on facts known or learned... or... in response to external configuration. (Col 4, line 42)

Turley discloses a model suitable for public venues like airports or cafes, where limited access (e.g., to local venue content) is free, and broader access requires authorization or payment. Naghshineh's circuit is designed to support multiple configuration modes, including hybrid and NIC modes, and can selectively forward packets to/from local host processors or external systems.

A POSITA would be motivated to combine Turley's selective "venue access" model with Naghshineh's forwarding architecture to implement such scenarios directly at the NIC/switch hardware level. For example, the forwarding engine in Naghshineh could use configuration data (from memory 122 or processor 125) to determine whether a packet from a client is allowed to reach certain destinations or must be redirected— mirroring Turley's walled garden rules. This solution leverages both systems to create a flexible, integrated enforcement point at the network edge.

3. Claim 10

a. [10]: <u>The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user</u>.

The features of claim 10 are all disclosed by Turley or Ji. That analysis appears above in section VII.A.5 (in which Turley and Ji are discussed relative to claim 1 and SNQ 1). That analysis is incorporated by reference herein. Therefore, Turley or Ji disclose all the features that are included in claim 10.

4. Claim 11

a. [11] <u>The method as claimed in claim 1, wherein the second sub-network includes a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules.</u>

The combination of Naghshineh in view of Turley or Ji teach all the features of claim 1, as established above in section VII.B.2. Furthermore, claim 11 recites that the second sub-network includes multiple devices, each with its own network interface card or module, and that the network interface card or module is configured to communicate directly with the plurality of other network interface cards or modules.

Naghshineh explicitly discloses such a system. It teaches a configuration where multiple nodes, each being a "quad-function PCI device" (i.e., a device incorporating a network interface module), are connected through virtual channels over a shared backplane:

> Each virtual channel includes a scatter gather engine SGE 104 performing DMA writes... Each node is effectively a quad-function PCI device... (Col. 4, lines 18 – 19)

These nodes communicate with each other over virtual links formed by the address pairing between the source and destination node's respective SGEs and PCI base address registers:

Each pairing... configures a virtual channel. (Col. 4, line 26)

Moreover, the forwarding engine routes packets to other nodes:

The SGE module 104... pushes the data out to the node... (Col. 4, lines 64 – 66))

Thus, each device (node) includes a respective network interface module (SGE 104), and these modules are configured to directly communicate with one another over the virtual backplane—i.e., through direct DMA transfers between their respective address spaces. This satisfies the requirement that the "network interface card or module [be] configured to communicate directly with said plurality of network interface cards or modules."

Accordingly, Naghshineh discloses each and every feature of Claim 11.

5. Claim 12

a. [12] <u>The method as claimed in claim 1, wherein the first sub-network and second sub-network are within wireless communication range of said single network interface card or module.</u>

The combination of Naghshineh in view of Turley or Ji teach all the features of claim 1, as established above in section VII.B.2. Furthermore, Turley and Ji teach the additional features set forth in claim 12 of the '309 patent, as explained above in section VII.A.7 (in which Turley and Ji are discussed relative to claim 1 and SNQ 1). Therefore, Naghshineh in view of Turley or Ji teach all the feature of claim 12.


6. Claim 13

Independent claim 13 is substantially similar to claim 13 above, except claim 13 recites "A computing apparatus for exchanging network data traffic" using many of the same limitations of claim 1. Claim 13 also differs from claim 1 in that claim 13 recites "a driver for the network interface card or module.," but again many of the same limitations of claim 1 appear in claim 13.

a. [13PRE]: <u>A computing apparatus for exchanging network data traffic between a first sub-network and a second sub-network, the apparatus comprising:</u>

As established with respect to claim 1 above, the requirements of a computing apparatus exchanging network traffic between sub-networks is disclosed for the same reasons as discussed in Section VII.B.2.a.

b. [13A]: <u>a network adapter, comprising a single network interface card or module, for communicating wirelessly with the first sub-network and second sub-network;</u>

Limitation [13A] is substantially similar to Limitations [1PRE]. The requirements of Limitation [13A] are thus disclosed for the same reasons as discussed in Section VII.B.2.a above.

c. [13B]: <u>a processor;</u>

A processor is inherent in a computing apparatus.

d. [13C]: <u>a data store storing a driver for the network interface card or module, the driver being configured to store a first network address and routing table for use in the first sub-network; a second network address and routing table for use in the second sub-network; to operate said single network interface card or module to receive data for one of the first and second sub-networks and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>

Limitation [13C] is substantially similar to Limitations [1A] , [1B], and [1C]. The use of drivers in a computing apparatus is inherent. The requirements of Limitation [13D] are thus disclosed for the same reasons as discussed in Sections VII.B.2.b, VII.B.2.c and VII.B.2.d above.

e. [13D]: wherein the first sub-network includes a network gateway and the network interface card or module is configured to control access from the second sub-network to the network gateway and comprises an authentication controller for receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if the user is entitled to access the gateway, or blocking the user access to the gateway if the user is not entitled to access the gateway.

Limitation [13D] is substantially similar to Limitations [1D] and [1E]. The requirements of Limitation [13D] are thus disclosed for the same reasons as discussed in Sections VII.B.2.e and VII.B.2.f above.

7. Claim 18

a. [18] The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user.

Limitation [18] is substantially similar to Limitation [10]. The requirements of Limitation [18] are thus disclosed for the same reasons as discussed in Section VII.B.3.

