# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOUNTS TECHNOLOGIES LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONNECTIFY, INC. AND DOES 1-100, <br><br> Defendants. | CASE NO. 2:23-cv-890 <br><br> Judge Mia Roberts Perez <br><br> **Oral Argument Requested** |

## REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO STAY PENDING *EX PARTE* REEXAMINATION

Dated:   October 16, 2025

*/s/ Patrick R. Kingsley*
Patrick R. Kingsley (Pa. Attorney No. 62915)
Philip J. Foret (Pa. Attorney No. 87509)
Chelsea A. Biemiller (Pa. Attorney No. 319625)
**STRADLEY RONON STEVENS & YOUNG, LLP**
2005 Market Street, Suite 2600
Philadelphia, PA 19103
610-640-5800
pforet@stradley.com
*Counsel for Defendant, Connectify, Inc.*

Bounts' Opposition contains misstatements of fact and law, requiring rejoinder.

### A. Bounts Fundamentally Mischaracterizes the *Wonderland* Decision.

The primary case on which Bounts relies – *Wonderland Nurserygoods Co. v. Thorley Industries, LLC* – is gravely misrepresented in its Opposition. *See* 858 F. Supp. 2d 461 (W.D. Pa. 2012). To start, *Wonderland* was not decided by "this Court," as Bounts falsely states several times. *See* Opp. at 3, 5, 7. It was decided by the U.S. District Court for the *Western* District of Pennsylvania. That Bounts repeatedly misrepresents that it was decided by "this Court," and falsely *cites to the Eastern District* in each of the four instances it provides the (incorrect) case citation is, at best, puzzling; at worst, it reflects a lack of candor to the Court.

Bounts compounds its apparent lack of candor by entirely ignoring the fact that, in a later decision in the same case, the *Wonderland* court **granted the Defendant's renewed motion to stay** (on the eve of trial) pending the outcome of the PTO's reexamination of the patents-in-suit. *See Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, 2014 WL 695549 (W.D. Pa. Feb. 24, 2014). The court's ultimate decision refutes each of the points in Bounts' Opposition. The 2014 decision clarified that at the time of its earlier ruling, "several facts weighed against granting the stay" including prejudice to Wonderland "given direct competition between [it] and [defendant] Thorley," and "the inability of the reexamination proceedings to resolve completely the issues" because the litigation at that point involved alleged infringement of two claims not subject to examination. *Id.* at *2. By the time of trial, however, the parties were no longer competitors and the reexamination involved the only remaining claims in dispute, so those factors no longer weighed in plaintiff's favor, just as they do not weigh in favor of Bounts now. The court explained:

> As a threshold matter, the Court recognizes that Thorley had initially moved to stay this case on February 24, 2012, which the Court denied in a Memorandum Opinion on March 14, 2012. However, several factual differences have now developed since the date of the Court's initial ruling denying the stay. **First, Wonderland and Thorley are no longer direct competitors**. Second, a final office action has issued against **the**

*only remaining claims in dispute* in this case, *and a stay would simplify several complex issues before the Court* concerning the potential evidence at trial and the Proposed Jury Instructions. Third, although discovery is complete and this case was set for trial, all of the Court's pretrial rulings remain in effect, and *a new trial date can be set as soon as the Patent Trial and Appeal Board issues a final written decision*, and the time for appeal has expired or any appeal has terminated, which includes appeals to the Federal Circuit.

*Id.* at *6 (internal citations and footnotes omitted) (emphasis added).

As set forth in Connectify's opening Brief, the factors analyzed in the 2014 *Wonderland* decision all weigh in favor of granting a stay here: (1) Bounts and Connectify are not competitors; (2) the EPR proceeding will examine **all of the claims** at issue in this litigation and could thus completely resolve the case and will, regardless of the outcome, simplify the complex issues before the Court, including claim validity, construction, and enforceability; and (3) unlike in *Wonderland* (where the court held a hearing on why the case should not be stayed *on the day set for jury selection*), this case is still in the very early stages. The parties here have not even exchanged discovery requests, and the dates set forth in the Court's scheduling order can be easily re-adjusted upon conclusion of the reexamination proceedings.