8. Claim 19

Independent claim 19 is substantially similar to claim 1 above, except claim 19 recites that that the first and second sub-networks are included in a local area network (LAN), and there are multiple devices in the second sub-network that each have a respective network interface card or module.

a. [19PRE]: <u>A method of operating a single network adapter consisting of a single network interface card or module for communicating with a local area network that includes a first sub-network and a second sub-network of the same type, the second sub-network including a plurality of devices, said plurality of devices incorporating a respective plurality of network interface cards or modules, said network interface card or module being configured to communicate directly with said plurality of network interface cards or modules, and the method comprising:</u>

Limitation [19PRE] is substantially similar to Limitation [1PRE]. The inclusion of multiple devices in a sub-network is inherent. The inclusion of network interface cards or modules in multiple devices is inherent. The requirements of Limitation [19PRE] are thus disclosed for the same reasons as discussed in Section VII.B.2.a.

b. [19A]: <u>setting up a first network address and routing table in the network interface card or module for use in the first sub-network;</u>

Limitation [19A] is substantially similar to Limitation [1A]. The requirements of Limitation [19A] are thus disclosed for the same reasons as discussed in Section VII.B.2.b.

c. [19B]: <u>setting up a second network address and routing table in the network interface card or module for use in the second sub-network;</u>

Limitation [19B] is substantially similar to Limitation [1B]. The requirements of Limitation [19B] are thus disclosed for the same reasons as discussed in Section VII.B.2.c.

d. [19C]: <u>using the network interface card or module to receive data for one of the first and second sub-networks, and to re-transmit the data to the other of the first and second sub-network, using the network addresses and routing tables,</u>

Limitation [19C] is substantially similar to Limitation [1C]. The requirements of Limitation [19C] are thus disclosed for the same reasons as discussed in Section VII.B.2.d.

77

e. [19D]: <u>wherein the first sub-network includes a network gateway and the network interface card or module is configured as a hotspot controller to control access from the second sub-network to the network gateway, and</u>

Limitation [19D] is substantially similar to Limitation [1D]. The requirements of Limitation [19D] are thus disclosed for the same reasons as discussed in Section VII.B.2.e.

f. [19E]: <u>wherein the step of receiving data comprises receiving a request from a user via the second sub-network to access the gateway on the first sub-network, verifying the user's access rights, and allowing the user to access the gateway if and only if the user is entitled to access the gateway.</u>

Limitation [19E] is substantially similar to Limitation [1E]. The requirements of Limitation [19E] are thus disclosed for the same reasons as discussed in Section VII.B.2.f.

C. Rejection 3 (SNQ 3): Claims 3, 6 and 14 are obvious over Khaki or Naghshineh in view of Turley or Ji and further in view of Velmurugan

1. Velmurugan

The research article Velmurugan, A., et al.,"Mobile Ad-hoc Network Internetworking With Next Generation Internet," Information Technology Journal, 4: 398-404, 2005. ("Velmurugan") (Exhibit F) was published in 2005 (and bears a copyright date of 2005). Velmurugan qualifies as prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1). Velmurugan is analogous art to the '309 patent, in addition to being in the same field of endeavor.

Velmurugan examines how Mobile Ad-Hoc Networks (MANETs) can connect to the internet using Enhanced Ad-hoc On-Demand Distance Vector (EAODV) routing, with a focus on gateway discovery through broadcast messaging. Three approaches to gateway discovery are analyzed: reactive, proactive, and hybrid. Each relies on broadcasts to enable mobile nodes to identify and connect with internet gateways in the absence of fixed infrastructure.

In the reactive method, mobile nodes initiate communication with the internet by broadcasting a special type of Route Request message (RREQ_I) that includes a flag indicating the intention to reach a wired network. This broadcast is sent to a multicast address recognized by all gateways. Only gateways process these messages and reply with Route Reply messages (RREP_I), while intermediate nodes merely rebroadcast the RREQ_I to propagate it through the MANET.

The proactive approach is centered on the gateway itself periodically broadcasting Gateway Advertisement (GWADV) messages to the network. These broadcasts are designed to inform nearby mobile nodes of the gateway's presence. Each mobile node that receives a GWADV message may create or update a route entry for the gateway and rebroadcast the message, facilitating wide dissemination. The frequency of these broadcasts is controlled by a parameter called ADVERTISEMENT_INTERVAL, which must be carefully tuned to avoid unnecessary overhead. To reduce redundant broadcasts and potential collisions, the GWADV message format includes an identifier (GWADV ID), and mobile nodes randomize the timing of their rebroadcasts.

The hybrid approach blends the previous two methods. Gateways periodically broadcast GWADV messages, but only with a limited Time-To-Live (TTL) value so that they reach only a portion of the MANET. Mobile nodes within this radius use the proactive method; those beyond it fall back on the reactive RREQ_I mechanism. The TTL serves as a tunable parameter that allows adaptation to changing network conditions, such as mobility or node density. Increasing TTL makes the system behave more proactively; lowering it shifts it toward a reactive mode. This balance allows the network to optimize broadcast behavior based on the structure and activity of the MANET.

Broadcast generation in these discovery methods is carefully managed through adjustable parameters like ADVERTISEMENT_INTERVAL and TTL, enabling nodes and gateways to communicate effectively while minimizing unnecessary message propagation. The design of these mechanisms reflects a trade-off between ensuring connectivity and controlling routing overhead in dynamic mobile environments.

2. Claim 3

a. [3]: <u>The method as claimed in claim 1, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the method further comprises: generating broadcasts to inform wireless stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network.</u>

The combination of Khaki and Turley or Ji teach all the features of claim 1, as established above in section VII.A.4.  The combination of Naghshineh in view of Turley or Ji teach all the features of claim 1, as established above in section VII.B.2. Velmurugan further teaches the following features:

Claim 3 recites "The network gateway is provided by a wireless internet router." Velmurugan discloses the following:

> Thus, a gateway acts as a bridge between a MANET and the internet and all communication between the two networks must pass through any of the gateways. (page 3)

> The gateway periodically broadcasts a gateway advertisement (GWADV) message within the ad-hoc network to inform all the nodes about the availability of that gateway. (page 7)

Velmurugan describes a wireless internet gateway that connects mobile devices in a MANET to the internet. The function of the "gateway" in the source aligns with the function of the wireless internet router in Claim 3—as the access point for internet connectivity. Since MANETs are wireless by nature, and gateways connect them to the wired internet, the gateway is necessarily wireless in context.