Bounts' failure to advise the Court of this later decision *granting* the defendant's motion to stay, when the facts of the case were far more aligned with the facts here, is telling. The Court should reject Bounts' blatant mischaracterizations of *Wonderland* which, when viewed in light of the full case history, overwhelmingly *supports* the conclusion that a stay should be entered here.[1]

---

[1] Bounts' citation to numerous cases – nearly all of which are outside the Third Circuit – in support of the notion that "many courts have denied motions to stay pending reexamination" is similarly unavailing, as a close reading of those decisions reveals that they are easily distinguishable. In those cases, for example, the litigation had already significantly advanced (*Bandspeed*, *BarTex*, *Constellation IP*, *Lectrolarm Custom*, *Milwaukee Elec. Tool*, *Soverain Software*, *Xerox*, *3M Innovative*, *Out RAGE*); the plaintiff and defendant were direct competitors (*ESCO Corp.*, *Pentair Water Pool*, *Sunbeam Products*, *United Pet Group*, *USNR, LLC*); the *plaintiff* had filed the motion to stay (*Akzenta Paneele*, *Thermolife*); the PTO proceedings would not address all claims or patents-in-suit (*3M Innovative*, *In re Phoenix Licensing*, *Pentair*, *Akzenta Paneele*, *ESCO Corp.*); or the deciding court's opinion provided little or no reasoning or analysis as to why it denied the stay request (*Thermolife*, *Centillion*).

2

### B. Bounts' Claims of Prejudice are Empty.

Bounts first suggests that delaying the case will unduly prejudice it because the '309 patent will expire on November 3, 2028. Setting aside Bounts' inflated view of how long the EPR will take, courts have already rejected this argument. *See, e.g., Biogaia AB v. Nature's Way Prods., Inc.*, 2011 WL 3664350, at *3 (E.D.N.C. Aug. 18, 2011) ("Plaintiff's contention that because the patents at issue will expire approximately one year from now, a stay [is] inappropriate, is unconvincing" and holding given early stage of litigation, "the inevitability of the expiration does not alter the court's findings that a stay is appropriate."). *See also Heraeus Electro-Nite Co., LLC v. Vesuvius USA Corp.*, 2010 WL 181375 (E.D. Pa. Jan. 11, 2010).

In *Heraeus*, this Court noted the possibility that the reexamination process would be incomplete when the lives of the patents-in-suit expired; it found, however, that this fact "ha[d] no effect" on its analysis of whether a stay would simplify the issues for trial, as reexamination continues for a period of six years following expiration, and "[t]hus, there is no risk that if the reexamination is pending when the patents expire, the PTO will simply decline to address the issues, eroding the potential benefits of reexamination." *Id.* at *1, n.1 (granting defendant's motion to stay pending reexamination). There is no prejudice to Bounts merely because the '309 Patent is set to expire more than three years from now.  This is especially true given that Bounts does not manufacture or sell any products utilizing the technology is in the '309 patent. *See Kuruvilla v. Se. Pennsylvania Transportation Auth.*, 2011 WL 13227694, at *2 (E.D. Pa. June 15, 2011).

Nor is Bounts prejudiced by the timing of Connectify's EPR request or its Motion to Stay (filed eight business days after learning the PTO granted its EPR request). Connectify did not delay requesting EPR as a tactical advantage; Connectify sought reexamination only after advising Bounts that it would do so and while attempting to resolve this matter directly with Bounts, to no avail. A defendant's delay in seeking reexamination so that it can engage in settlement discussions

is not prejudicial to the plaintiff. *See, e.g.*, *CCP Sys. AG v. Samsung Elecs. Corp.*, 2010 WL 5080570, at *1 (D.N.J. Dec. 7, 2010) ("Samsung Electronics has explained that it delayed filing the reexamination request because it did not want to jeopardize the then-ongoing settlement discussions with CCP. Other courts have also found similar delays in seeking reexamination to be acceptable. … Accordingly, the Court does not find the delay in this matter improper or that it was caused by Samsung Electronics for tactical advantage.") (citing *In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 532 (E.D. Pa. 2003) (holding reexamination request was timely even though requester knew of prior art for more than two years before making request)). Once the PTO granted the EPR request on September 16, 2025, Connectify immediately filed its Motion to Stay just eight business days later. There has been no delay resulting in unfair prejudice to Bounts.[2]