Claim 3 recites: "The first and second sub-network belong to a wireless network." Velmurugan discloses the following:

> Mobile hosts that are near the gateway can communicate directly with the gateway via single-hop connections. However, mobile hosts that are outside the transmission range of the gateway have to use multihop connections that rely on the neighboring mobile nodes to relay their packets. (page 3)

Valmurugan describes multiple wireless links within the same MANET: one direct and one multihop. These can be understood as two wireless sub-networks operating within the broader wireless network—supporting the presence of multiple sub-networks in a wireless domain as required in Claim 3.

Claim 3 recites: "Generating broadcasts to inform wireless stations that the single network adapter is an internet gateway." Velmurugan discloses the following:

> The gateway periodically broadcasts a gateway advertisement (GWADV) message within the ad-hoc network to inform all the nodes about the availability of that gateway. (page 7)

Velmurugan discloses a direct match. The GWADV broadcasts explicitly inform wireless stations that the gateway exists and is available—serving the same purpose as the broadcasts in Claim 3 that inform stations that the adapter is the internet gateway.

Claim 3 recites: "Sending the broadcasts to the wireless internet router for forwarding to the wireless network." Velmurugan discloses the following:

> The mobile nodes that receive the advertisement, create a (or update the) route entry for the gateway and then rebroadcast the message. To assure that all mobile nodes within the MANET receive the advertisement, the number of retransmissions is determined by NET_DIAMETER… (page 7)

This indicates that GWADV messages are propagated through the wireless network (that inherently include routers) via rebroadcasting by intermediate wireless nodes.

Together, these disclosures demonstrate that Velmurugan (combined with Khaki and Turley) teaches every element of Claim 3. Velmurugan includes all the features of claim 3 because it describes a wireless gateway that provides internet access, a wireless network with multiple connectivity paths, broadcasts that inform stations of the gateway's role, and propagation of those broadcasts through the wireless network

Petitioner will first provide motivation for POSITA to combine Turley and Velmurugan to obtain the features of claim 3. Petitioner will then provide motivation for POSITA to combine Ji and Velmurugan to obtain the features of claim 3.

A person of ordinary skill in the art would be motivated to combine Turley and Velmurugan to obtain the features of claim 3 for the following reasons:

Motiviation to combine rationale 1: Combining prior art elements according to known methods to yield predictable results:
Turley teaches a gateway that confines and controls client access. Velmurugan teaches a standard method for wirelessly informing all nodes of the presence of a gateway using GWADV broadcasts. Combining Turley's control method with Velmurugan's wireless gateway advertisement yields the predictable result of enabling Turley's client classification and confinement to function effectively in a wireless multi-hop network environment.

Motivation to combine rationale 2: Use of known techniques to improve similar devices:
Velmurugan's GWADV broadcast is a known method in MANET systems for gateway awareness. Applying it to Turley's gateway allows wireless nodes, including those multiple hops away, to receive gateway information needed for Turley's walled garden rules to be enforced across the wireless network.

Motivation to combine rationale 3: Common-sense design choice:
Without a broadcast discovery mechanism like Velmurugan's, Turley's gateway control in a MANET would be limited to directly-connected clients. A POSITA would understand that adding gateway discovery is a routine and common-sense solution to extend Turley's system to the broader wireless network.

A person of ordinary skill in the art would be motivated to combine Ji and Velmurugan to obtain the features of claim 3 for the following reasons:

Motivation to combine rationale 1: Combining prior art elements according to known methods to yield predictable results:

Ji teaches a secure, encrypted wireless backbone with roaming clients and gateway-based access control. Velmurugan teaches a method to advertise gateway availability to all wireless nodes in a MANET. Combining them predictably yields a secure backbone in which all clients, regardless of hop distance, are aware of available gateways — improving roaming and connection stability.

Motivation to combine rationale 2: Use of known techniques to improve similar devices:

Velmurugan's GWADV broadcast method is a known way to make all nodes aware of gateway presence in a wireless mesh. Applying this to Ji's SNOWNET is an established improvement to enhance gateway awareness and reduce connection drops during roaming.

Motivation to combine rationale 3:Obvious to try with a reasonable expectation of success:

Ji's SNOWNET already requires that roaming clients discover and attach to gateways. Incorporating Velmurugan's gateway discovery is a straightforward integration of a known, successful method into a system that already needs gateway awareness. The predictable benefit is faster and more reliable roaming.

3. Claim 6

a. [6] <u>The method as claimed in claim 3, further comprising receiving a user instruction to adjust the rate of generating and sending said broadcasts on the wireless network setting the network adapter as the gateway, and adjusting said rate according to the user instruction</u>.

The combination of Khaki or Naghshineh in view of Turley or Ji, and further in view of Velmurugan teach all the features of claim 3, as established above in section VII.C.2.  Velmurugan further teaches the following:

Claim 6 of the '309 patent recites: "receiving a user instruction to adjust the rate of generating and sending said broadcasts on the wireless network setting the network adapter as the gateway." Velmurugan discloses the following:

> The period determined by ADVERTISEMENT_INTERVAL, period must be chosen with care so that the network is not flooded unnecessarily. (page 7)

This statement shows that the system includes a configurable parameter—ADVERTISEMENT_INTERVAL—that controls how often gateway advertisement broadcasts are generated and sent. Because the "period" refers to the time between each broadcast, adjusting this value directly changes the rate of broadcast transmission. The instruction to choose the period "with care" implies that a user or administrator can modify this setting, meaning the system supports receiving user instructions to adjust the broadcast rate.

Claim 6 also recites: "and adjusting said rate according to the user instruction." Velmurugan discloses the following:

> The period determined by ADVERTISEMENT_INTERVAL, period must be chosen with care so that the network is not flooded unnecessarily. (page 7)

This same quote confirms that once a user selects or changes the ADVERTISEMENT_INTERVAL, the system adjusts the rate of broadcasts accordingly. Because setting the interval determines the timing of transmissions, adjusting it based on user input satisfies the claim requirement that the rate be changed according to a user instruction.