The fact that the EPR is at an early stage and will inherently cause some delay to the litigation does not weigh in Bounts' favor. *See, e.g.*, *Infinity Computer Prods., Inc. v. Panasonic Corp. of N. Am.*, 2013 WL 12321729, at *3 (E.D. Pa. Apr. 30, 2013) ("[D]elay inherent in the reexamination process does not constitute, by itself, undue prejudice.") (citations omitted). If Bounts' infringement claims are meritorious, it can be compensated with money damages, including for any infringement that occurred during the stay. *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (finding no prejudice from stay and noting because

---

[2] There is similarly no merit to Bounts' claims that it is disadvantaged by "the [financial] burden of additional expenditure of resources for reexamination." The fact that participation in the EPR may cost Bounts money is not undue prejudice sufficient to deny the stay request. *See, e.g., Prestone Prods. Corp. v. S./Win, Ltd.*, 2014 WL 12775693, at *4 (N.D. Ill. Sept. 26, 2014) (rejecting plaintiff's argument that it would be prejudiced by stay because it would have to spend money on the EPR while defendant did not, holding "even if a stay were to lessen the financial burden of this action for [defendant] South/Win as compared to [plaintiff] Prestone, Prestone has not shown that the amount is significant or that it would cause undue prejudice or a tactical disadvantage. Consequently, there is no undue prejudice or tactical disadvantage that counsels against a stay."). Indeed, Bounts would likely achieve cost *savings* in this litigation to the extent the EPR proceedings result in cancellation or modification of any of the claims at issue.

4

plaintiff "is not selling or actively licensing goods or services related to the [patent-in-suit]; money damages is an adequate remedy for any delay in redress.").

When all the relevant factors are viewed together – including the significant potential to simplify (or entirely eliminate) the issues before the Court – the early stage of the EPR proceeding is not a sufficient basis on which to deny a stay. Again, the very case on which Bounts relies for this proposition, *Ever Win International v. Radioshack*, supports Connectify. *See* 902 F. Supp. 2d 503, 511 (D. Del. 2012). There, although the court acknowledged that reexamination proceedings had "just begun," it nonetheless *granted* the defendant's motion to stay after evaluating all relevant factors and concluding that, on balance, the plaintiff would not suffer undue prejudice from a stay pending reexamination. The same conclusion is warranted here.

### C. There is No Question That the Issues Will Be Simplified if the Case is Stayed.

As Connectify explained, the potential to simplify the issues before this Court is at its highest because the PTO is reexamining *all* asserted claims of the *sole* asserted patent. Bounts responds by misconstruing the relevant statistics and again relying on easily distinguishable case law. Bounts' suggestion that "about 85% of claims subject to reexamination survive" so it is "highly likely that claims will remain for litigation" is misleading. As Connectify showed, with supporting data directly from the PTO, seventy-eight percent (78%) of EPR requests granted by the PTO result in a determination that the claims at issue should be cancelled entirely or modified. Of that seventy-eight percent, *sixty-four percent (64%)* of EPR requests result in claim modification. The statistical data demonstrates it is highly likely that, if Bounts' claims were to survive at all, they will be in some modified form. The Court should have the benefit of the PTO's determination and guidance in that regard before the case proceeds.