The feature of user-controlled rate adjustment is thus fully disclosed in the source. The ADVERTISEMENT_INTERVAL parameter governs broadcast timing, is subject to adjustment, and its purpose is to manage network load—exactly what Claim 6 describes. Therefore, Velmurugan discloses all the elements of Claim 6.

4. Claim 14

a. [14]: <u>The apparatus as claimed in claim 13, wherein the network gateway is provided by a wireless internet router, the first and second sub-network belong to a wireless network, and the apparatus further comprises a transmitter for generating broadcasts to inform stations that the single network adapter is an internet gateway, and sending the broadcasts to the wireless internet router for forwarding to the wireless network.</u>

Limitation [14] is substantially similar to Limitation [3]. The requirements of Limitation [14] are thus disclosed for the same reasons as discussed in Section VII.C.2.

D. Rejection 4 (SNQ 4): Claim 4, 5, 15 and 16 are unpatentable over Khaki or Naghshineh in view of Turley or Ji and further in view of Velmurugan and Bashir

1. Bashir

The "Bashir" document has the following citation: Bashir, M. S., <u>ARP Cache Poisoning with Ettercap</u>, GIAC GSEC Security Essentials Certification, Practical Assignment, Version 1.4b, Option 1, August 4th 2003 (Global Information Assurance Certification) ("Bashir") (Exhibit G). Bashir is a public document that was referenced, for example, in Altunbasak, H., et al., Securing Layer 2 in local area networks, (ICN '05: Proceedings of the 4th international conference on Networking – Volume Part II), published on April 17, 2005 (Exhibit I, see last page of exhibit).

Bashir provides a detailed explanation of ARP-based man-in-the-middle attacks conducted using the open-source network tool Ettercap. The paper is intended to educate system administrators about the risks of ARP cache poisoning on switched Ethernet networks and outlines how attackers can use Ettercap to silently intercept traffic, extract credentials, and disrupt communications.

The document begins by contrasting switched and hubbed local area networks (LANs), highlighting that although switched networks are designed to limit packet visibility to intended recipients, they remain vulnerable to broadcast-based protocols like ARP. Ettercap exploits this vulnerability by injecting forged ARP replies into the network,

effectively redirecting traffic through the attacker's machine without the knowledge of the communicating endpoints. Once inserted as an intermediary, the attacker can observe, manipulate, or block traffic.

The paper describes how Ettercap generates ARP broadcasts on startup to discover network hosts, builds a MAC-to-IP mapping table, and then injects false ARP replies to poison the caches of selected victims. This behavior enables the attacker to deceive devices into routing traffic through the attacker's machine. The attack is persistent: Ettercap continually sends spoofed ARP replies to maintain control over the traffic flow, adjusting the frequency of these injections based on the timeout behaviors of target operating systems.

Ettercap also allows for runtime modification of poisoning parameters. It supports user-controlled options for adjusting the delay between ARP injections, controlling the rate of poisoning traffic to avoid detection, and customizing host targeting. These capabilities are further enhanced by plug-ins and command-line flags that enable non-interactive operation, selective poisoning, traffic logging, and the ability to invoke Ettercap in daemon mode.

The behavior described in the Bashir paper includes functionality where broadcasts are intentionally generated and transmitted to update and override existing ARP mappings, setting the attacker's network interface as the apparent gateway. This corresponds to the generation and sending of broadcasts on a network with the purpose of misleading stations into believing a different machine is the gateway — a central feature of the attack model described.

Additionally, Ettercap's architecture includes automatic monitoring of packet flow on the network. It continuously observes ARP cache entries and detects conditions in which the attacker's false gateway designation might be lost. To compensate, Ettercap automatically adjusts the frequency of forged ARP broadcasts to maintain control, adapting the broadcast interval based on ongoing traffic dynamics. The attacker can also monitor traffic manually and use available plug-ins to reactively modify broadcast behavior depending on the success or failure of cache poisoning attempts.

Bashir's description of Ettercap also highlights user-configurable control over ARP poisoning behavior. The tool supports command-line options to modify the interval between ARP injections. This allows an operator to change how often broadcasts are sent, based on strategic considerations such as intrusion detection avoidance or targeting effectiveness. These options effectively enable a user to influence the rate at which the network is informed that the attacker's machine is the network gateway.

Taken together, the capabilities described in the Bashir paper outline a system that (1) generates broadcasts that misrepresent the attacker's machine as a gateway, (2) monitors network traffic and adjusts the rate of such broadcasts dynamically in response to observed conditions, and (3) permits a user to control or fine-tune the rate of such broadcasts. These functionalities align with access manipulation behaviors involving broadcast-based redirection and gateway impersonation in wireless or Ethernet LAN environments.

2. Claim 4

a. [4]: The method as claimed in claim 3, further comprising generating and sending said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway.

The combination of Khaki or Naghshineh in view of Turley or Ji, and further in view of Velmurugan teach all the features of claim 3, as established above in section VII.C.2. Bashir further teaches that his method includes generating and sending broadcasts to set a network adapter as a gateway. This is accomplished using Ettercap's ARP spoofing capability, which sends forged ARP replies to other hosts on the network:

Ettercap can perform the classic 'man in the middle attack' by sending fake ARP replies (p. 8, under "What is Ettercap")

These forged replies deceive target hosts into believing that the attacker's MAC address corresponds to a legitimate gateway IP address, thereby causing the hosts to route traffic through the attacker. This technique functionally results in:

- Broadcasting ARP messages on the wireless network, and

- Setting the attacker's network adapter as the network gateway.

Additionally, at startup, Ettercap sends a flood of ARP requests to identify available hosts:

> Ettercap will first determine the IP address of the machine it is launched from, then launch a broadcast of ARP requests to each host in its default subnet (this creates a MAC to IP address table for its reference)… (p. 9, under "Running Ettercap")

Together, these functions correspond to generating and sending broadcasts on a wireless network that cause wireless stations to associate the attacker's device (i.e., the single network adapter) with the gateway function.