Bounts next argues that the issues may not be simplified because EPR proceedings, unlike *inter partes* review proceedings, do not impose estoppel on the parties, so either party could make

5

the same arguments before this Court that it makes in the EPR, regardless of the outcome of that proceeding. In support, Bounts cites *TPK Touch Sols., Inc v. Wintek Electro-Optics Corportation*, 2013 WL 5289015, (N.D. Cal. Sept. 18, 2013). The decision in *TPK Touch* is fundamentally distinguishable as there (unlike here), the parties were direct competitors. *Id.* at *3. Additionally, if the Court were to follow Bounts' logic, then a stay could *never* be granted in cases involving EPR requests, but courts *do* routinely grant stays in such cases.[3] *Parallax Grp. Int'l, LLC v. Greatmats.com Corp.*, 2017 WL 3485789, at *2 (C.D. Cal. Mar. 23, 2017) (granting stay and rejecting plaintiff's argument, premised on *TPK Touch*, that issues would not be simplified because EPR proceedings do not impose estoppel, noting "this argument would apply to every case in which a party seeks a stay pending *ex parte* patent reexamination."). Because the vast majority of cases in which the PTO grants EPR result in either claim modification or outright cancellation, waiting until the PTO resolves the reexamination issues here (including patent claim validity and claim construction) "will at the very least streamline the issues in this case and prevent [the] Court from expending resources on matters that may ultimately become moot." *Id.*

Finally, the fact that Connectify has asserted additional defenses "not subject to reexamination" does not weigh against granting the stay. The question is whether the EPR proceeding will address all of the *claims* on the patents-in-suit, not whether it will address every defense to those claims. The EPR here will address all of Bounts' claims and may thus render some or all of Connectify's defenses unnecessary.

### D. The Early Stage of the Proceedings Weighs in Favor of a Stay.

Bounts' focus on the fact that the parties agreed to a proposed scheduling order (as required by the Court) does not weigh in its favor. As Connectify explained, where, as here, there is

---

[3] *See generally* Br. (ECF Doc. No. 60-1) (summarizing numerous cases granting stays pending EPR).

significantly more work to be done in the litigation, a stay is favored. *See* Br. at 8-15. Bounts' suggestion that a stay should not be entered because the dates set forth in the proposed scheduling order "were agreed upon [b]y Connectify without mention of seeking a stay for any reason" is yet another red herring. On September 2, 2025, the date the parties had been ordered by the Court to submit a proposed scheduling order, Connectify *had not yet been advised that the PTO had accepted its EPR request*. Connectify thus had no basis on which to seek a stay at that point; it did not know it had any such basis until it was first informed that the PTO had granted its request on September 16. Just eight business days later, Connectify moved for the stay. There is no reason the parties could not agree to, and the Court could not enter, a modified scheduling order that accounts for any changes necessitated by the outcome of the PTO proceedings. As the *Wonderland* court recognized (quite literally on the eve of trial), new dates can easily be set.

### E.  The "Equitable Considerations" are False and Irrelevant.

Bounts argues that Connectify made statements in its EPR request that "do[] not tell the whole story." This is yet another red herring and has no bearing on the Court's analysis. To be sure, Connectify denies that it made any incorrect or incomplete statements before the PTO and will vigorously defend any argument to the contrary to the extent Bounts plans to make them. But the reasons the PTO granted the EPR request are not material to *this Court's* analysis on whether to stay these proceedings pending the outcome of the EPR. Connectify is entitled by law to request reexamination. *See* 35 U.S.C. §§ 302–307; 37 C.F.R. § 1.510. The "fact that the request was granted means the PTO deems the ['309] patent worthy of reexamination" and it is "not for the court to second guess the PTO's decision to reassess the prior art." *Gioello Enters. Ltd.*, 2001 WL at *2. Any issues Bounts takes with Connectify's submissions to the PTO should and will be addressed in that forum, and Bounts' apparent disagreement with the PTO's decision to grant the EPR request is not a factor that weighs against granting the stay.

Dated: October 16, 2025                    Respectfully submitted,

                                              */s/ Patrick R. Kingsley*
Patrick R. Kingsley (Pa. Attorney No. 62915)
Philip J. Foret (Pa. Attorney No. 87509)
Chelsea A. Biemiller (Pa. Attorney No. 319625)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
610-640-5800
pforet@stradley.com