A person of ordinary skill in the art (POSITA) would have been motivated to combine Bashir with Velmurugan for the following reasons:

Motivation to combine rationale 1: Combining prior art elements according to known methods to yield predictable results:
Bashir teaches that ARP poisoning enables man-in-the-middle interception and that it can occur undetected on a network. Velmurugan teaches a MANET gateway architecture where all communication between the ad-hoc network and the Internet passes through the gateway.

It would be a predictable use of known methods to integrate Bashir's ARP poisoning detection/mitigation techniques into Velmurugan's MANET gateway, because the gateway is the natural choke point for protecting multi-hop wireless nodes from ARP spoofing threats.

Motivation to combine rationale 2: Applying a known technique to a known device ready for improvement to yield predictable results:

Velmurugan's MANET gateways lack any explicit ARP spoofing detection. Bashir provides a known, effective technique (detecting malicious ARP traffic patterns, using tools such as Ettercap for testing and detection) that can be applied to protect the gateway.

Applying Bashir's ARP threat awareness and detection methods to Velmurugan's gateway would yield the predictable result of securing the MANET's gateway communications against ARP-based man-in-the-middle attacks.

Motivation to combine rationale 3: Obvious to try with a reasonable expectation of success:

Bashir documents that ARP poisoning works on switched Ethernet and can go undetected. Velmurugan's MANET environment inherently uses Ethernet-like addressing at the link layer.

Since ARP poisoning is known to be effective in similar environments, a POSITA would have had a reasonable expectation that integrating Bashir's countermeasures into Velmurugan's gateway would mitigate this known attack vector.

Motivation to combine rationale 4: Using one known technique to improve another similar system:

Bashir's techniques are designed to detect and prevent unauthorized interception at the network access level. Velmurugan's gateway is exactly such a network access point in a wireless context.

Using Bashir's ARP poisoning defense in Velmurugan's MANET gateway improves the gateway's resilience against known threats in a predictable and straightforward manner.

3. Claim 5

a. [5]: <u>The method as claimed in claim 4, further comprising automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway, and automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter as the network gateway, according to the number of such packets that are detected.</u>

The combination of Khaki or Naghshineh in view of Turley or Ji, and further in view of Velmurugan and Bashir teach all the features of claim 4, as established above in section VII.D.2. Bashir further teaches the following:

Claim 5 of the '309 patent recites: "automatically detecting packets on at least one of the first and second sub-networks that are not using the hotspot controller as the network gateway"

Bashir discloses:

> Ettercap can perform the classic 'man in the middle attack' by sending fake ARP replies… Ettercap is capable of capturing/decoding ssh1, HTTP, FTP, POP, SMTP and SSL passwords. (page 8)

> Ettercap itself can be used as an ARP cache poisoning detection tool by using the plug-in called arpcop which detects ARP Cache poisoning on the network. (page 14)

> Ettercap can be run in a non-interactive simple mode… used for passive or scripted sniffing. (pages 9 - 10)

> -t This option with the argument tcp or udp will only sniff the given protocol. (page 10)

These excerpts show that Ettercap — and specifically the arpcop plugin — is capable of detecting ARP cache poisoning, which necessarily involves identifying packets that are not following the correct routing path. When a host is not using the legitimate gateway (i.e., the "hotspot controller") due to poisoning, arpcop detects that anomaly. The plugin's detection of such malicious redirection supports the claim that the

system detects packets not routed through the intended gateway. Thus, Bashir includes the feature of "automatically detecting packets… not using the hotspot controller as the network gateway."

Claim 5 recites: "automatically adjusting the frequency of said broadcasts on the wireless network which set the network adapter as the network gateway"

Bashir discloses:

> Ettercap itself can be used as an ARP cache poisoning detection tool by using the plug-in called arpcop which detects ARP Cache poisoning on the network. (page 14)

> Since Ettercap is an open source tool, the plugin can be modified to send e-mail to a designated account upon detection of suspicious activity. (page 14)

> -Z <n sec> A delay of n amount of seconds when sending an ARP storm to avoid detection by IDS and smart switches…(page 10)

> -D The delay in seconds between the ARP replies to a poisoned or victim host since different operating systems have different ARP Cache timeout values. (page 10)

The detection capability of arpcop is tightly linked to dynamic ARP behavior, and Bashir explicitly states that arpcop can be modified to respond to detection events. That means its detection can be used to trigger adjustments in broadcast behavior. Combined with the built-in options -Z and -D, which adjust ARP storm and reply frequency, Bashir discloses both the detection and the broadcast adjustment mechanisms. When these features are combined — as Bashir allows through scripting or plugin customization — the frequency of broadcasts can be automatically adjusted in response to detection conditions on the network. Therefore, Bashir includes "automatically adjusting the frequency of said broadcasts on the wireless network…" as claimed.

Claim 5 recites: "according to the number of such packets that are detected."

Bashir discloses:

Ettercap itself can be used as an ARP cache poisoning detection tool by using the plug-in called arpcop which detects ARP Cache poisoning on the network. (page 14)

Since Ettercap is an open source tool, the plugin can be modified to send e-mail to a designated account upon detection of suspicious activity. (page 14)

-Z <n sec> A delay of n amount of seconds when sending an ARP storm… (page 10)

Bashir discloses a modular, programmable plugin (arpcop) and a configuration interface (-Z, -D) capable of controlling broadcast frequency. Because arpcop is editable and Ettercap is scriptable— and because arpcop is disclosed as supported — a person of ordinary skill in the art would understand that the broadcast timing can be made responsive to the volume or frequency of detected anomalies. Thus, the mechanism described in Bashir supports "automatically adjusting… according to the number of such packets that are detected."

Bashir therefore discloses all the features of claim 5.

3. Claim 15

a. [15]: <u>The apparatus as claimed in claim 14, wherein the transmitter is configured to generate and send said broadcasts on the wireless network at a sufficient rate to override broadcasts from the wireless internet router which indicates the wireless internet router to be an internet gateway.</u>

Limitation [15] is substantially similar to Limitation [4]. The requirements of Limitation [15] are thus disclosed for the same reasons as discussed in Section VII.D.2.

4. Claim 16

a. [16]:  The apparatus as claimed in claim 15, further comprising a packet detector
for automatically detecting packets on at least one of the first and second sub-
networks that are not using the hotspot controller as the network gateway, and
automatically adjusting the frequency of said broadcasts on the wireless network
which set the network adapter to as the network gateway, according to the number of
such packets that are detected.

Limitation [16] is substantially similar to Limitation [5]. The requirements of
Limitation [16] are thus disclosed for the same reasons as discussed in Section
VII.D.3.

E. Rejection 5 (SNQ 5): Claims 10 and 18 are obvious over Khaki or Naghshineh, in view of
Turley or Ji, and further in view of Sawada.

1. Sawada

U.S. Patent Application 2002/0016858 to Sawada et al. ("Sawada") (Exhibit H), titled
"Communication apparatus for routing or discarding a packet sent from a user terminal"
was filed on June 28, 2001 and was published on February 7, 2002. Sawada qualifies as
prior art to the '309 patent at least under 35 U.S.C. § 102(a)(1). Sawada is analogous art
to the '309 patent, in addition to being in the same field of endeavor.

Sawada describes a communication control apparatus used to manage and restrict user
access to an external network—typically the Internet—until the user has been
successfully authenticated. The invention centers on the concept of intercepting outbound
communication requests made by a user terminal and evaluating whether the user has
been authenticated. If authentication has not yet occurred, the communication control
apparatus does not allow normal communication to proceed. Instead, the user is
redirected to a login page where they must submit valid credentials.

This redirection and gating mechanism means that the system treats any attempt to
initiate communication—such as sending or receiving data—as contingent upon
successful user authentication. Once the user has been authenticated, the control

apparatus removes the restriction, allowing the user terminal to send and receive data to and from the external network freely.

The core design of Sawada is built around the notion that data communication from a user terminal must be preceded by a successful authentication and authorization process. Thus, the reception of data is inherently tied to user authentication, as access to the data is not granted unless the user is verified.

2. Claim 10:

a. [10]: <u>The method as claimed in claim 1, wherein the step of receiving data comprises authorising and authenticating a user.</u>

The combination of Khaki or Naghshineh in view of Turley or Ji teach all the features of claim 1, as established above in section VII.A.4 and VII.B.2. Sawada further discloses "the step of receiving data comprises authorising and authenticating a user."

Sawada discloses this functionality directly and repeatedly in its specification. The following excerpts support this.

Sawada discloses user authentication. Sawada explicitly describes a scenario where a server authenticates a user terminal using user ID and password:

> To gain authentication by the server for authentication 1901, the user inputs user ID and password to the user terminal 1905. The user terminal 1905 sends the server for authentication 1901 a packet 2005 including the input user ID and password. [0169]

This satisfies the "authenticating" portion of the claim, as the system receives a packet containing user credentials for the purpose of verifying identity.

Sawada also discloses authorization based on authentication. After authentication, Sawada shows that a directive is issued to update the switch's internal forwarding behavior:

> On the server for authentication 1901, if the user ID and password included in the packet 2005 sent from the user terminal 1905 are those that it holds as those of the user authorized to use networking service, the server sends a

94

> directive packet to change state 2006... The directive packet to change state 2006 includes the IP address (192.168.5.1) of the user terminal 1905 and information permission. [0172]

The inclusion of the "permission" directive in the change-state packet constitutes a clear disclosure of authorization. The LAN switch will allow communication only after this authorization directive is received and processed.

The claim requires that the step of "receiving data" includes authentication and authorization. Sawada's LAN switch explicitly receives the relevant packets:

> The NIF-A 1602 of the LAN switch 1600 receives the directive packet to change state 2006 and transfers it via the PFU 1601 to the PDPCS 1608. [0172]

This directive packet — received from the authentication server — contains authorization data ("permission") and follows from authentication of the user's credentials.

Therefore, Sawada discloses a system in which the LAN switch receives data comprising authorization and authentication information, fulfilling the limitation of claim 10.

Claim 10 requires that receiving data includes user authorization and authentication. Sawada discloses this through a packet 2005 carrying user ID and password, and a subsequent directive packet 2006 containing a permission directive, both of which are received by the system and trigger state changes that control access. Thus, Sawada combined with Khaki or Naghshineh in view of Turley or Ji renders obvious the limitation of Claim 10.

A person of ordinary skill in the art would have been motivated to combine Turley or Ji with Sawada for the following reasons. Turley discloses a gateway that enforces network access restrictions based on client identity and predefined rule sets. Turley teaches walled gardens, where each client is confined to a specific set of permitted destination. Ji discloses a secure, node-based wireless network architecture that uses

IEEE802.1x authentication and RADIUS authorization. Ji also discloses that only authenticated users or nodes are permitted to access or communicate.

Sawada discloses a well-known and widely implemented technique for user authentication and authorization in network environments. A POSITA would recognize that Sawada's authentication protocol—in which identity credentials are evaluated and permission directives are issued and received—is a known method to improve network security. Incorporating that technique into the gateway-based architectures of Turley or Ji would have been an obvious and routine design choice to improve those systems' ability to enforce secure access control.

Furthermore, Turley and Ji disclose gateway or node-level access control mechanisms, including per-client classification (Turley) and credential-based authentication (Ji). Sawada adds explicit packet-level enforcement of access rights via receipt of authentication and authorization directives. Integrating these teachings would have involved merely combining known elements according to their established functions, producing the predictable result of a network interface that controls routing or access based on user identity and credentials.

In addition, Sawada's approach—using a central authentication server and directive packets—was technically well-understood and commonly deployed in enterprise networks. Its integration into a system like Ji's SNOWNET, which already supports RADIUS and IEEE 802.1x, would have been straightforward. Likewise, Turley's iptables-based rule enforcement and traffic classification are compatible with enforcing Sawada's authorization directives. A POSITA would have had a reasonable expectation of success in implementing this combination without undue experimentation.

3. Claim 18

a. [18]: <u>The apparatus as claimed in claim 13, wherein the authentication controller is programmed to authorise and authenticate a user.</u>

Limitation [18] is substantially similar to Limitation [10]. The requirements of Limitation [18] are thus disclosed for the same reasons as discussed in Section VII.E.2.

F. Rejection 6 (SNQ 6): Claims 2, 7, 8, 9 and 17 are unpatentable over Khaki or Naghshineh, in view of Turley and Ji

2. Claim 2

a. [2]: <u>The method as claimed in claim 1, wherein the second sub-network comprises a NAT routable sub-network that is subservient to the first sub-network</u>

The combination of Khaki or Naghshineh in view of Turley or Ji teach all the features of claim 1, as established above in sections VII.A.4 and VII.B.2. Ji further describes a network architecture that includes distinct sub-networks, one of which is subject to Network Address Translation (NAT) and operates in a subservient manner to another.

First, Ji describes two primary levels of communication and corresponding network segments. The "first sub-network" can be understood as the SNOWNET backbone network or the external networks (like the Internet) to which SNOWNET nodes connect. The "second sub-network" refers to the local access service areas where mobile clients connect to individual SNOWNET nodes. The patent explicitly states: "

Communications in a SNOWNET 300 are organized into two levels: backbone communication and local access communication. [0043]

It further clarifies that "SNOWNET nodes 302 relay communication between these two levels." [0043] This establishes the existence of two distinct sub-networks and the role of SNOWNET nodes in mediating traffic between them.

Second, Ji discloses that the "second sub-network" (the internal client access network) is a "NAT routable sub-network." This is achieved through the inclusion of a specific module within the SNOWNET node's software architecture. The patent states:

97

> In particular, a Network Address Translation (NAT) module 532 resides in kernel
> space to provide the translation between external Internet addresses and the
> internal SNOWNET address space. [0052]

This quote confirms that NAT is applied to the internal SNOWNET address space,
making it routable to external networks via translation.

Finally, the "second sub-network" is "subservient to the first sub-network" because its
traffic is processed and translated by the SNOWNET nodes (which connect to the
backbone/external network) before reaching external destinations. The NAT module, by
translating "internal SNOWNET address space" to "external Internet addresses,"
demonstrates that the internal client network depends on the SNOWNET node's gateway
function to access the broader network. The SNOWNET nodes, acting as gateways,
control this interaction. As mentioned,

> These nodes, called SNOWNET gateways act as gateways for the SNOWNET
> 300 to reach the Internet or other external networks. [0041]

This gateway function, combined with the NAT operation, inherently makes the local
client sub-network subservient to the backbone/external network, as all its external
communications are mediated and translated by the gateway.

The motivation for a person of ordinary skill in the art to combine Ji with Khaki is set
forth above in section VII.A.4.g. The motivation for a person of ordinary skill in the art to
combine Ji with Naghshineh is set forth above in section VII.B.2.G

### 3. Claim 7

a. [7]: The method as claimed in claim 1, wherein said verifying comprises retrieving
locally or remotely stored user subscription information or information about user
permissions to access the gateway.

The combination of Khaki or Naghshineh in view Turley or Ji teach all the features of
claim 1, as established above in sections VII.A.2 and VII. B.2.

Ji further discloses the features of claim 7 by detailing a system that performs verification of user access through the retrieval of stored user authentication and permission information.

First, Ji describes the overall security framework that governs user access to the network. It explicitly states the goal of controlling who can access the network:

> Only authorized devices (both SNOWNET nodes and mobile clients) are allowed to access and be served by the SNOWNET. [0021]

This establishes the fundamental need for a verification process to determine if a user (or their device) is "authorized."

Second, Ji identifies the specific module responsible for admitting and identifying clients, which is central to the verification process. It states:

> The client authentication module 526 implements the 802.1x policy for admitting and identifying clients and is discussed further below. [0054]

This module is the operational component that performs the "verifying" step.

Third, Ji describes how the necessary user information for this verification is stored and retrieved. It indicates that an "authentication server" is responsible for this data. Specifically, it states that a SNOWNET node

> …may optionally host an authentication server 534 such as a RADIUS server 303 that will provide all of the necessary checking of credentials, generation of keys and storage of credential information. [0056]

This directly shows that "user subscription information or information about user permissions to access the gateway" (referred to as "credentials" and "credential information") is "stored." Furthermore, the patent explains the process of retrieving this information during authentication:

> Before SNOWNET deployment, this node 303 downloads all necessary certificates into its system memory 404 so it can carry out the authentication

duties. Such certificates include those for SNOWNET nodes 302 as well as for all authorized clients. [0060]

This demonstrates that the verification process involves "retrieving locally or remotely stored" information, as the certificates (which are a form of user permission/identity information) are downloaded and used for authentication. The "checking of credentials" inherently involves retrieving and examining this stored data.

A person of ordinary skill in the art would have been motivated to combine Khaki, Turley, and Ji because they all deal with managing access between different parts of a network and controlling who is allowed to connect. Khaki shows how a network interface can handle traffic between two networks, while Turley explains how access rules can be applied based on a user's identity. Ji adds in the use of stored user credentials to check whether someone should be allowed on the network. Since these features are all aimed at the same basic goal—controlling user access—it would have made sense to combine them. This combination would let the network interface not only route traffic and apply access rules, but also check stored user permission data, which is a common and expected part of access control systems. For a skilled person in this field, combining these features would be a logical and predictable step to create a secure and user-aware gateway.

4. Claim 8

a. [8]: <u>The method as claimed in claim 1, further comprising controlling an allocated bandwidth through the gateway for users connecting via the second sub-network</u>.

The combination of Khaki or Naghshineh in view Turley or Ji teach all the features of claim 1, as established above in sections VII.A.4 and VII. B.2.

Ji further discloses the features of claim 8 by detailing a system that includes a dedicated module for controlling the allocation of communication bandwidth for clients, which inherently applies to traffic passing through a gateway.

First, Ji describes its comprehensive software architecture, which includes various modules designed to manage network services. Among these, it explicitly identifies a component responsible for managing network resources, particularly concerning client communication. The patent states:

The SNOWNET network layer 512 is implemented as a network service to the other middleware components of a SNOWNET node 302. These optional SNOWNET middleware components may include Quality of Service module 524, the Security of Service module 524, trust management algorithms 530.and client authentication module 526. [0054]

This establishes the presence of a "Quality of Service module 524" within the SNOWNET node's operational framework.

Second, Ji specifies the function of this Quality of Service module as controlling bandwidth for clients. It states:

> The Quality of Service module 524 controls the share of the communication bandwidth given to each client. [0054]

This quote demonstrates that the system is capable of "controlling an allocated bandwidth" for users.

Finally, this control of bandwidth inherently applies to traffic passing "through the gateway for users connecting via the second sub-network." The "second sub-network" refers to the local access service areas where clients connect to SNOWNET nodes. These SNOWNET nodes, as described in the patent, also function as gateways to external networks. Ji states:

> Some SNOWNET nodes may also have an additional link 312 connected to the rest of an organizational network, the global Internet or some other external network. These nodes, called SNOWNET gateways act as gateways for the SNOWNET 300 to reach the Internet or other external networks. [0041]

Since the Quality of Service module controls bandwidth for "each client" connecting to a SNOWNET node, and these nodes can act as "gateways," the control over bandwidth logically extends to the traffic that clients send and receive through these gateways to external networks. Therefore, the control of allocated bandwidth applies to users connecting via the local access sub-network and passing traffic through the gateway.

A person of ordinary skill in the art would have been motivated to combine Turley, and Ji according to known methods to yield predictable results. Turley and Ji focus on how users access and use a shared network resource. Turley focuses on managing and restricting user access, and Ji adds quality-of-service controls like bandwidth limits. In real-world networks, it is common to manage limited bandwidth by controlling how much traffic each user can send or receive—especially when users are sharing a gateway. Since Ji already describes using a Quality of Service module to control bandwidth per user, it would be natural and expected to combine that with the access control structure in Turley and the network routing setup of either Khaki or Naghshineh. This combination would let the system not only verify and route user access, but also fairly limit their bandwidth through the gateway—something that is both technically useful and a standard network management practice.

5. Claim 9

a. [9]: <u>The method as claimed in claim 1, wherein said method is performed by executing driver software to configure a standard network adapter to exchange network traffic between the first and second sub-networks.</u>

The combination of Khaki or Naghshineh in view Turley or Ji teach all the features of claim 1, as established above in sections VII.A.4 and VII.B.2.

Ji further discloses the features of claim 9 by detailing how its method is performed through the execution of software components, including kernel-space drivers, that configure network interfaces to manage traffic flow between different network segments.

102

First, Ji explicitly states that the SNOWNET system is implemented as software. It describes the overall software architecture of a SNOWNET node, which is where the claimed method would be performed. The patent states:

> FIG. 4 is a diagram showing the SNOWNET node 302 software architecture components 500. The SNOWNET node 302 software components 500 are stored in the data storage memory 404 of each SNOWNET node 302. [0051]

This establishes that the method is indeed "performed by executing driver software."

Second, the patent specifically identifies "driver software" for "standard network adapter[s]" (referred to as network interfaces or NICs) as part of its software components. It states:

> The software components 500 include operating system kernel space drivers 502 for various network interfaces, including drivers for … 802.11 Network Interface Card (NIC) in Host AP mode 506, and 802.11 NIC in Ad Hoc mode 508. [0052]

This directly confirms the use of "driver software" to configure "standard network adapter[s]" (e.g., 802.11 NICs).

Finally, the Ji explains how these configured network adapters exchange network traffic between different sub-networks, which can be understood as the "first and second sub-networks" of the claim. The patent describes two levels of communication:

> Communications in a SNOWNET 300 are organized into two levels: backbone communication and local access communication. [0043]

Ji then clarifies the role of the SNOWNET nodes in facilitating this exchange:

> SNOWNET nodes 302 relay communication between these two levels. [0043]

The "backbone communication" represents traffic on the "first sub-network" (the SNOWNET backbone), and "local access communication" represents traffic on the "second sub-network" (where clients connect). The driver software, by controlling the

network interfaces, enables the SNOWNET nodes to "relay communication" between these distinct levels, thereby "exchang[ing] network traffic between the first and second sub-networks."

A person of ordinary skill in the art (POSITA) would have been motivated to combine the teachings of Ji with systems like Turley according to known methods to yield predictable results. Ji clearly describes software-based configuration of standard network interfaces for routing functions—an approach that aligns with common engineering goals of modularity and flexibility. Ji explicitly outlines the use of kernel-space drivers to manage Ethernet and wireless NICs, which would be familiar and accessible to any network systems developer. Combining this with hardware-based traffic control or access enforcement mechanisms disclosed in other references would represent a straightforward integration of standard networking components, all aiming to achieve scalable, software-controlled routing between two sub-networks. Furthermore, using driver software to manage traffic exchange avoids the need for specialized hardware and reduces system complexity—an obvious and beneficial design choice.

6. Claim 17

a. [17]: The apparatus as claimed in claim 13, wherein the authentication controller comprises locally stored user subscription information or information about user permissions to access the gateway, or a retrieval system for retrieving user subscription information or information about user permissions from a remote location.

Limitation [17] is substantially similar to Limitation [7]. The requirements of Limitation [17] are thus disclosed for the same reasons as discussed in Section VII.F.3.

VIII. CONCLUSION

For the foregoing reasons, ex parte reexamination of claims 1-19 of U.S. patent No. 9,258,309 is respectfully requested.

Dated:   August 1, 2025

Respectfully submitted,

By: /Lawrence E., Ashery/

Lawrence E. Ashery, Reg. No. 34,515
Attorney For Requester Connectify, Inc.

601 Spring Garden Street
Suite 3,
Philadelphia, PA 19123